UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

JOHN K. GOODROW,

Plaintiff,

v.                                                                    Action No. 3:11–CV–20

FRIEDMAN & MACFADYEN, P.A., and
JOHNIE R. MUNCY,

Defendants.

MEMORANDUM OPINION

This matter comes before the Court on a Motion to Dismiss by Defendants Friedman &

MacFadyen, P.A. ("Friedman & MacFadyen"), and Johnie R. Muncy.  The defendants in this

action are a law firm specializing in debt collection and an attorney associated with the firm.

Plaintiff John K. Goodrow alleges the defendants violated the Fair Debt Collection Practices Act

(FDCPA, "the Act") in connection with the foreclosure of Goodrow's home.  *See* 15 U.S.C.

§§ 1601-1693r.  The defendants moved to dismiss.  The Court denies the Motion, concluding

that Goodrow has stated viable claims for relief.


I.  Facts

Goodrow refinanced his Fairfax County home in 2005 with a promissory note secured by

a deed of trust from First Horizon Home Loan Corporation ("First Horizon").  MetLife Home

Loans ("MetLife") serviced the loan.  At some unspecified date, Goodrow learned from an

undated record that Fannie Mae purchased the note from First Horizon.

Goodrow fell into arrears in his mortgage payments in the fall of 2008.  In October of that

1

year, MetLife retained Defendant Friedman & MacFadyen to foreclose on Goodrow's home.

Friedman & MacFadyen notified Goodrow of its appointment as trustee by letter on October 9,

2008. The letter informed Goodrow that Friedman & MacFadyen did not possess Goodrow's

original note but was attempting to find the note. The letter also explicitly stated that it was an

attempt to collect a debt.

Shortly thereafter, Friedman & MacFadyen sent Goodrow a Substitution of Trustee Deed

dated October 8, 2008, and notarized October 21, 2008. The deed labeled First Horizon, and not

Fannie Mae, as the holder of the note. According to Goodrow, Friedman & MacFadyen claimed

that First Horizon authorized the firm to foreclose on Goodrow's home by way of the

Substitution of Trustee Deed. Goodrow claims this statement runs contrary to the statement in

Friedman & MacFadyen's October 9 letter stating that MetLife retained the firm. He says the

statement also runs contrary to Friedman & MacFadyen's statement in a November 26, 2008,

letter that Fannie Mae held the note on his home. In a November 26 letter, Friedman &

MacFadyen notified Goodrow that Fannie Mae ordered the foreclosure stayed so Goodrow could

explore repayment options. In December 2008 Goodrow retained counsel, who communicated

with Friedman & MacFadyen regarding Goodrow's debt.

Goodrow's claims revolve around two communications the defendants made with him

after he retained counsel.[1] On January 11, 2010, Friedman & MacFadyen mailed Goodrow

personally—rather than his attorney—a notice of trustees' sale ("January 11 Notice"). The letter

explains that Friedman & MacFadyen was appointed substitute trustee to conduct the foreclosure

sale, which would take place in accordance with the substitution of trustee notice attached to the

deed. The letter further announced that Goodrow's note was in default, the default was not

_____

[1] Goodrow admits that any communications Friedman & MacFadyen made over a year before he filed this suit
cannot serve as the basis of an FDCPA claim, since the Act imposes a one-year statute of limitations.

cured, Goodrow's repayment obligations were accelerated, and his home would be foreclosed. The letter stated that it provided notice "in compliance with the laws of Virginia."  It urged Goodrow to contact Friedman & MacFadyen immediately if he wanted "to avoid the necessity of a foreclosure sale and satisfy [his] obligation."  The letter's postscript included a notice that it was an attempt to collect a debt.

Friedman & MacFadyen conducted a foreclosure sale on February 3, 2011.  The February 3, 2011, Trustees Deed ("February 3 Deed") associated with that sale states that Fannie Mae is an "affiliate" of First Horizon.  According to Goodrow, the deed represented that First Horizon and Fannie Mae were legally related by referring to Fannie Mae and First Horizon as "affiliate[s]."  According to Goodrow, that representation was false and therefore violated the FDCPA.

