**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **LETONYA BANKS,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 3:11cv614** |
| **FRIEDMAN & MACFADYEN, P.A., et al.,** | |
| **Defendants.** | |
| | |
| **ALLEN CHATTER,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 3:11cv613** |
| **FRIEDMAN & MACFADYEN, P.A., et al.,** | |
| **Defendants.** | |

**DEFENDANTS' MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION TO DISMISS BANKS AND CHATTER COMPLAINTS**

Defendant law firm Friedman & MacFadyen, P.A., defendant trustee F&M Services, L.C., and defendant Johnie R. Muncy (collectively, "**Defendants**"), by counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, make the following points and cite the following authorities in support of their *Motion to Dismiss the Amended Complaints* in the *Banks* and *Chatter* matters.

**I.**
**STANDARD OF REVIEW**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). A plaintiff must "state a claim to relief that is plausible on its face", pleading "content that allows the court to draw the reasonable

inference that the defendant is liable." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949--50 (2009).  *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   The Court need not accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir.1989) or legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  The Court may consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.  *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006); *Moore v. Flagstar Bank*, 6 F. Supp. 2d. 496 (E.D. Va. 1997).  The Court may consider the document without converting the motion to one for summary judgment. *Crouch v. Bank of Am., N.A.*, 2011 U.S. Dist. LEXIS 152548 (E.D. Va. Nov. 29, 2011) (considering deed of trust).

## II.
## SUMMARY OF FACTUAL ALLEGATIONS

1.      In 2007, Banks borrowed $152,500.00 from SunTrust Mortgage, Inc. pursuant to a promissory note (the "**Banks Note**") (Exhibit 1), which was secured by a deed of trust on real property (the "**Banks Deed of Trust**") (Exhibit 2).  Banks Am. Compl. ¶¶ 42–43.

2.      Banks' Deed of Trust loan was purchased by Federal National Mortgage Association ("**Fannie Mae**").  Banks Am. Compl. ¶ 45.

3.      In 2008, Chatter borrowed $423,675 from First Horizon Home Loans pursuant to a promissory note (the "**Chatter Note**") (Exhibit 3), which was secured by a deed of trust on real property (the "**Chatter Deed of Trust**") (Exhibit 4).  Chatter Am. Compl. ¶¶ 42–43.[1]

4.      Chatter's Deed of Trust loan was guaranteed under the U.S. Dept. of Veterans Affairs ("**VA**").  Chatter Am. Compl. ¶ 46.

---

[1]      When referenced together, the Banks Note and Chatter Note will be referred to as the "**Notes**," and the Banks Deed of Trust and Chatter Deed of Trust will be referred to as the "**Deeds of Trust**."

5.      Litton Loan Servicing was servicer of Banks' Deed of Trust loan, and Chase Home Finance, LLC was servicer of Chatter's Deed of Trust loan.  Banks Am. Compl. ¶ 46; Chatter Am. Compl. ¶ 45.  Together, Litton and Chase will be referred to as "**Servicers**".

6.      Plaintiffs became delinquent in their obligations to make payments under the terms of the Notes and went into foreclosure.  Banks and Chatter Am. Compls. ¶ 52.

7.      As a result of these defaults, Defendants F&M Services and Muncy were appointed as substitute trustees under Substitution of Trustee documents (the "**Substitutions of Trustee**").  Banks and Chatter Am. Compls. ¶ 61.

8.      At the direction of the servicers, Defendants initiated the foreclosure process, which included mailing "various correspondences" to the Plaintiff.  Banks Am. Compl. ¶ 53; Chatter Am. Compl. ¶ 54.

9.      Banks alleges that Defendants failed to follow the Fannie Mae Servicing Guide (the "**Servicing Guide**") in conducting the foreclosure.  Banks Am. Compl. ¶¶ 80–81, 88–92.

10.     Chatter alleges that Defendants failed to follow VA regulations regarding pre-acceleration procedures for the Chatter Deed of Trust loan and the VA Service Guide.  Chatter Am. Compl. ¶¶ 77–81.

11.     The foreclosure process ultimately culminated in the sale of the two properties (the "**Banks Property**" and "**Chatter Property**," together the "**Properties**") at foreclosure sales. The Properties were then conveyed by trustee's deeds (the "**Banks Trustee's Deed**" and "**Chatter Trustee's Deed**," together the "**Trustee's Deeds**").  Banks Am. Compl. ¶ 95; Chatter Am. Compl. ¶ 84.

12.     In their Amended Complaints, Plaintiffs allege Defendants' actions constitute breaches of fiduciary duty, fraud, conspiracy and violations of the federal racketeering statute.

They also attempt to make class claims on behalf of others who they claim to be similarly situated.

## III.
## ARGUMENT

**A.     Plaintiffs' RICO Claims Should Be Dismissed (Counts IV).**

**1.     In Counts IV, Plaintiffs' Attempt to Cloak a Garden Variety State Law Fraud Claim in "Federal Law Clothing" Should be Rejected.**

In an attempt to retain a federal "hook" in what is a purely state law matter, Plaintiffs have resorted to "Plan B" by now asserting claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C § 1961, in their Amended Complaints.  This tactic is unavailing.

The Fourth Circuit has "reserved RICO liability for 'ongoing unlawful activities whose scope and persistence pose a special threat to social well-being.'" *Al-Abood v. Elshamari*, 217 F.3d 225, 238 (4th Cir. 2000) (quoting *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989)).  "[O]nly a party engaging in *widespread fraud* would be subject to such serious consequences [of RICO]." *Menasco*, 886 F.2d at 683 (emphasis added).  Indeed, RICO "is not a 'catch-all,' but is instead a powerful tool to be used against racketeers and organized crime.  Too frequently, this statute is used by attorneys against legitimate businesses when the attorneys are more concerned with the possible recovery of treble damages and attorneys' fees than with the proper use of RICO." *Gatoil (U.S.A.), Inc. v. Forest Hill State Bank*, 1987 U.S. App. LEXIS 18356, at *14 (4th Cir. June 17, 1987).

Plaintiffs' RICO allegations amount to nothing more than a transparent attempt to remain in federal court because, without this "federal question," only garden variety state law claims would remain for breach of fiduciary duties, fraud, and civil conspiracy.  Should the Court

4

dismiss the RICO count, the Court has discretion under 28 U.S.C. § 1367(c) to decline its exercise of supplemental jurisdiction based on factors of "'convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy.'" *Baker v. Sturdy Built Mfg., Inc.*, 2007 U.S. Dist. LEXIS 78428, at *12 (E.D. Va. Oct. 23, 2007) (quoting *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995)). In *Baker*, Judge Hudson declined to assert supplemental jurisdiction over the state law claims that remained after he dismissed the plaintiff's RICO claims, stating:

> Not only are there no issues of federal policy, but Plaintiffs have alleged violations of RICO in their Complaint to bootstrap into federal court claims that clearly belong in state court. . . . Because of the diminished federal interest in adjudicating such claims and the heightened threat they pose to uniform state regulation, federal courts have less interest at stake in adjudicating such claims and often abstain in such cases.[2]

In their attempt to keep this case in federal court, seek treble damages, and recover attorney's fees, Plaintiffs try in vain to stretch the facts into a RICO claim. *Cf., Baker*, 2007 U.S. Dist. LEXIS 78428, at *13 ("Plaintiffs have brought what is sometimes referred to as a 'state law claim in federal law clothing.'"). Notably, Plaintiffs have not identified their theory of recovery under RICO, merely asserting a "violation of 18 U.S.C. § 1961," which refers only to definitions and not to substantive claims. Without a clear indication of the statutory claim Plaintiffs assert, Defendants must defend against all possible RICO claims: (a) acquiring an enterprise with illegally derived income, §1692(a); (b) acquiring an interest in an enterprise through illegal acts, § 1692(b); (c) using an enterprise to commit illegal acts, § 1692(c); and (d) a conspiracy to violate RICO, § 1692(d). Frankly, Defendants are hard-pressed to identify any facts indicative of a "conspiracy" under § 1692(d). More importantly, the distinctive elements for any RICO

---

[2]       *See also Keck v. Commonwealth*, 2011 U.S. Dist. LEXIS 115795, at *67–68 (E.D. Va. Sept. 9, 2011) (Lauck, J.) (recommending against the exercise of supplemental jurisdiction over the remaining state law claims upon the dismissal of a federal employment claim).

claim—(i) racketeering activity, (ii) pattern of racketeering, and (iii) enterprise—have not been sufficiently pleaded so as to survive this motion.

### 2.   Courts Disfavor RICO Claims When Based Solely Upon Predicate Acts of Mail and Wire Fraud.

Under the alleged facts, Defendants purportedly engaged in only two types of "predicate acts" required to establish "racketeering activity" that is unlawful under RICO:  mail fraud and wire fraud.  *See* 18 U.S.C. §§ 1341, 1343.  In short, Plaintiffs contend that Defendants operated a scheme involving the transmission of foreclosure documents, including correspondence, substitute trustee documents, and lost note affidavits, through the United States mail or by electronic wires for the purpose of collecting debt and wrongfully foreclosing on consumer homes.  Banks Am. Compl. ¶¶ 17–18, 25, 34–35, 39, 41, 53–59, 144, 147–48, 154–60; Chatter Am. Compl. ¶¶ 17–18, 25, 34–35, 39, 54–59, 115–16, 149–51.

### a.   Allegations of Mail and Wire Fraud Mandate Great Scrutiny.

Courts in the Fourth Circuit greatly scrutinize the application of RICO law to "'garden variety fraud,' especially when the alleged pattern of racketeering relies solely on predicate acts of mail or wire fraud."  *Foster v. Wintergreen Real Estate Co.*, 2008 U.S. Dist. LEXIS 90466, *20–21 (W.D. Va. Nov. 6, 2008) (citing *Al-Abood*, 217 F.3d at 238).  Specifically, the Fourth Circuit is "cautious about basing a RICO claim on predicate acts of mail and wire fraud because it will be the unusual fraud that does not enlist the mails and wires in its service at least twice. This caution is designed to preserve a ***distinction between ordinary or garden-variety fraud claims better prosecuted under state law and cases involving a more serious scope of activity***." *Al-Abood*, 217 F.3d at 238 (emphasis added) (internal quotations and citation omitted).  Indeed, "this circuit will not lightly permit ordinary business contract or fraud disputes to be transformed

into federal RICO claims [because] . . . the heightened civil and criminal penalties of RICO are reserved for schemes whose scope and persistence set them above the routine." *Flip Mortgage Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988) (internal quotation omitted).[3]  Plainly, a civil RICO claim is an extraordinary remedy designed to combat sustained and widespread organized criminal activity.  Plaintiffs have made no such claim here.

### b.   Mail and Wire Fraud Claims Must Be Pleaded with Particularity.

Because the predicate acts of Defendants' alleged racketeering activity are based solely upon alleged acts of mail and wire fraud, Plaintiffs "must plead the alleged acts of fraud with particularity pursuant to Federal Rule of Civil Procedure 9(b)."[4]  *Levinson v. Mass. Mut. Life Ins. Co.*, 2006 U.S. Dist. LEXIS 83397, *18–19 (E.D. Va. Nov. 9, 2006) (internal quotation omitted); *see D'Addario v. Geller*, 264 F. Supp. 2d 367, 397 (E.D. Va. 2003) ("Virtually every circuit that has confronted this issue has required some measure of particularity in pleading RICO actions based on mail fraud in accordance with Rule 9(b)."); *see generally*, Part III.C.1.

Wire or mail fraud requires allegations that "(1) defendant knowingly participated in a scheme to defraud, and (2) the mails or interstate wire facilities were used in furtherance of the scheme." *Choimbol v. Fairfield Resorts, Inc.*, 428 F. Supp. 2d 437, 443 (E.D. Va. 2006).  Each element must be alleged to meet the particularity requirement of Rule 9(b).  As detailed in Part III.C, below, claims regarding Defendants' alleged fraudulent scheme cannot stand under Rule 9(b) because of the lack of specificity, the omission of the essential elements of reliance and

---

[3]      *See U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (noting that RICO "does not cover all instances of wrongdoing . . . [r]ather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity" (internal quotation omitted)).