Goodrow alleges three FDCPA violations, all of which arise from the January 11 Notice and the February 3 Deed.  In Count I, Goodrow alleges the January 11 Notice violated 15 U.S.C. § 1692c(a)(2).  That provision prohibits a debt collector from communicating with a consumer in connection with the collection of a debt, "if the debt collector knows the consumer is represented by an attorney with respect to such debt[.]"  In Count II, Goodrow alleges that several statements in the January 11 Notice, along with the February 3 Deed's description of Fannie Mae and First Horizon as "affiliates," violated 15 U.S.C. § 1692e.  That section prohibits a debt collector from using "any false, deceptive, or misleading misrepresentation or means in connection with the collection of any debt."  In Count III, Goodrow alleges that the defendants conducted the foreclosure sale even though First Horizon lacked the authority to appoint them as substitute trustees, in violation of 15 U.S.C. § 1692f(6)(A).  That provision prohibits a debt collector from "tak[ing] any nonjudicial action to effect dispossession or disablement of property" if no security

interest exists as collateral for the right to possess the property.

Friedman & MacFadyen and Muncy attack all three counts by contesting their statuses as "debt collectors," as defined in § 1692a(6). They also attack Counts I and II by claiming the January 11 Notice and the February 3 Deed are not "communications" "in connection with the collection of any debt[.]" 15 U.S.C. §§ 1692a(2), 1692c(a)(2), 1692e. The defendants additionally challenge Count II on *Twombly* grounds.

II. <u>Standard of Review</u>

Friedman & MacFadyen and Muncy move to dismiss each of Goodrow's claims. A motion to dismiss for failure to state a claim for which relief can be granted challenges the legal sufficiency of a claim, not the facts supporting it. Fed R. Civ. P. 12(b)(6)(2009); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Thus, in deciding a Rule 12(b)(6) motion, a court must accept all of the factual allegations in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007), as well as provable facts consistent with those allegations, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and view those facts in the light most favorable to the plaintiff, *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).

Even though a motion to dismiss challenges only the legal sufficiency of a claim, Rule 8(a)(2) requires a plaintiff to allege facts that show that its claim is plausible. Fed. R. Civ. P. 8(a)(2) (2007); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). A complaint must contain factual allegations sufficient to apprise a defendant of "notice of what the . . . claim is and the grounds upon which it rests." *Id.* at 555 (citation omitted). A court may dismiss a claim that fails to state facts supporting each element of a claim. *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002). Furthermore, the court need not accept legal conclusions couched as factual

4

allegations, *Twombly*, 550 U.S. at 555, or "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

II.  The new allegations in Goodrow's Amended Complaint relate back.

 The defendants contend Goodrow's claims are time-barred.  The argument is groundless. The parties agree that Goodrow cannot recover for any allegations of wrongdoing that occurred before January 10, 2010, a year before Goodrow filed his Complaint.  *See* 15 U.S.C. § 1692k(d). Goodrow amended his Complaint as a matter of course on February 25, 2011, to provide additional detail and describe the statutory violations with specificity.  *See* Fed. R. Civ. P. 15(a). The Amended Complaint also added a claim for relief under 15 U.S.C. § 1692f but did not add other defendants or factual allegations unrelated to those raised in the Complaint.

 In pertinent part, Federal Rule of Civil Procedure 15(c)(1)(B) allows any amendments to a pleading to relate back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]"  Therefore, any claims and allegations Goodrow added in his Amended Complaint relate back to the date of the Complaint if they arise "out of the conduct, transaction, or occurrence set out . . . in the original pleading[.]"

 The defendants appear to contend that any allegations that occurred more than one year before Goodrow filed his Amended Complaint cannot be added to the Amended Complaint. They also argue that Count III is time-barred.  These arguments are incorrect.  It is obvious that the new claim and allegations arise from matters clearly raised in the Complaint.  With regard to the claims under §§ 1692c and 1692e, the Amended Complaint adds some factual exposition to the allegations regarding the January 11 Notice and the February 3 Deed, which were clearly

5

mentioned in the Complaint.  As for the § 1692f claim in the Amended Complaint, Count III

clearly refers to the foreclosure sale the defendants carried out pursuant to the February 3 Deed.