[4]      Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

damages, and the economic loss rule.

Here, the purported fraudulent mailings and wirings are only generically referenced in the Complaints, showing that Plaintiffs have failed to meet their burden under Rule 9(b) to specifically identify "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Moreover, "when plaintiffs make fraud-based claims against multiple defendants, the plaintiff must plead with specificity against each defendant . . . and allegations made against undifferentiated defendants violate this rule." *Foster*, 2008 U.S. Dist. LEXIS 90466, at *19 (quotation omitted).[5]

### c.   Plaintiffs' Vague Fraud Allegations Cannot Support RICO Claims.

Under the heightened pleading standard for fraud-based RICO claims, Plaintiffs have failed to allege their mail- and wire-based RICO claim with the requisite specificity, omitting details such as the time, place, and sender. Plaintiffs also fail to differentiate among the several Defendants when alleging predicate acts of mail or wire fraud. The insufficiencies of Plaintiffs' mail and wire fraud allegations are catalogued in the attached Exhibits 5 and 6.

While Banks speak to having received a single letter,[6] it is more instructive that Plaintiffs concede that they must rely on discovery to more specifically prove the existence of "various correspondences" purportedly sent *to Plaintiffs* by Defendants. Banks Compl. ¶¶ 53–54, 57–58; and Chatter Am. Compl. ¶¶ 54–55 57–59. Plaintiffs' tactics of shooting first and aiming later

---

[5]      *See also Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 730 (7th Cir. 1998) ("[F]or the most part, the amended complaint simply treats all the defendants as one; such 'lumping together' of defendants is clearly insufficient to state a RICO claim under § 1962(c).") (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'")).

[6]      The Defendants do not concede that these allegations meet the heightened pleading standards of Rule 9(b). Notably, Chatter fails to pinpoint a single mailing or wire with the requisite specificity.

likens the instant litigation to a "strike suit"—"an action brought by someone 'interested in getting quick dollars by making charges without regard to their truth so as to coerce corporate managers to settle worthless claims in order to get rid of them.'" *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 371 (1966). RICO is not intended to serve this coercive purpose and the Court "should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990).

In short, Plaintiffs' vague references to the Defendants' transmission of "lost note affidavits through the United States mail system" and "racketeering proceeds to the Defendants by use of the United States mail system or via electronic wires" do not allege predicate acts of mail and wire fraud. Banks Am. Compl. ¶ 158; Chatter Am. Compl. ¶ 148. By failing to plead particular conduct attributable to each of the Defendants, Plaintiffs have utterly failed to allege *any* instances of mail or wire fraud sufficient to establish a RICO violation.

Further, Plaintiffs have failed to plead essential elements for each potential RICO claim. Under 18 U.S.C. § 1962(a), Plaintiffs have alleged no specific allegations about the "proceeds" received by Defendants (its source, manner derived from racketeering) or how such proceeds were used to acquire any interest in the alleged "enterprise." Under 18 U.S.C. § 1962(b), Plaintiffs have failed to allege any specific facts about the acquisition or control of the alleged "enterprise," or the "specific nexus between the control of a named enterprise and the alleged racketeering activity." *Davis v. Hudgins*, 896 F.Supp. 561, 567 (E.D.Va.1995). Further, under 18 U.S.C. § 1962(c), Plaintiffs have failed to distinguish between the employed "person" and the "enterprise" and conduct of each. *See Field v. GMAC LLC*, 660 F. Supp. 2d 679, 687−88 (E.D. Va. 2008), *aff'd*, 328 F. App'x 873 (4th Cir. 2009) (dismissing a RICO claim for failure to specify the nature and character of the enterprise). With these failures, Plaintiffs cannot establish any RICO claim to any degree of plausibility.

Still further, for all possible RICO claims, Plaintiffs have failed to plausibly allege the requisite reliance and proximate cause—specifically, how they relied on the predicate acts of fraud, which ensures the existence of a "'direct relation between the injury asserted and the injurious conduct alleged.'" *Caviness v. Derand Res. Corp.*, 983 F.2d 1295 (4th Cir. 1993) (quoting *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)). Because Plaintiffs failed to allege these necessary elements for each potential RICO claim, the claims fail.

### 3. Plaintiffs' Allegations Fail to Establish a "Pattern of Racketeering Activity."

To state a RICO claim, Plaintiffs must adequately allege a "pattern of racketeering activity." 18 U.S.C. § 1962. This pattern consists of "at least two acts of racketeering activity . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). Ultimately, "[w]hat constitutes a RICO pattern is . . . a matter of criminal dimension and degree." *Int'l Data Bank v. Zepkin*, 812 F.2d 149, 155 (4th Cir. 1987). This requires a "commonsensical fact-specific inquiry." *ePlus Tech. Inc. v. Aboud*, 313 F.3d 166, 181–82 (4th Cir. 2002). But Plaintiffs' RICO claims "do[] not rise above the routine, and do[] not resemble the sort of ***extended, widespread, or particularly dangerous*** pattern of racketeering which Congress intended to combat with federal penalties." *Flip Mortgage*, 841 F.2d at 538 (emphasis added).

In *H.J. Inc. v. Northwestern Bell Telephone Co.*, the Supreme Court explained that "to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, ***and*** that they amount to or pose a threat of ***continued criminal activity***." 492 U.S. 229, 236 (1989) (emphasis in original); *see Menasco*, 886 F.2d at 685 ("Congress was concerned in RICO with long-term criminal conduct . . . . Thus, predicate acts must be part of a prolonged criminal endeavor."). A pattern of racketeering is thus established by "continuity plus

10

relationship," *H.J. Inc.*, 249 U.S. at 240, and must be established as to each specific defendant, *De Falco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001).

**First**, the acts must have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise [be] interrelated by distinguishing characteristics and [not be] isolated events." *H.J. Inc.*, 249 U.S. at 240. **Second**, "it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, continuing racketeering activity." *Id.* "A plaintiff cannot demonstrate open-ended continuity if the racketeering activity has a 'built-in ending point, and the case does not present the necessary threat of long-term, continued criminal activity.'" *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 501 (D. Md. 2007) (citing *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001).[7]

> **a.**    **Plaintiffs Have Conceded the Absence of a Continued Threat of Criminal Activity.**

In Count IV, Plaintiffs allege in conclusory fashion that "[the pattern of racketeering activity] will be repeated again and again in the future to the detriment of Virginia consumers."

---

[7] The Supreme Court in *H.J. Inc.* defined "continuity" as follows:

> "Continuity" is both a closed- and open-ended concept, ***referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition***. It is, in either case, centrally a temporal concept—and particularly so in the RICO context, where what must be continuous, RICO's predicate acts or offenses, and the relationship these predicates must bear one to another, are distinct requirements. A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. ***Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.*** Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the ***threat*** of continuity is demonstrated.

*H.J. Inc.*, 492 U.S. at 241–42 (emphasis added).

Banks Am. Compl. ¶ 159; Chatter Am. Compl. ¶ 149.  However, on the very first page of the Amended Complaints, Plaintiffs concede—with emphasis—that "Defendants [are] a now defunct foreclosure mill."  Banks and Chatter Am. Compls. ¶ 1.  Further, Plaintiffs allege "Defendant Friedman & MacFadyen, P.A . . . is now a defunct law firm."  Banks and Chatter Am. Compls. ¶ 4.  Accordingly, Plaintiffs' own allegations show that there can be no continued criminal activity or threat of same.  Because the Fourth Circuit has "rejected RICO pattern claims when plaintiffs have failed to show with specificity the existence of a distinct threat of continuing racketeering activity," *Professionals, Inc. v. Berry*, 1992 U.S. App. LEXIS 6219, at *10 (4th Cir. 1992), Plaintiffs cannot possibly establish a continuing pattern of racketeering activity or the threat thereof.  Accordingly, Counts IV should be dismissed.

### b.    Plaintiffs Cannot Establish Factors Indicative of a "Pattern."

The Complaints also lack facts suggestive of a "pattern" of racketeering activity in a closed period.  When evaluating a RICO claim, a court examines:  (i) the number and variety of predicate acts; (ii) the period in which they were committed; (iii) the number of putative victims; (iv) the presence of separate schemes; and (v) the potential for multiple distinct injuries.  *Parcoil Corp. v. NOWSCO Well Serv., Ltd.*, 887 F.2d 502, 504 (4th Cir. 1989).

Because a RICO pattern based on purported acts of mail and/or wire fraud must meet the stringent standards of Rule 9(b), a court may <u>only</u> consider those predicate acts alleged with particularity.  Indeed, the Fourth Circuit has recognized that the specificity requirements of Rule 9(b) apply to allegations of a "pattern," thereby requiring a plaintiff to allege "the specificity needed to show a 'distinct' threat of continuing racketeering activity."  *Menasco,* 886 F.2d at 684; *Orteck Int'l, Inc. v. Transpac. Tire & Wheel, Inc.*, 2006 U.S. Dist. LEXIS 67702, at *62 (D. Md. Sept. 5, 2006) ("General and conclusory assertions that Defendants defrauded others through

similar acts are insufficient to establish a pattern of racketeering activity."). Therefore, "[t]he showing required [under Rule 9(b)] to succeed on a RICO charge in the Fourth Circuit is both demanding and well-established." *Baker*, 2007 U.S. Dist. LEXIS 78428, at *8 (finding no pattern where for six years the defendants sent plaintiffs numerous correspondences in which "they misrepresented and concealed material facts and effectively stole the Plaintiffs' money").[8]

### i.    A Single Predicate Act of Mail Fraud Is Not Enough.

As discussed above, Plaintiffs have failed to articulate any particularized allegations concerning the predicate acts of mail and wire fraud, and the Court must disregard vaguely-stated acts when determining whether the "pattern" requirement of RICO has been met. Further, to the extent the Court finds that the identified transmission to Banks is sufficiently particularized under Rule 9(b), a single act cannot, by itself, satisfy a pattern according to the statute's definition. 18 U.S.C. § 1961(5).

The remaining allegations of "various correspondences" and "letters" sent through the mail and by wire to "consumers" are vague and entirely fail to establish related acts sufficient to constitute a "pattern," whether directed at Plaintiffs or at any other putative class plaintiff. Plaintiffs have done nothing more than speculate that "upon information and belief" the Defendants sent "form letters . . . to every consumer from whom they attempted to collect a debt and for whom they attempted to conduct a foreclosure sale." Banks and Chatter Am. Compls.

---

[8] Judge Hudson in *Baker* stated:

> This laundry list of grievances may be well-suited for submission to a state regulatory agency but falls short when Plaintiffs attempt to utilize it as particularized allegations of an ongoing criminal enterprise. The allegations are rich in censure but shallow in detail. ***Dates and the specific Defendant that committed a given fraudulent act are conspicuously absent. Nowhere in their Complaint do Plaintiffs plead acts of fraud with the particularity mandated by Rule 9(b) to include the violation of federal mail and wire fraud statutes that form the foundation of their RICO claim.***

*Id.* (emphasis added).

13

¶ 35.  Such conclusory allegations do not state a fraud-based RICO claim.

ii.     **The Alleged Scheme Is Neither Complex Nor Multifaceted Nor Long in Duration.**

The Fourth Circuit has consistently found that a single fraudulent scheme directed at a limited number of victims fails to constitute a RICO pattern.  *Menasco* involved one set of victims and a transaction that took place over approximately a year, but the Fourth Circuit declined to find a pattern of racketeering activity.  886 F.2d at 684.  In *International Data Bank*, the Fourth Circuit found no "pattern" in a single, limited fraudulent scheme involving ten investors.  812 F.2d at 154–55.  In *Flip Mortgage*, the court found no pattern where one company deprived the second company of lost profits for seven years.  841 F.2d at 538.  In *Johnson*, the court dismissed a RICO claim asserted by a married couple duped by a foreclosure recovery "rent-to-buy" scam that lasted only a few weeks.  492 F. Supp. 2d at 500 (noting that "whatever the [Plaintiffs] believe Defendants may or may not have done to others in the past or what they may be disposed to do in the future is purely a matter of speculation").