All the matters newly asserted in the Amended Complaint "arose out of the conduct, transaction,

or occurrence set out . . . in the original pleading[.]"  Fed. R. Civ. P. 15(c)(1)(A).


III.  Goodrow has alleged the defendants are "debt collectors."

      The FDCPA defines a "debt" as

> any obligation or alleged obligation of a consumer to pay money arising out of a
> transaction in which the money, property, insurance, or services which are the subject of
> the transaction are primarily for personal, family, or household purposes, whether or not
> such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5) (1986).  The FDCPA defines a "debt collector" as

> any person who uses any instrumentality of interstate commerce or the mails in any
> business the principal purpose of which is the collection of any debts, or who regularly
> collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be
> owed or due another.

15 U.S.C. § 1692a(6).  The statute goes on to exempt from the definition of "debt collector"

> any person collecting or attempting to collect any debt owed or due or asserted to be
> owed or due another to the extent such activity . . . is incidental to a bona fide fiduciary
> obligation or a bona fide escrow arrangement [or] concerns a debt which was not in
> default at the time it was obtained by such person.

15 U.S.C. § 1692a(6)(F)(i) & (iii).

      Goodrow alleges that Friedman & MacFadyen and Muncy are "debt collectors" under the

FDCPA.  He alleges that they regularly collect home loan debts, regularly demand payment from

consumers of claimed arrearages, provide consumers reinstatement quotes and itemizations of

amounts they are attempting to collect.  The defendants' correspondences frequently note that

they are attempting to collect debts, a disclosure required under 15 U.S.C.  § 1692e(11).  The

defendants provided notices of that sort in their correspondence of October 9, 2008, the

reinstatement quotes they sent Goodrow on November 24, 2008, and the January 11 Notice.

Friedman & MacFadyen and Muncy contend § 1692a(6)(F)(i) exempts them from "debt collector" status.  According to the defendants, they were not collecting on a debt in sending the notice and deed.  Rather, they were "merely foreclosing on the property pursuant to the deed of trust," an activity that a local district court has explained "do[es] not fall within the terms of the FDCPA."  *Heinemann v. Jim Walter Homes, Inc.*, 47 F.Supp.2d 716, 722 (W.D. Va. 1998).  Friedman & MacFadyen and Muncy similarly contend they deserve the protection of the general rule stated by several local courts, rooted in § 1692a(6)(F), "that creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA."  *Scott v. Wells Fargo Home Mortg. Inc.*, 326 F.Supp.2d 709, 718 (E.D. Va. 2003).  This argument, if accepted, would require the dismissal of all of Goodrow's claims.

The Court disagrees.  The defendants' argument runs contrary to *Wilson v. Draper & Goldberg, P.L.L.C.*, a Fourth Circuit precedent on all fours with this case.  443 F.3d 373 (4th Cir. 2006).  There, a non-party mortgage lender retained the defendants, a law firm and an attorney associated with the firm, to institute foreclosure proceedings on the plaintiff's home.  *Id.* at 374-75.  The defendants contacted the plaintiff by letter and explained that she was in default on her mortgage.  *Id.* at 374.  The letter noted that the defendants were attempting to collect a debt, as required by the FDCPA, but the letter also explained that the defendants were not "debt collectors" under the Act.  *Id.* at 374-75.  The plaintiff retained counsel, but the defendants communicated with her regarding the dispute on two more occasions.  *Id.* at 375.  The plaintiff alleged that the defendants violated the Act by communicating with her directly and continuing to collect on the debt after she contested it.  *Id.*  The district court granted summary judgment for the defendants, holding that trustees foreclosing on a property pursuant to a deed of trust were not "debt collectors" under the Act, and that a trustee's acts in foreclosing on such a property

were not actionable under the FDCPA.  *Id.*

The Fourth Circuit reversed and remanded.  *Id.*  First, the court held that the plaintiff sufficiently alleged that the defendants attempted to collect a debt as defined in § 1692(a)(5), such that a trustee would not be exempt from FDCPA obligations simply because the trustee acted to foreclose on a property pursuant to a deed of trust.  *Id.* at 376.  As the court explained,

> Defendants' actions surrounding the foreclosure proceeding were attempts to collect th[e] debt . . . Defendants' argument, if accepted, would create an enormous loophole in the Act immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt.  We see no reason to make an exception to the Act when the debt collector uses foreclosure instead of other methods.