Defendants' alleged scheme of debt collection and wrongful foreclosure, described by Plaintiffs as "uniformly consistent" and without variety, cannot establish a RICO pattern.  Banks Am. Compl. ¶¶ 35, 55, 69, 144, 146; Chatter Am. Compl. ¶¶ 35, 55, 69, 134, 136.  The duration of this non-violent scheme lasted only a few years for putative class members.  In Banks, the alleged scheme lasted just over a month.  More importantly, the alleged scheme is finite and cannot possibly pose a future threat by Plaintiffs' own admissions that Defendants are now "defunct."  Banks and Chatter Am. Compls. ¶¶ 1, 4.

Under Rule 9(b), the only possibly cognizable predicate act of alleged mail fraud found anywhere in the Complaints occurred when a defendant allegedly sent Banks a letter purported to

contain a false substitute trustee document. Banks Am. Compl. ¶¶ 57–58.[9]   Yet, Banks' foreclosure sale occurred shortly thereafter. Banks Am. Compl. ¶ 95.  These allegations hardly evidence the sort of widespread and prolonged criminal activity that RICO is intended to reach.[10] Because Plaintiffs cannot establish either a repetitive, widespread, and prolonged criminal activity in a closed period of time, or a past conduct that threatens future repetition, Counts IV must be dismissed.

### 4.   Plaintiffs Have Failed to Sufficiently Allege the Existence of an "Enterprise."

Plaintiffs have also failed to allege the existence of a RICO "enterprise."  RICO requires the following elements to be pleaded and proven: (i) a person employed (ii) by the RICO enterprise (iii) who participates in the enterprise (iv) through a pattern of racketeering activity. *See Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).  RICO defines "enterprise" as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).   The Fourth Circuit has recognized "[t]he hallmark concepts that identify RICO enterprises are 'continuity, unity, shared purpose and identifiable structure.'"  *United States v. Baires*, 254 F. App'x 196, 199 (4th Cir. 2007) (citation omitted).

Moreover, the facts alleged in support of the "enterprise" cannot be pleaded without some degree of specificity.  *See Hessek v. N. Am. Mortg. Ins. Servs.*, 2003 WL 23961817 (E.D. Va. Oct. 17, 2003) (noting "Plaintiffs were advised to allege with greater particularity the precise

---

[9]   Chatter fails to identify a letter in furtherance of the scheme to the same degree of specificity alleged in Banks

[10]   "The 'declared purpose' of Congress in enacting the RICO statute was 'to seek the eradication of organized crime in the United States.'" *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 524 (1985); *see Flip Mortgage*, 841 F.2d at 538 (noting company's alleged scheme of failing to account its receipts to deprive another company of profits "does not rise above the routine, and does not resemble the sort of *extended, widespread, or particularly dangerous* pattern of racketeering which Congress intended to combat with federal penalties." (emphasis added)).

racketeering activities of each individual Defendant, the specific facts that establish an 'enterprise,' and to distinguish between the 'persons' who allegedly violated RICO and the 'enterprise' through which the 'persons' acted.").[11]   The Fourth Circuit has recognized that an enterprise's association-in-fact must be continuous in nature, have a "common purpose," and have a structure and "existence beyond that which [is] necessary to commit the predicate crimes." *United States v. Tillett*, 763 F.2d 628, 632 (4th Cir.1985); *see Boyle v. United States*, 556 U.S. 938, 945 (2009) (noting three structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose").

Plaintiffs identify the RICO "enterprise" as consisting of "[t]he Defendants and the mortgage loan servicers (including, by example, Litton)."  Banks Am. Compl. ¶ 153; *see also* Chatter Am. Compl. ¶ 143.  The alleged "common purpose" between them was to wrongfully collect and foreclose on Plaintiffs' Property, but this allegation is stated in conclusory fashion, without supporting facts.   Banks Am. Compl. ¶¶ 154–56; Chatter Am. Compl. ¶¶ 144–46.  Moreover, the inference of a "common purpose" between Defendants and the Servicers is simply implausible and belied by the Complaints' allegations.  For example, there are no allegations that the servicers were even aware of alleged fraudulent conduct or Defendants' alleged scheme to profit from illicit foreclosure proceedings.   Further, Plaintiffs merely speculate about the servicers' role, if any, in the scheme, as Plaintiffs identify conduct by unidentifiable "individuals" that is not clearly attributable to the Defendants or the servicers.   Banks and Chatter Am. Compls. ¶¶ 25–26, 70.  These allegations suggest that Defendants acted apart from the servicers

---

[11]     After all, like "pattern," the "enterprise" is a "distinct and separate prerequisite[] of [a] RICO claim" because "[t]he 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." *Chisolm v. Charlie Falk Auto Wholesalers, Inc.*, 851 F. Supp. 739, 747 (E.D. Va. 1994), *vacated on other grounds Chisolm v. TranSouth Fin. Corp.*, 95 F.3d 331 (4th Cir. 1996).

whose agreement to further the scheme remains unexplained.[12]   Accordingly, Count IV should be dismissed.

> **5.   The Complaints Fail to State a RICO Conspiracy Claim.**

Because the Complaints do not state a substantive RICO claim under 18 U.S.C. §§ 1962(a)–(c), any RICO conspiracy claim asserted by Plaintiffs under 18 U.S.C. § 1962(d) must necessarily fail.  *GE Invest.*, 247 F.3d at 549, 551 n.2.   Accordingly, Counts IV must be dismissed.

**B.   Plaintiffs' Breach of Fiduciary Duty Claims Should Be Dismissed (Count I).**

Plaintiffs allege that Defendants breached their fiduciary duties by foreclosing without following the necessary prerequisites of compliance with the Servicing Guide (Banks) and VA regulations (Chatter). Banks Am. Compl. ¶ 113; Chatter Am. Compl. ¶ 105.   Yet, Plaintiffs' claims fail for the following reasons.

> **1.   Plaintiffs' Claims Based on Fannie Mae's Servicing Guide and VA Regulations Fail to State an Actionable Claim Against Defendants.**

The majority of Banks' claim rests on the unsupported legal conclusion that the Servicing Guide is somehow incorporated into the terms of the deeds of trust that secure loans acquired by

---

[12]      In *Capitol W. Appraisals, LLC v. Countrywide Fin. Corp.*, 759 F. Supp. 2d 1267, 1277–78 (W.D. Wash. 2010), the Western District of Washington found no "enterprise" established between the defendants and the brokers because the complaint established "[defendant's] goal of 'successfully steer[ing] as many borrowers as possible into inappropriate subprime loans and/or to write as much business as possible,' *but it is unclear how or why brokers would have any reason to help* [defendants]—instead of [defendant's] competitors—achieve that goal." (Emphasis added).  The court noted the requirement for "interconnectivity" between the defendant and broker prevented the establishment of an "enterprise."  Further, in *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645–46 (7th Cir. 1995), the Seventh Circuit dismissed a RICO action because *"[n]ot one of the non-defendant entities, supposedly constituent parts of the 'enterprise,' is described as playing a role in the forced placed insurance that allegedly was foisted on the used car purchaser-victim*. This complaint clearly alleges only that the defendants perpetrating the fraud on [plaintiff] were conducting their own (and each other's) affairs." (Emphasis added).  The court concluded, "the pleading itself must state the essential elements of the RICO action or it is worthy of dismissal." *Id.* at 646.

Fannie Mae.   Banks Am. Compl. ¶ 74.   Based upon this premise, Banks alleges that the Defendants, as trustees foreclosing under the Banks Deed of Trust, breached their fiduciary duties by not confirming receipt of the "referral packet" from Litton and not possessing the Banks Note or a lost note affidavit before instituting foreclosure proceedings.   Banks Am. Compl. ¶¶ 78–80.   Chatter attempts to hold Defendants liable for certain inactions of the servicer, Chase.   *E.g.,* Chatter Am. Compl. ¶¶ 51–53.   The Chatter Deed of Trust does reference a defined set of regulations and procedures Title 38 of the U. S. Code regarding loans made through the Veterans Affairs Department, but it does not incorporate the VA Servicer Guide. Further, for those provisions incorporated into the Deed of Trust, Chatter fails to allege plausible facts that those provisions apply to Defendants (as opposed to the servicer, Chase), or that violations of those provisions by Defendants caused Chatter resulting damages.   Therefore, Plaintiffs' pleadings are deficient and their positions and claims lack basis in both fact and law.

      a.       **Plaintiffs Are Not Third-Party Beneficiaries of the Servicing Guides and, Therefore, Lack Standing to Enforce Their Terms.**

As a matter of law, Plaintiffs cannot state a claim for relief under Fannie Mae's Servicing Guide or the VA Servicer Guide.   Courts have considered and widely rejected arguments that mortgagors are intended third-party beneficiaries to such agreements.

In *Fellows v. CitiMortgage, Inc.*, 710 F. Supp. 2d 385 (S.D.N.Y. 2010), for example, a mortgagor claimed to be a third-party beneficiary of Fannie Mae's servicing contract.   The court applied New York contract law and held that a non-party to a contract lacks standing to enforce the agreement absent terms that clearly evidence an intention to permit enforcement by the third-party in question.   *Id.* at 406.[13]   In applying these principles, the Court found that while Fellows

---

[13]     *Fellows* cites to *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 251 (2d Cir. 2006), which sets forth New York's three-pronged analysis for claims of third-party beneficiary status:   "A party asserting rights as a third-party beneficiary must establish (1) the

may benefit from the policies in the Servicing Guide, any such benefit is merely incidental to the purpose of the provisions because they exist primarily to provide guidance to the servicer. *Id.*[14] Critically, the Court found that "Fellows is not a party to the Servicing Contract between Fannie Mae and CitiMortgage. As such, only Fannie Mae has any right under the contract to enforce CitiMortgage's obligations with respect to the Servicing Guide." *Id.* at 405.

Similarly, in *Hinton v. Federal National Mortgage Ass'n*, 945 F. Supp. 1052, 1058 (S.D. Tex. 1996), the court found that the Servicing Guide "is at most a supplement to the service contract [between Fannie Mae and its servicer]" and that since a mortgagor "is not the intended beneficiary of the principal contract he is not a beneficiary of the subsidiary part." The Court further found that the Servicing Guide was not a contract, and that while Fannie Mae expects servicers to rely on and follow it, Fannie Mae retains the power to change its procedures unilaterally. *Id.* This unilateral power indicates that Fannie Mae is the only party intended to benefit from the Servicing Guide. *Id.*

When courts in this district have addressed the issue, they have been uniformly in accord. *See Correll v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 12960, *11-12 (E.D. Va. Feb. 2, 2012) ("Courts have also uniformly rejected the contention that individuals have a right to sue as third-party beneficiaries to contracts between mortgage providers and Fannie Mae."); *Condel v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 93206, at *18 (E.D. Va. July 5, 2012) ("Courts have also

_____

existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." *Fellows*, 710 F. Supp. 2d at 406. Virginia courts "have consistently held" that an individual purporting to be a third-party beneficiary must show that "the contracting parties clearly and definitely intended that the contract confer a benefit upon him" and that he is not just an incidental beneficiary. *Collins v. First Union Nat'l Bank*, 272 Va. 744, 751, 636 S.E.2d 442 (2006); *Hesse v. Long & Foster Real Estate, Inc.*, 2012 U.S. Dist. LEXIS 57524, at *7–8 (E.D. Va. Apr. 23, 2012).