*Id.* at 376.  In so ruling, the court expressed its disagreement with *Heinemann*.  *Id.* at 376.

Second, the panel held that the plaintiff could demonstrate the defendants were "debt collectors."  *Id.* at 378.  The defendants in *Wilson*, like the defendants here, argued they were exempt from the definition of "debt collector" by virtue of § 1692a(6)(F)(i), which excludes from that definition any person collecting a debt "incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement."  *Id.* at 377.  According to the panel, the fact that a substitute trustee is a fiduciary "only partially answer[ed] the question" of whether § 1692a(6)(F)(i) disqualified the defendants as debt collectors.  *Id.*  The court reasoned that "a trustee's actions to foreclose on a property pursuant to a deed of trust are not 'incidental' to its fiduciary obligation" but instead "are central to it."  *Id.*  In other words, since parties such as the defendants in *Wilson* are mainly charged by mortgage originators with foreclosing on properties, they cannot receive the protection of a provision exempting parties collecting on debts "incidental" to a fiduciary obligation.  The court suggested that § 1692a(6)(F)(i) was intended to apply to entities such as trust departments of banks and escrow companies, not to substitute trustees.  *Id.*

Here, the defendants conducted foreclosure proceedings as substitute trustees.  The

*Wilson* court expressly held that a defendant was not exempt from liability under the FDCPA because he acted in the capacity as a trustee in foreclosure proceedings. *Id.* at 376. *Wilson* also prohibits the defendants in this case from seeking the refuge of § 1692a(6)(F)(i), as they attempt to do. *Wilson* plainly requires the Court to permit Goodrow to prove that the defendants acted as "debt collectors" under the FDCPA, as long as Goodrow makes other allegations of the defendants' "debt collector" statuses. He has done that, such that he has properly alleged the defendants are "debt collectors."


IV.  Goodrow has alleged the January 11 Notice is a "communication in connection with the collection of any debt."

The Amended Complaint alleges the defendants violated § 1692c(a)(2) by sending the January 11 Notice to Goodrow directly, and violated § 1692e by claiming in the Notice that (1) MetLife threatened a lawsuit against Goodrow and (2) First Horizon held the note on Goodrow's home. The defendants argue that the January 11 Notice was not an attempt to collect a debt. The Court disagrees.

The FDCPA defines a "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). The Fourth Circuit explains that the FDCPA defines "communication" "broadly[.]" *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 232 (4th Cir. 2007). A communication need not expressly request payment of an outstanding debt in order to qualify as a communication with a consumer in connection with the collection of a debt. *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385 (7th Cir. 2010). For example, the Seventh Circuit recently held that a letter from a mortgage servicer to a homeowner in default seeking to discuss "foreclosure alternatives" and urging her that it was "not too late to save [her] home" was a communication made in connection with the

collection of a debt.  *Id.* at 386.

    The January 11 Notice warned Goodrow that his home would be sold unless the entire
balance of his promissory note was paid before the date of sale, and urged him to contact
Friedman & MacFadyen if he desired to satisfy his debt and avoid the foreclosure sale.  The
Notice also included an FDCPA disclaimer stating that the Notice represented an attempt to
collect a debt.  The January 11 Notice did not contain an express demand for payment, but the
presence of an express demand for payment is "just one of several factors" the Court uses in
order to determine whether a communication was made in connection with the collection of a
debt.  *Id.* at 385.  At this stage of litigation, the Court is unwilling to conclude that the January 11
Notice was not a communication in connection with the collection of a debt.