[14]    In Fellows' case, he was complaining about the servicer's refusal to cancel his property mortgage insurance payment obligation.

flatly rejected attempts by borrowers to assert contract claims as 'incidental beneficiaries' of servicers' agreements with the government"); *Acuna v. Chase Home Fin., LLC*, 2011 U.S. Dist. LEXIS 52971, at *11 (E.D. Va. May 16, 2011) ("Since the government typically acts in the public interest, when a third party benefits from a government contract, there is a presumption that the benefit recipient is an incidental beneficiary, and, consequently, has no right to enforce the contract.").[15]

Just as in *Fellows* and *Hinton*, Plaintiffs attempt to enforce the guides when they lack standing to do so.   The Servicing Guide contain instructions to the servicers; they are not agreements between mortgagees and mortgagors, like Plaintiffs.   Without privity of contract, Plaintiffs have no right of action against anyone for non-compliance with the guides—let alone Defendants who are not signatories to the servicing contracts or any other contract with Plaintiffs.

### b.      The Banks Deed of Trust Does Not Incorporate the Terms of Fannie Mae's Servicing Guide.

Perhaps recognizing that she has no standing to enforce the Servicing Guide, Banks attempts to bootstrap the Fannie Mae Servicing Guide to the Banks Deed of Trust.   But her allegation that the requirements of the Servicing Guide "were incorporated into the Deed of Trust," Banks Am. Compl. ¶ 74, is a legal conclusion without factual support.   The Banks Deed

---

[15]      *See also Pennell v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 96426 (S.D. Miss. July 12, 2012) (mortgagor is neither direct beneficiary nor third-party beneficiary with standing to sue lender or servicer for failing to adhere to Fannie Mae Servicing Guide); *Wells Fargo Bank, N.A. v. Sinnott*, 2009 U.S. Dist. LEXIS 93857 (D. Vt. Sept. 25, 2009) (same conclusion as to Freddie Mac Servicing Guide); *Thomas v. JPMorgan Chase & Co.*, 811 F. Supp. 2d 781, 797-98 (S.D.N.Y. 2011) ("plaintiffs were neither parties to the [servicing agreement between mortgagee and Fannie Mae] nor intended third-party beneficiaries"); *Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1404-05 (N.D. Ala. 1997), *aff'd*, 140 F.3d 1043 (11th Cir. 1998) ("borrowers are not third-party beneficiaries of a mortgage servicing contract"); *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 357 (5th Cir. 1977) (mortgagor cannot enforce provisions of HUD handbook).

of Trust makes no mention of the Servicing Guide.  Thus, Banks cannot invent a claim under this

theory, and her breach of fiduciary duty claims should be dismissed.

The subject loan was originated by SunTrust Mortgage, Inc. and secured by the Banks

Deed of Trust. (Exhibit 2).  Under Virginia law, a deed of trust is construed as a contract.  *See,*

*e.g.*, *Va. Hous. Dev. Auth. v. Fox Run Ltd. P'ship*, 255 Va. 356, 365, 497 S.E.2d 747, 753

(1998).[16]  It is a bedrock principle of contract law that a contract is "construed as written, without

adding terms that were not included by the parties."  *Uniwest Contr. Inc. v. Amtech Elevator*

*Servs.*, 208 Va. 428, 440, 699 S.E.2d 223, 229 (2010).  Nowhere in the Banks Deed of Trust is

there a provision that expressly or implicitly incorporates the terms of the Servicing Guide.  In

fact, the only reference to Fannie Mae is in small print at the bottom of each page:  "Fannie

Mae/Freddie Mac UNIFORM INSTRUMENT."  This notation has no bearing on the rights of

the mortgagor.  It means only that the deed of trust loan form is on a document that has been

preapproved should the lender seek to sell the loan to Fannie Mae or Freddie Mac.[17]  This

reference cannot plausibly be construed as incorporating the entire Servicing Guide into the

---

[16]     *See also Carter v. Countrywide Home Loans, Inc.*, No. 3:07cv651, 2008 U.S.
Dist. LEXIS 67014, at *30 (E.D. Va. Sept. 2, 2008) ("[A] deed of trust gives rise to certain
fiduciary duties.  Under Virginia law, however, deeds of trust are treated under the same
principles as contracts, and *the trustee only owes those duties that are listed in the deed of trust
itself.*" (emphasis added)); *Sheppard v. BAC Home Loans Servicing, LP*, No. 3:11cv62, 2012
U.S. Dist. LEXIS 7654, at *26 (W.D. Va. Jan. 24, 2012) ("[U]nder Virginia law, '[t]he powers
and duties of a trustee under a deed of trust, given to secure the payment of a debt, are limited
and defined by the instrument under which he acts.'"); *Horvath v. Bank of N.Y., N.A.*, No.
1:09cv1129, 2010 U.S. Dist. LEXIS 19965, at *4 (E.D. Va. Jan. 29, 2010) ("Plaintiff alleges that
[trustee] breached its fiduciary duty . . . by failing to perform reasonable due diligence . . . as
well as 'failing to remain impartial.'  Under Virginia law, however, a trustee under a deed of trust
has no such duty of diligence, and trustees only owe duties listed in the deed of trust.").
[17]     Uniform Instruments are the Fannie Mae/Freddie Mac and Freddie Mac Notes,
Riders, and Security Instruments (Deeds of Trust and Mortgages) used when originating Single-
Family residential mortgage loans, in all States and U. S. Territories, as identified in the List of
Single-Family Uniform Instruments provided on this website and also identified in Exhibit 4 of
the Freddie Mac Single-Family Seller/Servicer Guide (the 'Single-Family Guide'), available at
http://www.freddiemac.com/uniform/

Banks Deed of Trust, and any argument to the contrary should be summarily rejected.

This maneuver has been attempted and rejected before.  In *Kariguddaiah v. Wells Fargo Bank, N.A.*, 2010 U.S. Dist. LEXIS 65561, at *12–13 (N.D. Cal. July 1, 2010), a mortgagor noted that the phrases "Freddie Mac Uniform Instrument" and "California—Single Family— Fannie Mae / Freddie Mac Uniform Instrument" appeared in footers at the bottom of the promissory note and deed of trust at issue.  Kariguddajah contended that use of the forms indicated an intention to incorporate the Fannie Mae and Freddie Mac default loan servicing guidelines into the mortgage contract.  Rejecting the assertion, the court held, "There is simply no indication that incorporation by reference was contemplated, and the contract states nothing to this effect." *Id.* at *13.  The Court further opined that this position failed to meet the plausibility standard required for proper pleading and is "too far-fetched to meet even the minimal requirements of Federal Rule of Civil Procedure 8(a)," chiding that **"[i]t is somewhat like claiming that a watermark on a paper contract incorporates the paper manufacturer's business practices into the agreement**." *Id.* (emphasis added).   The plaintiff's claim for wrongful foreclosure on this basis was consequently dismissed.

Similarly, in *Fellows*, the Court followed bedrock principles of New York contract law identical to applicable Virginia law to determine that the Servicing Guide is not enforceable by a mortgagor.  710 F. Supp. 2d at 385.  Fellows argued that the Servicing Guide was incorporated into his mortgage contract with CitiMortgage because:  (1) CitiMortgage is a party to a Servicing Contract with Fannie Mae, which obligates CitiMortgage to abide by the terms of the Servicing Guide; (2) HSBC used Fannie Mae's standard form for Fellows' mortgage; and (3) HSBC told him that his mortgage was a "Fannie Mae Mortgage." *Id.* at 405.  The Court found the mortgage contract to be an integrated agreement and held that, "[b]ecause the Servicing Guide is not mentioned, referenced, or otherwise incorporated within the 'four corners' of the Mortgage, it

cannot be considered a part of the contract." *Id.*

Like the plaintiffs in *Kariguddaiah* and *Fellows*, Banks fails to state a claim in Count I.

> **c.    It Is Not Defendants' Duty to Ensure that the Servicers Complied with the Deeds of Trust.**

Assuming that Banks can fabricate some mechanism to transform noncompliance with the Servicing Guide into a cause of action, and acknowledging that the Chatter Deed of Trust actually does incorporate VA regulations, this Court must consider the delineated roles of loan servicer and trustee and decide whether a trustee can be held accountable for the failings of a servicer. Plaintiff alleges that Defendants had some duty of due diligence to ensure that all preconditions of foreclosure were satisfied. Banks Am. Compl. ¶¶ 88–92; Chatter Am. Compl. ¶¶ 78, 80–81. This contention is unsupported by the Deeds of Trust and the law.

Examination of the Deeds of Trust shows that in the event of a default, the lender (often represented by a servicer) is empowered to conduct some tasks, while the lender *or* a trustee is authorized to perform others. Section 22 of the Deed of Trust provides, in part:

> 22.    Acceleration; Remedies. **Lender** shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, **Lender** at its option may require immediate payment in full of all sums secured by the Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. **Lender** shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.
>
> If **Lender** invokes the power of sale, **Lender or Trustee** shall give to Borrower, the owner of the Property, and all other persons, notice of sale as

required by Applicable Law.   **Trustee** shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the **Trustee** deems advisable.   **Trustee** may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement.   **Trustee**, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order **Trustee** determines.   **Trustee** may postpone sale of all or any parcel of the Property by advertising in accordance with Applicable Law.   Lender or its designee may purchase the Property at any sale.

Deeds of Trust ¶ 22 (emphasis added).   What Plaintiff seeks to do is conflate the trustee's duties with those of the lender (or servicer).   The lender gives the pre-acceleration notice to the mortgagor and must ensure that it contains the necessary information.   The lender can accelerate the debt at its option.   The lender can invoke the power of sale.   Only after the lender invokes the power of sale does the trustee give the notices required by law.   **Critically, nothing in the Deeds of Trust requires the trustee to ensure that the lender or servicer has satisfied the prerequisites to acceleration.**

Defaulting mortgagors have attempted to make trustees liable for the actions of lenders and servicers in this way for years.   In *Horvath v. Bank of New York*, 2010 U.S. Dist. LEXIS 19965 (E.D. Va. Jan. 29, 2010), the seminal case on the issue, Judge Trenga of the Alexandria Division rejected this notion out of hand.   In *Horvath*, the plaintiff alleged that the trustee breached its fiduciary duty by failing to perform "reasonable due diligence" before threatening, scheduling, and foreclosing on the property, as well as by "failing to remain impartial." *Id.* at *5. The court rejected this claim and found that "a trustee under a deed of trust has no such duty of diligence, and trustees only owe duties listed in the deed of trust." *Id*; *see also McInnis v. BAC Home Loan Servicing, LP*, 2012 U.S. Dist. LEXIS 13653, at *17 (E.D. Va. Jan. 13, 2012) ("The Substitute Trustees have no role in determining whether or not Plaintiff could be granted a

permanent loan modification . . . .  Nor do the Substitute Trustees have any role in determining when to foreclose on the Property . . . ."); *Buzbee v. United States Bank, N.A.*, 2012 Va. Cir. LEXIS 39 (May 2, 2012).

Chatter's situation is somewhat different in that the Chatter Deed of Trust does state that Title 38 and the regulations issued thereunder shall govern the rights, duties and liabilities of the borrower and the lender.  *See* Exhibit 4.  However, Chatter makes no plausible claim that any of the VA regulations he claims were not complied with pertain to the duties of a trustee and so fails to comply with *Twombly/Iqbal* pleading standards.  The only references to non-compliance with the VA Servicer Guide and VA regulations identify Chase (the servicer) for not taking pre-foreclosure steps required by the Veterans Affairs Department.  Chatter Am. Compl. ¶¶ 50-53. In fact, it is a specious claim to make against Defendants when"[t]he lender conducts the foreclosure in accordance with state law where the property is located." *See Boley v. Brown*, 10 F.3d 218, 220 (4th Cir. N.C. 1993) (citing 38 U.S.C. § 3720(a)(6); 38 C.F.R. §§ 36.4319, 36.4320).  So, it appears that these regulations do not affect the duties of the trustee.

Accordingly, it was not Defendants' duty to ensure that the Servicers had performed all prerequisites to commencing foreclosure—and any claim for non-compliance with those prerequisites must be brought against the Servicers.  Plaintiffs fail to state a claim under Count I.