    The defendants counter that they sent the January 11 Notice to comply with Virginia law
governing foreclosure.  *See* Va. Code § 55-59.1.  According to the defendants, this fact makes it
impossible that the Notice was a communication in connection with the collection of a debt.
That argument is incorrect.  The FDCPA does not "annul, alter, or affect, or exempt" any person
from complying with state laws on debt collection practices, "except to the extent that those laws
are inconsistent with any provision of this subchapter, and then only to the extent of the
inconsistency."  15 U.S.C. § 1692n.  Hence, a debt collector must comply with the FDCPA while
complying with a state foreclosure law.  In *Romea v. Heiberger & Associates*, for example, the
Second Circuit held that a law firm had to comply with certain FDCPA provisions when it sent a
tenant a three-day rent demand notice required under state law.  163 F.3d 111, 118-19 (2d Cir.
1998).  The Second Circuit pointed out that, though a landlord's agent could comply with both
the FCPA and state law requirements, § 1692n required the state law to yield if the two
provisions conflicted.  163 F.3d at 118 n.10.  The same reasoning applies here.  The Court cannot

conclude that the defendants were exempt from the requirements of federal law simply because they attempted to comply with state law.

V.  Goodrow has stated a claim under § 1692e.

In Count II, the Amended Complaint alleges the defendants attempted to collect the balance of Goodrow's mortgage through "false, deceptive, [and] misleading representation[s]" in violation of § 1692e.  The February 3 Deed provides one basis for this claim.  Goodrow alleges the February 3 Deed impermissibly identified Fannie Mae as an "affiliate" of First Horizon. Goodrow alleges that these misrepresentations violated 15 U.S.C. §§ 1692e, e(2)(A), e(5), and e(10).

The defendants contend that the Deed cannot serve as the basis for an FDCPA claim.  At this stage of litigation, the Court is not prepared to agree with such a statement.  Some courts considering claims under § 1692e like Goodrow's have dismissed those claims on the ground that a trustee is not a "debt collector" when the trustee forecloses on a deed of trust.  *See Hulse v. Ocwen Federal Bank*, 195 F.Supp.2d 1188, 1204 (D. Or. 2002); *Fouche' v. Shapiro & Massey L.L.P.¸* 575 F.Supp.2d 776, 787 (S.D. Miss. 2008).  As the Court has explained, *Wilson* rejected that general rule.  In *Wilson*, the Fourth Circuit essentially validated, as statutory prerequisites of an FDCPA claim, allegations that a trustee "debt collector" made "communications" attempting to collect a mortgage "debt" by foreclosing on a security interest in a home.  15 U.S.C. § 1692a(2), (5), & (6).  Nothing in *Wilson* or any other binding precedent of which the Court is aware dictates the conclusion that a deed can never provide a basis for an FDCPA claim.

The defendants are also incorrect in arguing that the Deed's description of First Horizon and Fannie Mae as "affiliates" is insufficiently specific to make out a claim under § 1692e(2)(A),

(5), or (10). *See Twombly*, 550 U.S. at 555. The Fourth Circuit has adopted the "least sophisticated consumer" test for deciding whether a statement is false or misleading for purposes of § 1692e. *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135-136 (4th Cir. 1996). Under this test, a statement is false or misleading if "it can be reasonably read to have two or more meanings, one of which is inaccurate." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (3d Cir. 2006) (citation omitted). The test requires a court to consider a statement's "capacity . . . to mislead," such that "evidence of actual deception is unnecessary." *Nat'l Fin. Servs.*, 98 F.3d at 139. The "least sophisticated consumer" test requires a court to evaluate a communication "as a whole, not sentence-by-sentence," since even the least sophisticated consumer is bound to read a communication in its entirety. *Vitullo v. Mancini*, 684 F.Supp.2d 747, 756 (E.D. Va. 2010).

The fact that the word "affiliate" is subject to two interpretations validates his claim. An "affiliate" can refer to a casual association. In the area of corporate law, though, the term "carries its own, independent legal significance," referring "to a corporation that is related to another corporation by shareholdings or other means of control" and to "a company effectively controlled by another or associated with others under common ownership or control." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) (citations and quotations omitted). Both meanings of "affiliate" are valid. In this case, one of those meanings may fail to describe the relationship between Fannie Mae and First Horizon and therefore may be false. Because one of those meanings may prove to be a "deceptive or misleading representation or means," the Court will not dismiss Goodrow's claim based on the February 3 Deed. 15 U.S.C. § 1692e.

IV.  <u>Conclusion</u>

For the reasons stated above, the Court denies the defendants' Motion to Dismiss

Goodrow's FDCPA claims.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

It is SO ORDERED.

_____/s/_____
James R. Spencer
Chief United States District Judge

ENTERED this  _25th___  day of May 2011