### d.  Banks Does Not Allege a Plausible Violation of the Servicing Guide.

Finally, Banks suggests that Defendants violated the Servicing Guide "because they must either possess the original note or a lost note affidavit from the beneficiary must be provided to the homeowner."  Banks Am. Compl. ¶ 79.  As an initial matter, Banks misrepresents the express statutory language.  Nothing in Virginia Code section 55-59.1 requires that a lost note affidavit be provided to the homeowner.  *See* VA. CODE ANN. § 55-59.1(B) ("If a note or other evidence of

indebtedness secured by a deed of trust is lost or for any reason cannot be produced and the beneficiary submits **to the trustee** an affidavit to that effect, the trustee may nonetheless proceed to sale . . . ." (emphasis added)).  Banks does not allege that Defendants did not possess the requisite lost note affidavit.  Accordingly, she does not allege a plausible violation of the Servicing Guide or Virginia law.

Furthermore, Banks's legal conclusion that the trustee must possess either the note or a lost note affidavit before taking any action is unsupported by the Banks Deed of Trust, Virginia statute, and the limited case law addressing this issue.[18]  The Banks Deed of Trust does not require that the Note or a lost note affidavit be in the Defendants' possession before foreclosure notices are sent.  The controlling statute is silent.  *See* VA. CODE ANN. § 55-59.1.  In fact, as one court observed, "there is no statutory requirement concerning the timing of the Affidavit of Lost Note." *Buzbee*, 2012 Va. Cir. LEXIS 39, at *11.  And no court has ever stated that a trustee must have possession of either of these documents at any time other than the time of sale.  In effect, Banks is attempting to bring a "show me the note" claim under the guise of a breach of fiduciary duty.  Courts consistently reject "show me the note" claims.[19]  This Court should reject Banks's allegations in Count I on similar grounds.

In summary, the Servicing Guides are not incorporated into the Deeds of Trust.  Their provisions are not enforceable by a defaulting mortgagor.  The trustee's duties do not extend to actions that predate notice of the foreclosure sale.  There is no VA regulation identified which Defendants are alleged to have violated.  The trustee has no duty of diligence to look behind the

---

[18]     In addition, Plaintiff's position defies common sense.  If this Court were to accept Plaintiff's argument, any substitute trustee who notifies a defaulting mortgagor of the lender's right and intention to foreclose on a secured property without first having the note or an executed lost note affidavit has breached a fiduciary duty to the mortgagor—despite there not being any mention of this as a prerequisite to sending foreclosure notices in the debt instrument, the security instrument, the controlling statute, or judicial precedents.

[19]     *E.g.*, *Horvath v. Bank of New York, N.A.*, 641 F.3d 617, 623 n.3 (4th Cir. 2011).

lender and servicer.  And Virginia law does not require that a trustee have possession of a note or a lost note affidavit at any time before the foreclosure sale.  Based on any and all of these reasons, Plaintiffs fail to state claims against Defendants in Count I of the Complaint.

### 2.    Plaintiffs Do Not Plausibly Allege That the Notices Were Deficient.

Plaintiffs further allege that Defendants violated their fiduciary duties with the bald assertion that they did not "actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law."  Banks Am. Compl. ¶ 83; Chatter Am. Compl. ¶ 72. Plaintiffs fail to make a single factual allegation regarding the contents of the notice of foreclosure sale in support of this legal conclusion.  Accordingly, this allegation must be dismissed.

As a preliminary matter, many of the notice requirements for sale under a deed of trust are only governed by the Code of Virginia if they are not otherwise set forth in the deed of trust. *See, e.g.*, VA. CODE ANN. § 55-59.2(A)(2) (listing the publication requirements for sale "[i]f the deed of trust does not provide for the number of publications"); *see generally* VA. CODE ANN. § 55-59.1 *et seq.*  Plaintiffs do not produce the Deeds of Trust, and they do not identify which provisions govern the allegedly deficient notice—whether in the Deeds of Trust or at law.  Thus, it is difficult to determine how the notice of foreclosure sale "did not comply with Virginia law."

In addition, federal courts throughout the Commonwealth have rejected similarly bald allegations concerning notices of foreclosure sale.  In *Condel v. Bank of America, N.A.*, 2012 U.S. Dist. LEXIS 93206, at *14–15 (E.D. Va. July 5, 2012), this Court considered and rejected claims that "[n]o-one acting as creditor sent to [the plaintiff] any notice that complied with the language set forth in the deed of trust."  The Court noted that the plaintiff did not state that she did not receive a notice, nor did she specify the contents and nature of the letter.  *Id.*  Thus, the

Court dismissed the claim because the plaintiff failed to allege "enough facts to state a claim to relief that is plausible on its face." *Id.* (citing *Twombly*, 550 U.S. at 570).[20]

In *Sheppard v. BAC Home Loans Servicing, LP*, 2012 U.S. Dist. LEXIS 7654, at *29 (W.D. Va. Jan. 24, 2012), the court considered allegations that a trustee "unlawfully advertised the subject property for sale at foreclosure, unlawfully auctioned it off, and unlawfully retained a commission for doing so."   The court observed that the plaintiff did not actually identify deficiencies in the way the trustee performed those tasks.  *Id.* at *30.  Thus, the court dismissed the allegations:  "Beyond the conclusory assertion that the advertisement of the foreclosure sale and the subsequent auction were 'unlawful,' the complaint is completely devoid of any factual allegations that would support a claim against [the trustee]."  *Id.*

In the instant cases, as in *Condel* and *Sheppard*, Plaintiffs have failed to allege anything more than the legal conclusion that Defendants failed to take the necessary actions regarding the notice of foreclosure sale.  They do not appear to allege that they did not receive a notice, they make no allegations concerning the contents of that notice, and they fail to identify deficiencies in the way the Defendants gave notices.  Accordingly, Count I should be dismissed.

### 3.    Defendants' Relationships Do Not Disqualify Them from Exercising Powers Conferred by the Deed of Trust.

The claim that Defendants failed to act impartially is a legal conclusion unsupported by factual allegations.  Plaintiffs do not identify a single instance when Defendants failed to act as an impartial or neutral substitute trustee.   Instead, they allege that the affiliations and relationships between Defendants and the creditors render Defendants unfit to serve as an impartial or neutral substitute trustee. Banks Am. Compl. ¶¶ 85–87; Chatter Am. Compl. ¶¶ 73–

---

[20]    *See also id.* ("Setting aside [the plaintiff]'s 'conclusory statement' that BANA did not 'compl[y]' with its notice obligations under the Deed of Trust . . . , the scant facts provided leave this Court unable to discern the factual basis of [the plaintiff]'s claims.")

76.   This claim fails as a matter of law.

In *Cerceo v. Shmidheiser*, 1997 U.S. App. LEXIS 13680, at *10–12 (4th Cir. June 10, 1997), the Fourth Circuit considered and rejected the very claim that Plaintiff brings now before this Court.   In *Cerceo*, the appellants argued that, because the trustee under a deed of trust also served as counsel for the creditor, "he cannot serve in both capacities without violating his fiduciary duty."   *Id.* at *10–11.   Citing to Virginia Code section 26-58, the Fourth Circuit found that the appellants' allegations did not constitute a violation of Virginia law.   Virginia Code section 26-58 provides, in relevant part, that:

> The mere fact that a trustee in a deed of trust to secure a debt due to a corporation is a stockholder, member, employee, officer or director of, or counsel to, the corporation, **does not disqualify him from exercising the powers conferred by the trust deed nor does it render voidable a sale by such trustee in the exercise of the powers conferred on him by the trust deed** so long as he did not participate in the corporation's decision as to the amount to be bid at the sale of the trust property.

VA. CODE ANN. § 26-58 (emphasis added).   Accordingly, the Fourth Circuit concluded that the trustee "breached no duty owed to the Appellants given that section 26-58 explicitly provides that counsel for a creditor corporation may serve as a trustee under a deed of trust and that a foreclosure sale under such circumstances is valid unless the trustee participates in formulating the foreclosure sale bid."   *Cerceo*, 1997 U.S. App. LEXIS 13680, at *12.

In the instant cases, Plaintiffs claim that the "Substitute Trustees maintain a financial interest in Defendant Friedman. . . and thus none of these parties is an impartial or neutral 'substitute trustee.'"   Banks Am. Compl. ¶ 85; Chatter Am. Compl. ¶ 74.   As provided by Virginia statute, the mere fact that the substitute trustee was a stockholder of a creditor corporation does not disqualify the trustee or void the sale.   VA. CODE ANN. § 26-58. Furthermore, Plaintiff cites (at length) a deposition in "the related *Goodrow* matter" for the

proposition that Defendants maintained "an attorney-client relationship with every possible entity involved." Banks Am. Compl. ¶ 86; Chatter Am. Compl. ¶ 75.  Again, it is irrelevant that the substitute trustee is counsel to the creditor corporation.   Va. Code Ann. § 26-58. Accordingly, Plaintiffs have failed to state a claim under Count I by asserting these relationships make Defendants less than impartial.

### 4.   Plaintiffs' Claims Are Barred by the Economic Loss Doctrine to the Extent That They Exceed the Scope of the Deeds of Trust.

Finally, because Plaintiffs' breach of fiduciary duty claims arise from conduct governed by contracts, they fail to state a claim.  According to Virginia's economic loss rule, a tort claim cannot lie if the alleged conduct relates to the performance of a contract.  *See Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419, 425, 374 S.E.2d 55, 58 (1988) ("Tort law is not designed . . . to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement.").[21]   This rule embodies the Supreme Court of Virginia's commitment to safeguard against "turning every breach of contract into an actionable claim for fraud." *Station #2, LLC v. Lynch*, 280 Va. 166, 174, 695 S.E.2d 537, 541 (2010).

Plaintiffs allege that the Deeds of Trust are construed under contract principles.  *E.g.*, Banks Am. Compl. ¶ 73.  This allegation is consistent with law.  *Carter*, 2008 U.S. Dist. LEXIS 67014, at *30; *generally supra* Part III.B.1.b.  To this extent, Plaintiffs cannot bring negligence claims against Defendants for any alleged duties existing outside of the express terms of the contractual relationship.  *See Salazar v. U.S. Bank, N.A.*, 82 Va. Cir. 344, 348 (2011) ("Equity had no relationship with the Salazars absent the Deed of Trust, and thus any fiduciary duty

---

[21]    *See also Augusta Mut. Ins. Co. v. Matson*, 274 Va. 199, 205–06, 645 S.E.2d 290, 294 (2007) (stating that fraudulent representations made during the performance of a contract do not give rise to a fraud claim); *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 559, 507 S.E.2d 344, 347 (1998) (holding that fraudulent performance of a contract does not give rise to a fraud claim because the source of any duty breached arises from the contract).

allegedly breached existed solely because of this contractual relationship.  Therefore, the Court

holds that the Salazars failed to assert a valid claim for negligence . . . .").  Thus, any allegations

in Counts I that exceed the scope of the Deeds of Trust should be dismissed.

## C.   Plaintiffs' Individual Fraud Claims Should Be Dismissed (Counts II).

Plaintiffs allege that Defendants made material misrepresentations in their letters

concerning the foreclosure sale, as well as in the Substitution of Trustee documents and Trustee's

Deeds.[22]  Plaintiffs' allegations do not meet the heightened pleading requirements for fraud.

Furthermore, Plaintiffs have not alleged and cannot establish the essential elements of their

claims.  Finally, these claims are precluded by Virginia's economic loss doctrine.

### 1.   Plaintiffs Have Not Pleaded Fraud with the Requisite Specificity.

Fraud claims are subject to a heightened pleading standard.  Fed. R. Civ. P. 9(b); *see also*

*Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 385, 493 S.E.2d 516, 520 (1997)

("Generalized, nonspecific allegations . . . are insufficient to state a valid claim of fraud.").  To

comply with this heightened standard, a plaintiff alleging fraud must, "at a minimum, describe

'the time, place, and contents of the false representations, as well as the identity of the person

making the misrepresentation and what he obtained thereby.'  These facts are often 'referred to as

the "who, what, when, where, and how" of the alleged fraud.'"  *Wilson v. Kellogg Brown & Root,*

*Inc.*, 525 F.3d 370, 379 (4th Cir. 2008).  "[L]ack of compliance with Rule 9(b)'s pleading

requirements is treated as a failure to state a claim under rule 12(b)(6)."  *Harrison v.*

---

[22]     To begin, Plaintiffs lack standing to challenge the Substitution of Trustee or
Trustee's Deed.  *See Bennett v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 54725 at *21 (E.D.
Va. Apr. 18, 2012) ("[B]ecause Plaintiff was not a party to the document appointing PFC, he
lacks standing to challenge the validity of the appointment.  BANA appointed PFC as substitute
trustee and the lender's counsel prepared the document; [Plaintiff] had no direct involvement.");
*Sheppard*, 2012 U.S. Dist. LEXIS 7654, at *21 n.7, *29 n.8.

*Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999).  Plaintiffs' generalized allegations of fraud do not rise to these heightened pleading requirements.

Plaintiffs allege three false representations concerning the "Substitution of Trustee document."  Banks Am. Compl. ¶¶ 119–21; Chatter Am. Compl. ¶¶ 109–11.  Plaintiffs do not produce the documents, nor specify who signed the documents.  Furthermore, they make no plausible allegations in support of their legal conclusions that the persons signing the documents did not have "personal knowledge" or "legal standing."  Plaintiffs make three identical allegations concerning the Trustee's Deeds.  Banks Am. Compl. ¶¶ 122–24; Chatter Am. Compl. ¶¶ 112–14.  These allegations are deficient for precisely the same reasons.  Finally, Plaintiffs allege that Defendants made various material misrepresentations in their "correspondences."  Banks Am. Compl. ¶¶ 125–26; Chatter Am. Compl. ¶¶ 115–16.  Chatter cannot, however, identify with particularity when he received <u>any</u> of those correspondences.  *See* Chatter Am. Compl. ¶ 54.  Throughout their Amended Complaints, Plaintiffs provide little to no details of the "who, what, when, where and how."  Thereby failing to meet the threshold requirements of plausibility and to satisfy the heightened pleading standard for fraud.  Accordingly, Plaintiffs' claims under Count II should be dismissed.

**2.       Plaintiff Does Not Allege All the Elements Necessary for a Fraud Claim.**

To state a claim for actual fraud under Virginia law, a plaintiff must allege:  (1) a false representation; (2) of material fact; (3) intentionally and knowingly made; (4) with intent to mislead; (5) reliance by the party misled; and (6) resulting damage to the party misled.  *State Farm Mut. Auto Ins. v. Remley*, 270 Va. 209, 218, 618 S.E.2d 316, 321 (2005).  Plaintiffs' allegations do not identify false representations of material fact.  Furthermore, they have not plausibly alleged that they relied on those representations or that they were damaged.

32

### a.    Plaintiffs Have Not Identified a False Representation of Material Fact.

In order to state a claim for fraud, Plaintiffs must first state a plausible allegation that the Defendants' representations were, in fact, false. *See Bennett*, 2012 U.S. Dist. LEXIS 54725, at *24–25 ("[B]ecause Plaintiff has not plausibly alleged that PFC's appointment was invalid in the first instance, Plaintiff has not pled facts from which the Court can reasonably infer the first element of fraud—a false representation."). Here, Plaintiffs make unsubstantiated allegations that the persons signing documents lacked "personal knowledge" or "legal standing." Banks Am. Compl. ¶¶ 120–21, 123–24; Chatter Am. Compl. ¶¶ 110–11, 113–14. They baldly assert that the Servicers were not the "current Noteholder of Plaintiff's Mortgage." Banks Am. Compl. ¶¶ 119, 122, 126; Chatter Am. Compl. ¶¶ 109, 112, 116. These claims are unsupported legal conclusions that this Court need not accept. *Revene*, 882 F.2d at 873; *Hirst*, 604 F.2d at 847.

Furthermore, similar claims have been attempted and rejected before as immaterial. In *Wolf v. Federal National Mortgage Ass'n*, 2011 U.S. Dist. LEXIS 135259, at *29–36 (W.D. Va. Nov. 23, 2011), for example, the plaintiff alleged that the creation of the document appointing the substitute trustee was an act of fraud because certain pages were not attached when the document was executed. *Cf.* Banks and Chatter Am. Compls. ¶¶ 28–29. The court rejected this claim. It held that the alleged misrepresentation was immaterial because the document ultimately represented the intentions of the parties that created it. *Id.* at *31 ("The document appointing PFC as substitute trustee, regardless of whether its pages were attached when it was executed, captured the intent of both BAC and PFC to be bound by it. In other words, both BAC and PFC wanted PFC to take Barrett's place as trustee.").[23] In the instant case, Plaintiffs do not (and cannot) allege that Defendants and the Servicers did not intend to be bound by the

---

[23]    *See also Bennett*, 2012 U.S. Dist. LEXIS 54725, at *25 (rejecting a plaintiff's claim for fraud relating to the appointment of a substitute trustee because the plaintiff did "not allege that the document . . . misrepresents the intentions of either party").

Substitutions of Trustee or Trustee's Deeds.  Thus, the alleged representations are immaterial.

### b.  Plaintiffs Cannot Plausibly Plead Reliance and Resulting Damage.

Furthermore, Plaintiffs cannot show that they relied on the Defendants' alleged misrepresentations or that they suffered damage as a result of those representations.  In *Cormier v. Atlantic Law Group*, 2012 U.S. Dist. LEXIS 110885, at *12–15 (E.D. Va. Aug. 7, 2012), Judge Spencer recently considered and rejected a fraud claim in connection with a foreclosure sale.  The plaintiffs argued that their failure to avoid foreclosure resulted from their reliance on the defendant's statement that the foreclosure sale had been cancelled.  *Id.* at *14.  Because the plaintiffs had defaulted on their mortgage obligation and made no allegations that the misrepresentation contributed to that default, Judge Spencer dismissed their claim.  Specifically, he reasoned:

> Plaintiffs cannot show that the alleged injury suffered was the result of their reasonable reliance on Defendant's representation as opposed to Plaintiffs' default on their mortgage obligations.  Stated differently, **Plaintiffs cannot show that absent Defendant's representation they would have been able to prevent their home from being foreclosed**.

*Id.* at *11 (emphasis added).

Judge Spencer's holding is consistent with the considerable weight of authority throughout this Commonwealth.  *See Browning v. Fed. Nat'l Mortg. Ass'n*, 2012 U.S. Dist. LEXIS 47819, at *10 (W.D. Va. Apr. 5, 2012) ("[S]he makes no plausible allegations of what actions she would have taken to prevent the foreclosure sale or that such actions would have prevented the foreclosure sale. . . .  Thus, she cannot show that had the representations not been made . . . she would have been able to save her home from foreclosure."); *Wolf*, 2011 U.S. Dist. LEXIS 135259, at *32 ("Indeed, by the time PFC entered the scene, Wolf had already fallen into arrears on the note.  Thus, Wolf simply cannot argue that she relied on any misrepresentations to

her detriment."); *Washington v. CitiMortgage, Inc.*, 2011 U.S. Dist. LEXIS 52105, at *27 (E.D. Va. May 16, 2011) ("The plaintiffs could not have relied upon this statement.  The Washingtons do not contend that they were mixed up and sent mortgage payments to the wrong bank or that they have not been credited with whatever mortgage payments they made.").

In the instant cases, Plaintiffs readily (albeit vaguely) identify alleged misrepresentations in the foreclosure process.  Banks Am. Compl. ¶¶ 119–26; Chatter Am. Compl. ¶¶ 109–16. They do not, however, contend that they were current under the terms of their Notes and Deeds of Trust.  Nor do they allege that they sent payments to the wrong bank.  Instead, Plaintiffs assert that they "acceded" to the foreclosure and "did not put up a legal fight" to the foreclosures of their former Properties.  Banks Am. Compl. ¶ 128; Chatter Am. Compl. ¶ 118.  Specifically, they do not allege that they could have avoided the foreclosure proceedings.  Instead, Plaintiffs argue that their damages lie in foregoing an opportunity to remain in the Properties long after they had failed to meet their mortgage obligations.  This "forbearance" does not constitute a cognizable damage at law, and any implication or inference to the contrary is decidedly implausible.  Thus, Plaintiffs' fraud claims under Count II should be dismissed.

### 3.    Plaintiffs' Claims Are Barred by Virginia's Economic Loss Doctrine.

As discussed above, deeds of trust are treated under the same principles as contracts. *Carter*, 2008 U.S. Dist. LEXIS 67014, at *30; *generally supra* Part III.B.1.b.  Furthermore, the Notes and Substitutions of Trustee are contracts.  *See Wolf*, 2011 U.S. Dist. LEXIS 135259, at *35 ("[T]he note evidencing the loan, the deed of trust securing it, the assignment to BAC, and the appointment of PFC all represent contracts.").  Thus, any duties owed by Defendants to

Plaintiffs would not exist absent these written agreements. *Id.*[24] Plaintiffs cannot recover in tort simply by recasting a contract claim as fraud, and so Plaintiffs' fraud claims must be dismissed.

**D.     Plaintiffs' Individual Civil Conspiracy Claims Should Be Dismissed (Counts III).**

Under Virginia common law, a civil conspiracy is "a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose or to accomplish some purpose not itself criminal or unlawful by criminal or unlawful means." *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003). Plaintiffs have not alleged an actionable claim for civil conspiracy because they do not identify a sufficient number of participants, they have not pleaded the requisite intent, and their underlying claims fail.  Accordingly, this Court should dismiss Counts III.

**1.     Plaintiffs Do Not Identify the Requisite Number of Parties for a Conspiracy.**

A conspiracy requires that at least two persons or entities act in concert to accomplish an unlawful purpose or to accomplish some purpose by unlawful means. *Ross v. Peck Iron & Metal Co.*, 264 F.2d 262 (4th Cir. 1959).  Plaintiffs identify "Defendants" (Friedman & MacFadyen, F&M Services, and Muncy) and the Servicers as parties to the conspiracy. *E.g.*, Banks Am. Compl. ¶ 134; Chatter Am. Compl ¶ 124.  None of the parties, however, constitute separate entities for the purposes of conspiracy.

It is well-settled under the intracorporate conspiracy doctrine that an entity cannot conspire with itself. *Buschi v. Kirven*, 775 F.2d 1240, 1251 (4th Cir. 1985).  Consequently, individual defendant employees cannot constitute the separate entities necessary to create a conspiracy because the employer and individual employees are viewed as a single entity. *See id.*

---

[24]     *See also Salazar*, 82 Va. Cir. at 347–48 (applying the Economic Loss Rule to breach of fiduciary duty claims brought against a trustee).

(stating that "[s]imply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation").[25]   As alleged, Muncy is an employee or officer of both Friedman & MacFadyen and F&M Services. Banks and Chatter Am. Compls. ¶¶ 9, 14.   Accordingly, he cannot conspire with either.

Similarly, a corporation and its wholly-owned subsidiary cannot conspire for the purposes of civil conspiracy to commit unlawful acts.   *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 169 (4th Cir. 2002); *Greenville Publ'g Co., Inc. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974).   As alleged, F&M Services is a shell corporation owned by Friedman & MacFadyen. Banks and Chatter Am. Compls. ¶ 11.   Thus, F&M Services cannot conspire with Friedman & MacFadyen.

Moreover, attorneys cannot be liable for conspiracy based upon actions taken during the exercise of their professional functions.   *See, e.g.*, *Cherokee Corp. v. Chicago Title Ins. Corp.*, 35 Va. Cir. 19, 32–33 (Warren County 1994) ("An attorney acting within the scope of his employment as attorney is immune from liability to third persons for actions arising out of that professional relationship.").   Plaintiffs allege that Defendants acted as attorneys for the Servicers. For example, Defendants were "designated counsel" for Fannie Mae.   Banks Am. Compl. ¶ 71. Therefore, Defendants cannot conspire with Fannie Mae or the Servicers—Fannie Mae's agents acting as such.   Each of these reasons requires dismissal of the conspiracy claim.

### 2.    Plaintiffs Do Not Allege Concert of Action and Unity of Purpose.

Plaintiffs must allege that "a defendant and his coconspirators combined together to effect a 'preconceived plan and unity of design and purpose, for the common design is the essence of the conspiracy.'   *First Hand Commc'ns, LLC v. Schwalbach*, 2006 U.S. Dist. LEXIS

---

[25]    *See also id.* at 1251 ("A corporation cannot conspire with itself any more than a private individual can, and . . . the acts of the agent are the acts of the corporation.").

87844, at *15 (E.D. Va. Dec. 4, 2006) (quoting *Bay Tobacco*, 261 F. Supp. 2d at 499). Consequently, "in order to survive a motion to dismiss, Plaintiff must at least plead the requisite concert of action and unity of purpose in more than 'mere conclusory language.'" *Bay Tobacco*, 261 F. Supp. 2d at 499.

In *Lewis v. Gupta*, 54 F. Supp. 2d 611 (E.D. Va. 1999), the court considered and rejected a plaintiff's civil conspiracy claim because it did not plead a concerted action or preconceived plan. Specifically, the court observed that the "allegations concerning [the defendant]'s participation in the conspiracy are very thin. Crucially, there is no evidence that [the defendant] ever admitted he knew that his daughter's accusations were false." *Id.* at 619. Similarly, in *Bay Tobacco*, the court rejected a civil conspiracy claim because the plaintiff alleged certain actions by one defendant, and certain actions by another, but no concerted unlawful scheme. 261 F. Supp. 2d at 499–500. Finally, in *First Hand*, the court rejected a civil conspiracy claim because the plaintiff "fail[ed] to aver any concerted action or preconceived plan, but instead ambiguously plead a conspiracy of 'working together in a scheme.'" 2006 U.S. Dist. LEXIS 87844, at *16.

In this case, Plaintiffs have not suggested that the Servicers knew of the Defendants' alleged acts; nor do they allege how either party acted in concert with the other. Plaintiffs address the conduct of Defendants throughout the Amended Complaints, and then ambiguously allege Litton and Chase participated too. *Cf.* Banks Am. Compl. ¶¶ 134, 137; Chatter Am. Compl. ¶ 124, 127. Accordingly, Plaintiffs' civil conspiracy counts should be dismissed.

### 3.   Because Plaintiffs' Underlying Claims Fail, They Cannot State Actionable Claims for Civil Conspiracy.

"The gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use unlawful means. In other words, ***the basis of the action***

38

*is the wrong which is done under the conspiracy* and which results in damage to the plaintiff."
*Gallop v. Sharp*, 179 Va. 335, 338, 19 S.E.2d 84, 86 (1942) (emphasis added).  As noted above,
Plaintiffs' claims for breach of fiduciary duty and fraud should be dismissed.  *See supra* Parts
III.B, III.C.  Because Plaintiffs cannot establish an action for any underlying wrong, their claims
for civil conspiracy under Count III of the Amended Complaints should be dismissed.

**E.     These Portions of the Amended Complaints Seeking Class Action Certification
         Should Be Dismissed (Counts I and IV).**

For the reasons previously asserted, Plaintiffs' claims for breach of fiduciary duty and
RICO violations should be dismissed.  *See supra* Parts III.A, III.B.  Since no individual claim for
breach of fiduciary duty or RICO may be asserted, no class action predicated upon the same
allegations is appropriate.   In addition, Plaintiffs have failed to state grounds upon which class
action relief is appropriate; thus, portions seeking class action certification should be dismissed.[26]

**1.     Plaintiffs Do Not Meet the "Adequacy" Prerequisite for a Class Action.**

For a class action, of any type, Plaintiffs must satisfy four pre-requisites of a Rule 23
class action.  Fed. R. Civ. P. 23(a).  These are: (1) that the class is so numerous that joinder of
the claims is impractical (numerosity); (2) that there are questions of law or fact common to the
class (commonality); (3) that the claims and defenses of the representative plaintiff is typical of
the class (typicality); and (4) that the representative party of the class will fairly and adequately
protect the interests of the class (adequacy).  Fed. R. Civ. P. 23(a); *Thorn v. Jefferson-Pilot Life
Ins. Co.,* 445 F.3d 311, 318–319 (4th Cir. 2006).  Plaintiffs fail to state a claim with respect to
the adequacy prerequisite.

---

[26]     Defendants' Motion to Dismiss the class action claims pursuant to Fed. R. Civ. P.
12(b)(6) is not a waiver of, nor a substitute for, the class certification hearing required by Fed. R.
Civ. P. 23(c), which hearing would necessarily require the Court's consideration of evidence and
not just Plaintiffs' allegations in the Amended Complaints.

> The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.  *See General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157-158, n.13, 72 L. Ed. 2d 740, 102 S. Ct. 2364 (1982). "[A] class representative must be part of the class and 'possess  the same interest and suffer the same injury' as the class members." *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 52 L. Ed. 2d 453, 97 S. Ct. 1891 (1977) (*quoting Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216, 41 L. Ed. 2d 706, 94 S. Ct. 2925 (1974)).

*Amchem Prods. v. Windsor*, 521 U.S. 591, 625–626 (1997).

Plaintiffs are not adequate class representatives.  Plaintiffs allege that at least one Defendant is "defunct," Banks and Chatter Am. Compls. ¶ 4, and that "[t]he primary asset available for all class members is the limited insurance fund held by Defendants."  Banks Am. Compl. ¶ 109; Chatter Am. Compl. ¶ 101.  Plainly, what opportunities there may be for a recovery by any member of the putative classes will be against any limited funds available to the Defendants.

Because, for example, each individual member of the putative classes will have different damages, different resulting circumstances from their alleged damages, different opportunities and eligibility to mitigate their damages, different understandings of their obligations, and thus different reliances upon alleged statements by the Defendants, their entitlement to recover will be different.   Consequently, representative Plaintiffs, and putative class counsel, cannot adequately represent all putative class members because each dollar recovered for one putative class member operates to erode the availability of dollars for all other members of the putative class.  A plaintiff's counsel who urges maximal recovery for plaintiff Buel, for example, does so at the peril of forsaking the interests of plaintiff Goodrow to whom fewer dollars will necessarily be available if Plaintiff Buel succeeds.  Neither plaintiff can be expected to accede to the request of the other to forego some claim in deference to his co-class member's interests.

The *AmChem* Court's ruling, when holding the range of injuries in that class action was

too broad for a single representative claimant to adequately represent the interests of the entire class, applies with equal force here: "The settling parties, in sum, achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected. *Although the named parties alleged a range of complaints*, each served generally as representative for the whole, not for a separate constituency." *Amchem Prods. v. Windsor*, 521 U.S. 591, 627 (1997) (emphasis added). Subsequent to *Amchem,* the Supreme Court in *Ortiz v. Fibreboard* made clear that a single representative, or plaintiff's counsel, cannot, within the requirements of Fed. R. Civ. P. 23(a)(4), represent disparate putative class members whose interests in the outcome of litigation conflict with one another. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 847 (1999) (disallowing on adequacy of representation grounds class action where interests of already injured plaintiffs were not represented differently than the interests of plaintiffs who may have future claims against defendant with a limited fund from which recovery might be had); *see also Abren v. Black & Decker*, 654 F.2d 951, 955 (4th Cir. 1981) (class representative whose injuries differ from putative class inadequate).

The Rule 23(a)(4) failures highlighted by the Supreme Court in *Amchem* and in *Fibreboard* are precisely those that exist here. Consider, for example, how Plaintiff Banks might respond to information that Plaintiff Chatter failed to avail himself of an opportunity to mitigate his damages by refinancing his home mortgage or to sell his home, before foreclosure, at an advantageous sales price. Plaintiff Banks has an economic interest in limiting her co-class member's access to any limited fund recovery because of Chatter's failure to mitigate damages. Putative class counsel cannot vindicate Plaintiff Banks's interests without taking an adverse position to Plaintiff Chatter. And consider, for example, if the total recovery in the litigation is insufficient to pay all putative class members' damages claims. Plaintiff Banks could not urge a model of compensation that advantages herself at the expense of her putative co-class members,

but cannot be expected to set aside her own economic interests to the betterment of those of her co-class members.

## 2.    Plaintiffs Have Failed to State a Claim That Any of the Permissible Class Action Types are Appropriate for Certification in this Case.

In addition to the prerequisites contemplated by Rule 23(a), a class action may only be maintained if the putative action meets the criteria for one of three types prescribed by Rule 23(b):  (1) a class to avoid inconsistent adjudications or to avoid dispositive rulings for absent class members; (2) a class seeking predominantly injunctive or declaratory relief; or (3) a class seeking money damages for class members when a class action is superior to other available methods for adjudicating the controversy.  Fed. R. Civ. P. 23(b); *Thorn*, 445 F.3d at 318–319. Plaintiffs do not state a claim satisfying the criteria for any of the three types of class actions.

### a.    Plaintiffs Fail to State a Claim in Support of Rule 23(b)(1) Class Certification.

Fed. R. Civ. P. 23(b)(1) does not support a class action in this case.  There is no risk of inconsistent or varying adjudications with respect to individual class members that would set incompatible standards of conduct for the Defendants.   Fed. R. Civ. P. 23(b)(1)(A).   All the plaintiffs with claims pending against the Defendants in Virginia have cases pending in this very Court, before this very judge.  The only lawyers representing plaintiffs against these Defendants in Virginia are those representing Plaintiffs.   Certifying a class action in this case affords no additional consolidation and mitigates no risk of inconsistent verdicts that the current litigation posture of this case, and related cases in this Court, do not already provide.  While it is true that the Court may rule on a legal question in one plaintiff's case that has implications for another plaintiff, that is a consideration of no great moment since (i) that is true in all litigation for all future litigants, and (ii) in this litigation all the plaintiffs, and the putative class, are represented

by the same lawyers thus protecting their interests regardless of the certification, or not, of a class action.

To the extent Plaintiffs seek a Rule 23(b)(1) class action because of the risk that Defendants' limited fund assets will be exhausted, that consideration militates against a class action rather than counsels in favor of it.   For plaintiffs alleging damages that measure in the hundreds of thousands dollars, as Plaintiffs appear to allege, *see, e.g.,* Am. Compls. Count II (alleging wrongful foreclosure with respect to a home secured by a mortgage of more than $100,000 in addition to reputational and emotional damages), and seeking recovery against a limited fund of resources, they would be far better served to each protect their own interests than to rely upon a single representative plaintiff and lawyer who must try to balance one class member's interests against those of other class members.

"The inherent tension between representative suits and the day-in-court ideal is only magnified if applied to damages claims gathered in a mandatory class. Unlike Rule 23(b)(3) class members, objectors to the collectivism of a mandatory subdivision (b)(1)(B) action have no inherent right to abstain.  The legal rights of absent class members (which in a class like this one would include claimants who by definition may be unidentifiable when the class is certified) are resolved regardless either of their consent, or, in a class with objectors, their express wish to the contrary." *Ortiz*, 527 U.S. at 846–847.

### b.      Plaintiffs Fail to State a Claim in Support of Rule 23(b)(2) Class Certification.

Rule 23(b)(2) class certification is inappropriate unless the exclusive or predominant relief sought is declaratory or injunctive.  *Thorn,* 445 F.3d at 318–319.  In these cases, Plaintiffs seek primarily money damages including "compensatory, punitive, and treble damages" against the Defendants and Plaintiffs assert that the primary asset of Defendants against which Plaintiff

seek to recover is an insurance policy, Banks Am. Compl. ¶ 109; Chatter Am. Compl. ¶ 101. Since Plaintiffs seek primarily money damages, Rule 23(b)(2) class certification is inappropriate.

      **c.**    **Plaintiffs Fail to State a Claim in Support of Rule 23(b)(3) Class Certification.**

             **i.**    **Plaintiffs do not state a claim that common questions of law or fact *predominate* over questions affecting only individual members.**

Each of the plaintiffs in each of the purported class actions has their own particular considerations that relate to their own loans, their own foreclosure processes, their own indebtedness, and their own damages. Some plaintiffs may have been, at the time of their foreclosure, many months in arrears on their debts; others may have been less so. Some plaintiffs' indebtedness may have been mitigated by debt relief programs, while other plaintiffs may have been ineligible for that kind of mitigation. Some plaintiffs, by operation of their foreclosure may have lost some equity in their homes; others may have lost none. Some plaintiffs may allege their subjective impression of communications from the Defendants caused them detrimental reliance; others may testify differently. Each of these are individualized inquiries.

By Plaintiffs' own admission, the allegations concerning fraudulent use of documents may apply to some but not all of the putative class. For example, even while claiming Defendants' practices included "uniformly" using fraudulent processes and practices across "all foreclosure files" her counsel admits that "uniformly" and "all" may not mean "uniform" or "all": "Her counsel assumes that this [uniform practice] may not have always been the case – at some point in the past Defendants' attorneys may have actually signed documents, determined whether a Note was actually lost and confirmed the actual creditor/servicer before claiming their appointment as Trustee." Banks Am. Compl. ¶ 146; Chatter Am. Compl. ¶ 136. Remarkably,

Plaintiffs, in the same paragraphs in their Amended Complaints, simultaneously maintain that (i) Defendants did the same unlawful things all the time and (ii) assume that sometimes Defendants did *not* do the same unlawful things all the time.

Apart from those statements being inherently irreconcilable, it is clear from this stark admission that Plaintiffs have not stated a claim that the putative classes have claims that involve common questions of fact and law.  Furthermore, the quoted proceedings Plaintiffs insert into the Amended Complaints include testimony of two lawyers from the Firm's Maryland office, regarding practices particular to that office, applicable to foreclosures of Maryland properties pursuant to Maryland's hybrid non-judicial/judicial process.   So, Plaintiffs ground their allegations of common questions in these Virginia foreclosure cases on practices two non-party lawyers to this case (MacFadyen and Menchel) used in Maryland—a far cry from what Rule 23(b)(3) requires.   And, even if these practices were followed in the Firm's Virginia office, this would not present a material legal question. One court in the Fourth Circuit identified consumer "robo-signing" complaints as a complete red herring, exposing the blatant shortcomings of such claims:

> Plaintiffs fail to indicate how the alleged forgeries of the foreclosure documents materially impacted the debtors' conduct or how the signatures caused Plaintiffs a specific harm separate from the debt owed. The manner or procedure of affixing signatures to documents that are accurate in every other way except for the signature does not affect the accuracy of the underlying debt. Plaintiffs have conceded that they were late on their mortgage payments. The actual process and method of affixing signatures to court documents is immaterial to a debtor where the existence of the debt and a default are not disputed.

*Stewart v. Bierman*, 2012 U.S. Dist. LEXIS 64355, at *37–38 (D. Md. May 8, 2012).

Some plaintiffs may claim emotional injuries or consequential damages that are wholly unique to their own circumstances while other plaintiffs may have no such claim at all.  Those circumstances, that are germane not just to a putative class members' damages but also to their

underlying claims that Defendants are liable, and those losses, if recoverable, are not measurable

by reference to some mathematical or arithmetic calculation but are, instead, precisely the sort of

inquiries that require individualized attention:

> Thus in cases where the fact of injury and damage breaks down in what may be characterized as "virtually a mechanical task," "capable of mathematical or formula calculation," the existence of individualized claims for damages seems to offer no barrier to class certification on grounds of manageability.  On the other hand, where the issue of damages and impact does not lend itself to such a mechanical calculation, but requires "separate 'mini-trial, [s]' of an overwhelming large number of individual claims, courts have found that the "staggering problems of logistics" thus created "make the damage aspect of [the] case predominate," and render the case unmanageable as a class action. And this latter view accords with the purpose of Rule 23 which, was to "achieve economies of time, effort, and expense,   and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."

*Windham v. Am. Brands, Inc.*, 565 F.2d 59, 68–69 (4th Cir. 1977) (citations omitted).  Class

actions in these cases will require dozens, or scores, of separate proceedings to assess each class

member's liability and damages.

> ### ii.    Plaintiffs' allegations that class litigation is superior to individual litigation are unavailing.

Plaintiffs first allege that consumer claims are "ideal for class treatment," because they

involve "disempowered" claimants "unable" to afford to bring claims for relief.  Banks Am.

Compl. ¶¶ 111(b), 152(b); Chatter Am. Compl. ¶¶ 103(b), 142(b).  Whatever merit that assertion

might have in a consumer class action involving small sums of money where claimants have no

right to recover attorney fees, it is certainly not the case according to the Amended Complaints in

these cases which seek compensatory, punitive, and treble damages plus attorney fees.

Moreover, the experience of this litigation abundantly disproves this claim: Plaintiffs' counsel

has identified more than a dozen plaintiffs who have managed to engage Plaintiffs' counsel and

bear the costs of their own individual claims.   The Amended Complaints neither assert very

small nor *de minimis* damages, that might dissuade individual plaintiffs from pursuing their own claims, nor any facts to support why claimants in this putative class cannot simply engage Plaintiffs' counsel, or others similarly qualified, to represent them if they wish, on terms akin to what Plaintiffs' own counsel has agreed to accept.

Plaintiffs next argue that putative class members might be unaware of their right to bring a claim.  Banks Am. Compl. ¶¶ 111(b), 152(b); Chatter Am. Compl. ¶¶ 103(b), 142(b).   But Plaintiffs offer no explanation for why that should be the case, nor any explanation how Plaintiff came to be aware of the possibility of litigation, nor how any of the more than a dozen plaintiffs represented by Plaintiffs' counsel came to be aware of their rights to sue.  It appears the members of the putative class are readily identifiable by Plaintiffs' counsel who has undertaken to identify potential class members.  *See* Banks Am. Compl. ¶ 105; Chatter Am. Compl. ¶ 97.

For their last argument why class actions would be superior to individual litigation, Plaintiffs offer what appear to be inherently contradictory reasons. They first say individual litigation would be a "waste of resources."  Banks Am. Compl. ¶ 111(b); Chatter Am. Compl. ¶ 103(b).  In the very next sentences, though, Plaintiffs say that because the litigation touches on similar questions from claimant to claimant, "[o]ne win for one consumer would set the law as for every similarly situated consumer."  *Id.*  If, as Plaintiffs seem to suggest, ordinary rules of *stare decisis* would apply to "set the law" for all litigants in this action, it is difficult to see why a class action is superior to individual "one consumer" litigation.

Not only do Plaintiffs offer no good reason for a class action, but they fail to take into account all the reasons why class litigation is *inferior* to individual litigation: the forsaken opportunity for individual litigants to present the circumstances of their liability claims for adjudication, the forsaken opportunity for individualized assessment of plaintiffs' damages, the inability to reduce plaintiffs' claims, including those for consequential damages related to fraud,

emotional distress, and breach of fiduciary duty, to arithmetic or mathematic determinations that might make individualized assessments of damages unnecessary.

> **d.      Plaintiffs Fail to State a Claim that the Pertinent Factors Prescribed by Rule 23(b)(3) Suggest a Class Action is Superior to Individualized Litigation.**

Rule 23(b)(3) sets out four pertinent matters to consider when determining whether a class action is superior to individualized litigation.  Plaintiffs' Amended Complaints address none of these.  The pertinent factors are: (1) the class members' interests in individually controlling their cases; (2) the extent of any litigation already underway concerning the controversy; (3) the desirability of concentrating the litigation in a single forum; (4) the difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3).

Because Plaintiffs have simply made no allegation concerning these factors, they fail to state a claim why a Rule 23(b)(3) class action is appropriate.  Moreover, each of the Rule 23(b)(3) pertinent factors, in the context of this case, counsel against a class action.

**First**, class members who Plaintiffs assert have significant claims to present to the Court have a strong interest in controlling their own litigation choices and not subsuming them to the interests of other class members whose liability and damages claims may differ widely based on their individual circumstances.  **Second**, counsel for Plaintiffs have already filed eleven or more actions against these Defendants, which accounts for a substantial portion of the putative class. **Third**, all the Virginia cases against Defendants are already pending in the Richmond division of the Eastern District of Virginia and any new actions against the Defendants related to Virginia proceedings are properly venued in Richmond.  Local Rule 3(C).  **Fourth**, as already discussed, the difficulties of managing a class action when the claimants underlying facts supporting liability and facts supporting individualized claims for damages are so different from one

another, are manifest.  And finally, as Plaintiffs allege in their Amended Complaints, the Firm is defunct and has been for several months.  So, the universe of plaintiffs is fixed and new claims are not coming into existence.

## V.
## CONCLUSION

**WHEREFORE**, Defendants respectfully request that this Court grant their Motion to Dismiss the Amended Complaints and award them such other and further legal and equitable relief as this Court deems just and proper.

**Dated:  October 12, 2012**

**Respectfully submitted,**

**FRIEDMAN & MACFADYEN, P.A.,
F&M SERVICES, L.C., and
JOHNIE R. MUNCY,**

**By Counsel**

/s/ Andrew Biondi
Douglas P. Rucker, Jr. (VSB No. 12776)
Andrew Biondi (VSB No. 48100)
Cullen D. Seltzer (VSB #35923)
Faith A. Alejandro (VSB No. 80076)
Eric C. Howlett (VSB No. 82237)
SANDS ANDERSON PC
1111 East Main Street, Suite 2400 (23219)
Post Office Box 1998
Richmond, Virginia 23218-1998
Telephone: (804) 648-1636
Facsimile: (804) 783-7291
Email:  drucker@sandsanderson.com
Email:  abiondi@sandsanderson.com
Email:  cseltzer@sandsanderson.com
Email:  falejandro@sandsanderson.com
Email:  ehowlett@sandsanderson.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of October, 2012, I served a true, complete, and accurate copy of the foregoing by email to the following:

Dale W. Pittman                                        Kristi Cahoon Kelly

The Law Office Of Dale W. Pittman, P.C.
112-A West Tabb Street
Petersburg, Virginia 23803
Telephone: 804-861-6000
Facsimile: 804-861-3368
dale@pittmanlawoffice.com
*Counsel for Plaintiff*

Matthew James Erausquin
Consumer Litigation Associates, P.C.
1800 Diagonal Road, Suite 600
Alexandria, Virginia 22314
Telephone: 703-273-6080
Facsimile: 888-892-3512
matt@clalegal.com
*Counsel for Plaintiff*

Richard J. Rubin, Esq.
1300 Canyon Road
Santa Fe, New Mexico 87501
Telephone: 505-983-4418
Facsimile: 505-983-2050
dickrubin@cs.com
*Counsel for Plaintiff*

John C. Petersen, Esq.
Surovell Isaacs Peterson & Levy PLC
4010 University Drive, Suite 200
Fairfax, Virginia 22030
Telephone: 703-277-9774
Facsimile: 703-591-2149
kkelly@smillaw.com
*Counsel for Plaintiff*

Leonard Anthony Bennett, Esq.
Consumer Litigation Associates, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
Telephone: 757-930-3660
Facsimile: 757-930-3662
lenbennett@cox.net
*Counsel for Plaintiff*

            */s/* Andrew Biondi
_____
Douglas P. Rucker, Jr. (VSB No. 12776)
Andrew Biondi (VSB No. 48100)
Cullen D. Seltzer (VSB #35923)
Faith A. Alejandro (VSB No. 80076)
Eric C. Howlett (VSB No. 82237)
SANDS ANDERSON PC
1111 East Main Street, Suite 2400 (23219)
Post Office Box 1998
Richmond, Virginia 23218-1998
Telephone: (804) 648-1636
Facsimile: (804) 783-7291
Email: drucker@sandsanderson.com
Email: abiondi@sandsanderson.com
Email: cseltzer@sandsanderson.com
Email: falejandro@sandsanderson.com
Email: ehowlett@sandsanderson.com
            *Counsel for Defendants*