## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| **LETONYA BANKS,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 3:11cv614** |
| **FRIEDMAN & MACFADYEN, P.A., et al.,** | |
| **Defendants.** | |

| | |
|---|---|
| **ALLEN CHATTER,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 3:11cv613** |
| **FRIEDMAN & MACFADYEN, P.A., et al.,** | |
| **Defendants.** | **(Consolidated Civil Action No. 3:11cv20)** |

### DEFENDANTS' REPLY MEMORANDUM OF LAW IN
### SUPPORT OF MOTION TO DISMISS BANKS AND CHATTER COMPLAINTS

Defendant law firm Friedman & MacFadyen, P.A., defendant trustee F&M Services, L.C., and defendant Johnie R. Muncy (collectively, **"Defendants"**), by counsel, make the following arguments and cite the following authorities in reply to *Plaintiffs' Opposition to Defendants' Motion to Dismiss* ("Plaintiffs' Opposition Brief").

### I.
### INTRODUCTION

Plaintiffs' Opposition Brief  tells a fantastical tale, depicting Plaintiffs as innocent protagonists and Defendants as conniving doers of dastardly deeds through the use of "weapons or threats by organized crime members" to illicitly deprive Plaintiffs of their homes. Pls.' Opp.

1

7.  Cutting through Plaintiffs' hyperbole and social injustice rhetoric, Defendants direct the Court to reality:  Plaintiffs defaulted on their deed of trust loans.  A servicing company, the agent of the lender and beneficiary of the loan, declared the default and accelerated the balance.  The servicer then retained Defendants to foreclose on the properties securing the loans, which Defendants accomplished.  These were commonplace transactions.  Dozens of foreclosures similarly occur in the Commonwealth each day, and there is nothing sinister about a lender enforcing its interest in property securing its unpaid loan.

Plaintiffs have assembled a mass of rejected theories on which foreclosing law firms and trustees have been sued.  They now attempt to raise the stakes by recasting these theories as conspiratorial racketeering.  Disregarding the formulaic recitals and conclusory pleading, however, lays bare the extraordinary lengths to which Plaintiffs ask the Court to go.

They allege that out-of-state mortgage servicing companies—beyond any possible firsthand knowledge of Plaintiffs—did not possess the deed of trust notes when the servicers' employees/agents signed documents substituting the Defendants as trustees.  The Court should peel away the irrelevant and inflammatory exaggeration of Plaintiffs' pleadings and examine the actual "facts" alleged to determine if there are any that plausibly support the conclusion that the signatory to the substitution of trustee deeds did not possess the notes and had no authority to make the substitutions.  Judges in this district see the absurdity of these claims and reject them, with several correctly finding that a mortgagor lacks standing to attack substitutions.

Plaintiffs' counsel suggests that the numerous precedents within the Fourth Circuit denying and dismissing similar claims are bad law, established by lawyers not so eloquent or clever as they. But the federal judiciary knows the law and applies it regardless of who argues the case.  If a cause of action fails as a matter of law, then it fails.

2

There is great danger in permitting a claim to proceed in which Plaintiffs lack the factual underpinnings to establish that the persons making substitutions either did not possess the note or were not agents of the lender. If Plaintiffs' claims are not rejected on *Twombly/Iqbal* plausibility grounds, then **every** defaulting mortgagor in receipt of a notice from a substitute trustee or subject to foreclosure could file a claim on a fishing expedition and hale far-flung witnesses from financial institutions (many now out of business) into court, with the hope of finding an uncrossed "t" or an undotted "i," flooding the courts with strike suits.

Notwithstanding Plaintiffs' "kitchen sink" approach, the Amended Complaints are little more than contract claims. Defendants were agents and attorneys of the servicer and lender in each instance. According to long-standing Virginia case law, any duties Defendants owed do not arise by common law but rather by contract. The lender and the mortgagor are contractually bound by the deed of trust and note, and the lawyers enforcing the terms of those documents act at their direction. If Defendants failed to comply with the terms of the documents and any statutory default provision in them, the Plaintiffs' claims lie against the lender, not its agents. Courts are clear that fiduciary duties of fairness and impartiality that run from a trustee to a mortgagor apply to the trustee's faithful execution of the terms of the deed of trust. Noncompliance with the terms of the controlling documents gives rise to a claim against the lenders. Plaintiffs have muddied the waters with a protracted and misguided set of allegations sounding in tort. Both amended complaints should be dismissed.

## II.
## ARGUMENT

### A. Plaintiffs' RICO Claims Should Be Dismissed.

#### 1. Plaintiffs Ignore the Fourth Circuit's Scrutiny of RICO Claims.

Plaintiffs' Opposition Brief reflects a major shortcoming by ignoring the plethora of

precedent cited by Defendants that underscores the Fourth Circuit's close scrutiny of RICO

claims. Defs.' Mem. 4–5. They do so by relying on legislative history that "RICO is to be read

broadly." Pls.' Opp. 9 (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985)).  But

the Supreme Court itself cautioned against overextending RICO:

> RICO's "liberal construction" clause . . . is not an invitation to apply RICO to new
> purposes that Congress never intended.  Nor does the clause help us to determine
> what purposes Congress had in mind.  Those must be gleaned from the statute
> through the normal means of interpretation. The clause "only serves as an aid for
> resolving an ambiguity; it is not to be used to beget one."

*Reves v. Ernst & Young*, 507 U.S. 170, 183–84 (1993) (quoting *Sedima*, 473 U.S. at 492 n.10).

Since the Supreme Court's recognition of RICO's "liberal construction," the Fourth Circuit has

expressed a distaste for RICO claims, reserving this "powerful tool" only for "ongoing unlawful

activities whose scope and persistence pose a special threat to social well-being," *Al-Abood v.*

*Elshamari*, 217 F.3d 225, 238 (4th Cir. 2000) (quotation omitted).  Plaintiffs cannot simply

ignore the Fourth Circuit's skeptical view of RICO claims.  Moreover, trial courts in this Circuit

have adopted a similarly skeptical outlook, acting as vigilant gatekeepers by preventing RICO

claims from surviving motions to dismiss in cases alleging more egregious facts than those

pleaded in the case at bar.  *See, e.g., Baker v. Sturdy Built Mfg., Inc.*, 2007 U.S. Dist. LEXIS

78428 (E.D. Va. Oct. 23, 2007) (Hudson, J.) (dismissing RICO claims on a 12(b)(6) motion).

For example, in *Foster v. Wintergreen Real Estate Co.*, 2008 U.S. Dist. LEXIS 90466

(W.D. Va. Nov. 6, 2008), Judge Norman K. Moon granted a Rule 12(b)(6) motion to dismiss a

RICO complaint alleging an illegal real estate racket claiming that 350 sellers were defrauded

through hundreds of predicate acts involving interstate phone calls, faxes, and emails.  Judge

Moon dismissed the RICO claims for the Wintergreen plaintiffs' failure to allege proximate

cause, *id.* at 10–11; their failure to meet Rule 9(b) pleading standards as to all but one defendant,

*id.* at 18–19; and their failure to overcome the great scrutiny afforded to predicate acts of mail and wire fraud to establish a pattern of racketeering activity, *id.* at 19–21. In doing so, he provided a comprehensive analysis of the Fourth Circuit's implementation of Supreme Court authority on RICO that is instructive here.

### 2.    Plaintiffs Fail to Justify Their Threadbare RICO Claims.

Both Amended Complaints are unclear as to whether they seek to allege all or certain substantive RICO claims under 18 U.S.C. § 1962(a)–(d). In so doing, they fail to address certain elements required for each substantive offense. Defs.' Mem. 9. Plaintiffs merely restate their vaguely identified mail and wire fraud allegations; but repetition does not change the nature and character of facts pleaded.[1] Because of their woeful failure to meet the stringent standards of Rule 9(b) pleading for the predicate acts of mail and wire fraud, Plaintiffs desperately suggest that Rule 9(b) is actually relaxed by Rule 11(b)(3). However, a plain reading and application of this rule illuminates the futility of Plaintiffs' efforts to invoke it.

Rule 11(b)(3) states in pertinent part as follows.

> By presenting the court a pleading . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, *if specifically so identified*, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b)(3) (emphasis added).

**First**, a court's allowance of discovery to "flesh out" allegations under this rule is triggered only when plaintiffs "specifically identify" in their complaints those factual contentions that require further discovery. Still, Rule 11(b)(3)'s "relaxation" of pleading standards is limited:

---

[1]    Plaintiffs pander to the Court by portraying the courts of the Commonwealth as victims of Defendants' scheme and inappropriately infusing news commentary without any meaningful analysis as to the sufficiency and legality of the alleged predicate acts.

"[t]olerance of factual contentions in initial pleadings . . . does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; it is *not a license to* join parties, *make claims* or present defenses *without any factual basis or justification*." Fed. R. Civ. P. 11, 1993 advisory committee's note (emphasis added); *In re Kunstler*, 914 F.2d 505, 516 (4th Cir.1990) ("The need for discovery to complete the factual basis for alleged claims is not an excuse to allege claims with no factual basis.").

**Second**, Rule 11(b)(3) applies only if the discovery sought is within the **sole** control of the defendants. Plaintiffs' own cited authority relaxes Rule 9(b) only "where [a] RICO plaintiff lacks access to all facts necessary to detail [the] claim." *Rotella v. Wood*, 528 U.S. 549, 560 (2000).[2] "[T]here must be a *reasonable* basis for a plaintiff's complaint. Attorneys who take advantage of the liberal pleading provisions . . . by commencing a lawsuit in a desperate attempt to unearth a cause of action through discovery must be checked by the ethics provisions of [Rule 11]." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988).

Here, Plaintiffs invoke Rule 11(b)(3) in only one instance: "Upon information and belief, Defendants maintain copies of these letters in their records that can be more specifically identified once produced in discovery." Banks and Chatter Am. Compls. ¶ 54. Yet, in the same breath, Plaintiffs acknowledge that "the Defendants began sending various correspondences to the Plaintiff." Banks Am. Compl. ¶ 53; Chatter Am. Compl. ¶ 54. Plaintiffs admit that the information sought was first and foremost sent to them. This disingenuous assertion of Rule 11(b)(3) militates against relaxation of Rule 9(b) as to every allegation of mail and wire fraud.

---

[2]     *See Corley v. Rosewood Care Ctr., Inc. of Peoria*, 142 F.2d 1041, 1050–51 (7th Cir. 1998) ("[T]he particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim . . . ."); *Michaels Building Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988) ("Courts have held that the rule may be relaxed where information is only within the opposing party's knowledge.").

### 3.   Plaintiffs Cannot Establish a Cognizable Pattern of Racketeering Activity.

Plaintiffs' reliance on *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008), as to what constitutes an adequate "pattern of racketeering activity," is misguided. Pls.' Opp. 14–15, 20. Plaintiffs' descriptions of the holdings in *Bridge* are misleading. **First,** they focused only on the statement of facts[3] but have ignored the Supreme Court's legal analysis. **Second,** they try to analogize the instant cases to the facts in *Bridge*, concluding that the *Bridge* court's recognition of a RICO claim should similarly guide this Court as to the "pattern" element. *Id.* But Plaintiffs misidentify as the *Bridge* Court's holdings points that were merely raised in argument. Pls.' Opp. 14–15, 19; *see Bridge*, 553 U.S. at 647–48 (summarizing "respondents' theory of the case").

**Third,** a basic reading of *Bridge* reveals that the Supreme Court **never** addressed the question of "pattern" or the requisite Rule 9(b) specificity. Rather, the *Bridge* opinion focused solely on "whether first-party reliance is an element of a civil RICO claim predicated on mail fraud." 553 U.S. at 646. This is a question of proximate cause and not the "relationship" prong of a RICO pattern. Unlike the present plaintiffs, the *Bridge* respondents were not recipients of the alleged acts of mail or wire fraud, so the trial court in *Bridge* found that the respondents lacked standing to assert a RICO claim for lack of reliance. *Id.* at 649–50. The Supreme Court disagreed, finding no need for first-party reliance. But this analysis can hardly be said to establish any precedent for "pattern," as Plaintiffs now suggest.

Defendants acknowledge the well-established "continuity plus relationship" test to determine pattern. *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 236 (1989). And there remains

---

[3]   Plaintiffs read into *Bridge* facts that cannot be found in the case. They state "the respondents did not specifically identify every mailing that was sent." *Bridge*, 553 U.S. at 647. But this case lacks any facts to support this assertion; in fact, it fails to address whether the respondents sufficiently pled their RICO claim under Rule 9(b)—standing was the only issue.

no question between the parties that this Court must also analyze multiple factors to determine pattern. *Parcoil Corp. v. NOWSCO Well Serv., Ltd.*, 887 F.2d 503, 504 (4th Cir. 1989).[4]   But Plaintiffs belabor the point by unnecessarily reiterating these standards, Pls.' Opp. 16–18;[5] by restating their vague factual allegations with colorful adjectives, Pls.' Opp. 19; and by ultimately failing to explain how their allegations meet these standards to establish a "pattern."

Defendants, however, have already demonstrated to the Court how, under this "commonsensical fact-specific inquiry," *ePlus Technology, Inc. v. Aboud*, 313 F.3d 166, 181–82 (4th Cir. 2002), the facts as alleged cannot plausibly establish a RICO pattern for their lack of specificity, complexity, pervasiveness, and duration. Defs.' Mem. 12–15. Additionally, Plaintiffs predicate their assertion of the scheme's widespread and pervasive nature on an assumption that they can represent the putative class. That determination, however, remains pending before this Court. In determining the existence of a pattern, the Court cannot consider vaguely-stated predicate acts that do not meet Rule 9(b)'s particularity requirements, as affirmed by Judge Hudson in *Baker*. The Court also must adhere to the Fourth Circuit's demand of a case-by-case determination for assessing pattern. Although both parties have pointed the Court to numerous cases, the most instructive case is *Wintergreen*, which concerned a scheme alleged to have been even more pervasive and widespread than the scheme asserted here. Certainly, *Bridge* is not the game-changer on "pattern" that Plaintiffs contend, given its lack of focus on the subject. Finally, applicable case law requires the Court to scrutinize carefully RICO claims based solely upon mail and wire fraud.

---

[4]     In fact, the Fourth Circuit has been described as using a "hybrid" test for determining pattern because of its recognition that both tests ("continuity plus relationship" and the *Parcoil* multiple factors) are necessary. Artie Jones et al., *Racketeer Influenced and Corrupt Organizations*, 39 AM. CRIM. L. REV. 977, 986 (2002).

[5]     Plaintiffs overemphasize their need to establish a "relationship" among the predicate acts as one element for a pattern, but Defendants take no issue with this rule.

### 4.   Plaintiffs Fail to Allege Proximate Cause.

There is no mention in the Plaintiffs' Opposition Brief of the issue of proximate cause raised by Defendants, Defs.' Mem. 10 – an essential element required under 18 U.S.C. § 1964(c). This Court should recognize "as the *Bridge* Court did, that 'the complete absence of reliance may prevent the plaintiff from establishing proximate cause.'" *Ironworkers Local Union No. 68 v. AstraZeneca Pharm. LP*, 585 F. Supp. 2d 1339, 1343 (M.D. Fla. 2008) (quoting *Bridge*, 553 U.S. at 2144). Importantly, the Supreme Court explained that, in civil RICO claims, "the central question [a court] must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).

For example, in *Wintergreen*, Judge Moon affirmed that "'[t]o meet this burden with respect to mail and wire fraud, a plaintiff must *plausibly* allege both that he detrimentally relied in some way on the fraudulent mailing or wire . . . and that the mailing or wire was a proximate cause of the alleged injury to his business or property.'" *Wintergreen*, 2008 U.S. Dist. LEXIS 90466, at *11 (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 233 (4th Cir. 2004) (noting *Bridge*)). Here, however, Plaintiffs have failed to allege plausibly **any** reliance on the vaguely-alleged acts of mail and wire fraud sufficient for proximate cause. None of the facts pled support a "direct relation" between the predicate acts and the foreclosures.

### 5.   Plaintiffs Fail to Establish an Enterprise.

Plaintiffs concede their need to allege an enterprise separate and apart from the pattern of racketeering for their RICO claims. Pls.' Opp. 10 (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)). Yet they fail to meet the requisite specificity for establishing an "enterprise." *See* Defs.' Mem. 15–16. Plaintiffs cite no authority helpful to their position, merely restating

9

their vague allegations.[6]

In fact, Plaintiffs undermine their assertion of an "enterprise." They state "the profits obtained from the Defendants' enterprise were used to fund its operations, such as paying the salaries of its employees who created and transmit the fraudulently created documents through the mail or paying court fees to file its fraudulently created documents." Pls.' Opp. 13–14. By this statement, Plaintiffs paint themselves into a corner, unable to separate Defendants' alleged enterprise from Defendants' alleged racketeering activity. Nor can Plaintiffs plausibly establish the other entity with which Defendants "associated-in-fact" to create the enterprise, resting only on their conclusory association with the loan servicers—who are not on Defendants' payroll and lack any knowledge of the fraudulent scheme as pleaded. Defs.' Mem. 15–17.

Accordingly, Count IV should be dismissed now.

**B.      Plaintiffs' Breach of Fiduciary Duty Claims Should Be Dismissed.**

   **1.      Plaintiffs Cannot Assert a Common Law Tort Claim Against Defendants for Breach of Fiduciary Duties.**

"[D]eeds of trust are treated under the same principles as contracts, and the trustee only owes those duties that are listed in the deed of trust." *Carter v. Countrywide Home Loans, Inc.*, 2008 U.S. Dist. LEXIS 67014, at *30 (E.D. Va. Sept. 2, 2008).[7] Plaintiffs' own citations support

---

[6]      For the first time, Plaintiffs attempt to distinguish between "mortgage loan servicers" and "bank servicers" even though such distinction is absent from the Complaints. *See* Banks and Chatter Am. Compls. ¶ 16 (identifying only "various loan servicers"). Yet this distinction serves no apparent purpose nor informs this Court's analysis.

[7]      *See also Sincere v. BAC Home Loans Servicing, LP*, 2011 U.S. Dist. LEXIS 149650, at *23 (W.D. Va. Dec. 30, 2011) ("In fact, under Virginia law, '[t]he powers and duties of a trustee in a deed of trust, given to secure the payment of a debt, are limited and defined by the instrument under which he acts.'" (quoting *Warner v. Clementson*, 254 Va. 356, 361, 492 S.E.2d 655, 657 (1997))).

this principle.[8]  Plaintiffs plainly acknowledge that the "duties" they seek to enforce are not listed in the Deeds of Trust.[9]  Consequently, Plaintiffs misconstrue Virginia law in an effort to create a common law tort claim against Defendants.  This effort is unavailing.

Contrary to Plaintiffs' position, the opinions in *Wilson* and *Preston* (and their progeny) do not create common law duties—they explain how impartiality and fairness must be exercised by trustees in the performance of contractual duties contained in deeds of trust.  In *Wilson v. Wall*, 99 Va. 353, 354, 38 S.E. 181, 181 (1901), for example, "[t]he deed provided that the trustee should 'duly advertise the time and place of sale.'"  Recognizing the ambiguity of the phrase "duly advertise," the court stated that the trustee must advertise in an impartial manner so as "to obtain a fair price."  *Id.* at 355, 38 S.E. at 181.[10]  *See also Preston v. Johnson*, 105 Va. 238, 53 S.E. 1 (1906) (addressing the sufficiency of a notice of sale when the deed gave the trustee broad powers to determine the time, place, and terms thereof).  Despite Plaintiffs' insistent rhetoric, neither opinion imposes a common law fiduciary duty outside of the terms of a deed of trust.[11]  A

---

[8]     *See, e.g., Powell v. Adams*, 179 Va. 170, 174, 18 S.E.2d 261, 263–63 (1942) ("The powers and duties of a trustee in a deed of trust, given to secure the payment of a debt, are limited and defined by the instrument under which he acts."); *see also Mathews v. PHH Mortg. Corp.*, 283 Va. 723, 733, 724 S.E.2d 196, 200–01 (2012).

[9]     *See, e.g.*, Plaintiffs' Brief at 27 ("Plaintiffs do not allege that Defendants owe Plaintiffs any duty of due diligence under the Deed of Trust.").

[10]     The significance of the *Wilson* opinion is best captured in the text immediately following Plaintiffs' sound bite:

> [The trustee] must, in all respects, conform to the stipulations of the deed, and the advertisement must be in accordance with its terms.  But where, as in this case, the only provision is that the time and place of the sale shall be "duly advertised" in some newspaper published in the city of Lynchburg, the trustee must exercise the discretion thus vested in him, as to the length of time for publication, prudently and fairly . . . .

*Wilson*, 99 Va. at 355, 38 S.E. at 181.

[11]     Furthermore, the opinions in *Wilson* and *Preston* are largely abrogated by the 1979 enactment of Virginia Code sections 55-59.1 through 55-59.4, which established a statutory baseline for a trustee's notice and advertisement requirements.  Accordingly, it should come as no surprise that Plaintiffs cite little case law after 1980.

trustee's fiduciary duties to a mortgagor are to be fair and impartial in carrying out the duties expressly made applicable to trustees in the deed of trust.[12]  Plaintiffs' attempt to allege a right of action based on some overarching common law fiduciary duty fails.

To recognize a common law tort action against trustees for breach of fiduciary duties would open the floodgates to bogus claims, and Plaintiffs' Opposition Brief exemplifies the types of claims such a holding would elicit.  For example, Plaintiffs acknowledge that the terms of the Servicing Guide—a contract between the lender and servicer—are not incorporated into the deeds of trust. Pls.' Opp. 32 n.14.  But Plaintiffs still seek to impose those terms on Defendants as substitute trustees under a catchall duty of "impartiality and perfect fairness."  For example, Plaintiffs allege that Defendants violated this duty by failing to "acknowledge receipt of the referral package and indicate any missing documents needed to conduct the foreclosure within two business days."  Pls.' Opp. 35; Banks and Chatter Am. Compls. ¶ 77.  Plaintiffs' novel concept of liability has no foundation in the deeds of trust or in the law.  Furthermore, Plaintiffs engage in a tangential discussion of Defendants' compensation structure to support their claims that Defendants violated a duty of impartiality.  Plaintiffs contend that, because Defendants made more money by completing a foreclosure (which requires more work than a reinstatement), Defendants could not help but breach a common law duty of impartiality.  By this logic, every trustee firm in the Commonwealth would be a tortfeasors for doing nothing more than their jobs.

### 2.  Plaintiffs Have Not Plausibly Alleged that Defendants Violated Duties Listed in the Deeds of Trust or Otherwise Imposed by Law.

Notwithstanding Plaintiffs' inability to bring common law breach of fiduciary duty claims

---

[12]    So, like professional malpractice actions, Plaintiffs allegations may sound in tort, but are actually actions for breach of contract. *See O'Connell v. Bean*, 263 Va. 176, 181, 556 S.E.2d 741, 743 (2002) ("'[A]n action for the negligence of an attorney in the performance of professional services, while sounding in tort, is an action for breach of contract.'" (citing *Oleyar v. Kerr*, 217 Va. 88, 90, 225 S.E.2d 398, 400 (1976))).

against Defendants, Plaintiffs contend that Defendants breached some fiduciary duty because: (1) the loan servicer could not invoke the power of sale; and (2) Defendants did not ensure that conditions precedent to foreclosure were satisfied.[13] These allegations fail as a matter of law.

**First**, a loan servicer may invoke the power of sale as agent for the beneficiary. Agency is a "fiduciary relationship resulting from one person's manifestation of consent to another person that the other shall act on his behalf and subject to his control, and the other person's manifestation of consent so to act." *Tyc Dev. Co. v. Birach Broad. Corp.*, 2010 U.S. Dist. LEXIS 41551, at *14–15 (E.D. Va. Apr. 27, 2010). A mortgage servicer unquestionably is the agent of the lender who engages it to enforce a deed of trust note. Indeed, in *Larota-Florez v. Goldman Sachs Mortg. Co.*, 719 F. Supp. 2d 636 (E.D. Va. 2010), *aff'd* 441 Fed. App'x 202 (4th Cir. 2011), the Eastern District recently affirmed this principle.

> As servicer, Litton has the right to collect payments on behalf of the holder and the right to foreclose upon default. Therefore, **Litton's appointment of Professional as substitute trustee under the Deed of Trust was authorized as a matter of contract and agency law.**
>
> **Litton had authority to foreclose and exercised that authority to appoint Professional as trustee to sell the Property at foreclosure.**

*Id.* at 641 (emphasis added).

Furthermore, nothing in the deeds of trust or the law prohibits a lender from authorizing an agent to substitute a trustee. The deeds of trust that Plaintiffs signed specifically contemplate that various parties might exercise the right to foreclose and sell the securing properties. *See, e.g.*, Banks Deed of Trust at 3 ("MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to the

---

[13]   Additionally, Plaintiffs make arguments concerning Virginia Code section 55-59.1(B). Defendants will not address these arguments at length because they are completely nonsensical. The plain language of the statute—which Plaintiffs cite—requires only that written notice be given to the borrower. *See* Va. Code Ann. § 55-59.1(B). Plaintiffs admit that written "lost note letters" were sent to the borrowers. Pls.' Opp. 30–31.

right to foreclose and sell the property . . . ."). The Code of Virginia provides that appointment of a substitute trustee is the "right and the power" of the lender. Va. Code Ann. § 55-59(9). To argue for a restriction on the lender's ability to delegate pursuant to its right and power and recognize a right of action in the mortgagor for the alleged "breach" of the lender's right and power is completely incongruous with the intent of the statute and the deeds of trust and commercial and agency law principles routinely championed by Virginia's courts.[14]

So, even if Defendants did not know, for example, whether Met Life held the note, Met Life could still invoke the power of sale as servicer and, therefore, appoint Defendants to be substitute trustees as agent of the lender.

**Second**, Plaintiffs cannot manufacture a cause of action against Defendants through the Supreme Court of Virginia's recent opinion in *Mathews v. PHH Mort. Corp.*, 283 Va. 723, 724 S.E.2d 196 (2012). In *Matthews*, the court never once opined on the liability of a trustee—the substitute trustee was not a party to the suit, and the plaintiff was seeking to enjoin the sale.[15] Instead, the court held that the **lender** must satisfy the conditions precedent before the **lender** could exercise its power of sale under the deed of trust. *Id.* at 737, 724 S.E.2d at 203. As explained, the deeds of trust in this case contain clear delineations between the authority of the lender (or his agent) and the authority of the trustee in pre-sale activities. Defs.' Mem. 23–25. This Court cannot hold Defendants liable for a violation of the lender's duties without imposing

---

[14]    Plaintiffs do not allege that the lenders disavowed Defendants' appointment as trustees. Thus, even if the lenders did not authorize Defendants' appointment, they certainly ratified it. If a "'principal, with knowledge of all the facts, adopts or acquiesces in the acts done under an assumed agency, he cannot be heard afterwards to impeach them under pretense that they were done without authority.'" *Winston v. Gordon*, 115 Va. 899, 907, 80 S.E. 756, 760 (1914). And, when a principal, after being informed, fails to disavow the act, "he makes it his own." *Id.* at 907; *accord Coastal Pharm. Co. v. Goldman*, 213 Va. 831, 839, 195 S.E.2d 848, 854 (1973). Any act of disavowal must occur "within a reasonable time." *Higginbotham v. May*, 90 Va. 233, 239, 17 S.E. 941, 943 (1893).
[15]    In fact, Plaintiffs' (emphasized) citation is dicta, far-removed from the holding.

a duty of due diligence to check behind the actions of lenders and servicers on all substitute trustees. No such duty has been recognized and, in fact, Plaintiffs "do not allege that Defendants owe Plaintiffs any duty of diligence." Pls.' Opp. 27.

In *King v. Virginia Housing Development Authority*, No. CL11-8895 (Va. Cir. Ct. Sept. 6, 2012),[16] the Circuit Court of the City of Norfolk considered and rejected claims similar to those brought by the Plaintiffs. In fact, the only relevant distinction between *King* and *Mathews*, is that the foreclosure sale had already occurred in *King* (as it has here). *Id.* at *1. In rejecting the plaintiff's claims, the court concluded that:

> [T]he failure to conduct or arrange for the face-to-face meeting, although perhaps sufficient ground to enjoin a foreclosure sale, for the imposition of a regulatory sanction, or for an award of nominal damages, **is not sufficient ground to award compensatory damages or to set aside a completed foreclosure sale** to a stranger to the deed of trust without notice of any defect in the sale, **especially when the plaintiff has not alleged she was ever ready and able to redeem the property or cure the default before the sale**.

*Id.* at *3 (emphasis added).

Plaintiffs have not alleged an ability to redeem or cure and, therefore, they lack factual predicates and proximate causation needed to make claims against the Defendants based on conditions precedent to foreclosure not having been satisfied. Count I should be dismissed.

## C.   Plaintiffs' Fraud Claims Should be Dismissed.

Plaintiffs contend that they have met the specificity requirement for a fraud claim. In support of their contention, Plaintiffs restate their Amended Complaint in bullet points. Pls.' Opp. 39–40. In this format, it is equally apparent that Plaintiffs have not met their minimum requirement of describing the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Wilson v.*

---

[16]   A copy of the slip opinion in *King* is attached hereto as Exhibit 1.

*Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008).

Perhaps recognizing these deficiencies, Plaintiffs seek refuge in a relaxed Rule 9(b) standard. Pls.' Opp. 40. Given the gravity of Plaintiffs' claims and desired relief, however, this Court should not lessen the burden. According to <u>Va</u>. <u>Code</u> <u>Ann</u>. § 8.01-389(C), "recitals of any fact in a deed or deed of trust of record conveying any interest in real property shall be prima facie evidence of that fact." *Accord Hopkins v. Givens*, 119 Va. 578, 89 S.E. 871 (1916) (applying earlier version of statutory provision in upholding sale, stating that recitals of proper notice having been given are taken as *prima facie* correct). A recital in a deed from a trustee that the creditor requested execution of trust is *prima facie* true and must stand unless the contrary is proved by competent evidence. *Wills v. Chesapeake W. R. Co.*, 178 Va. 314 (1941). Plaintiffs challenge the substitution of trustee deeds on the mere conjecture that the persons executing them were not in possession of deed of trust notes or were otherwise unauthorized to sign them. In light of the plausibility standards required for pleading claims in federal court and the *prima facie* truth of the recitals of the attacked deeds, Plaintiffs' claims for fraud and breach of fiduciary duty—both of which rely on this rank speculation—should be dismissed.

Finally, Plaintiffs fail to engage and adequately respond to the case law cited by Defendants concerning reliance and damages. Plaintiffs address only this Court's opinion in *Cormier v. Atlantic Law Group*, 2012 U.S. Dist. LEXIS 110885 (E.D. Va. Aug. 7, 2012). Plaintiffs do not even attempt to distinguish the holdings in *Browning, Wolf,* and *Washington.* Defs.' Mem. 34–35. Furthermore, Plaintiffs critique of *Cormier* is misleading, at best. While Plaintiffs are correct that the cited excerpt is found under the heading of promissory estoppel, Judge Spencer expressly stated that his reasoning was equally applicable to fraud. *See Cormier*, 2012 U.S. Dist. LEXIS 110885, at *14 ("As previously stated, Plaintiffs cannot show reasonable

reliance on Defendant's alleged misrepresentation that the foreclosure sale of their home had been cancelled or that they suffered damage as a result. Therefore, Plaintiffs cannot sufficiently allege a claim of constructive fraud."). Instead of addressing case law from this Court and other courts in Virginia, Plaintiffs cite a Massachusetts opinion about a Massachusetts foreclosure in a desperate effort to preserve their claim. Plaintiffs' effort fails, and Count II should be dismissed.

**D.     Plaintiffs' Civil Conspiracy Claims Should Be Dismissed.**

Plaintiffs fail to contest Defendants' arguments that Plaintiffs do not plausibly allege concert of action and unity of purpose. These are requisite elements for any conspiracy claim. *See* Defs.' Mem. 37–38. Absent any dispute of these arguments, the Court ought to consider them conceded and dismiss Count III.[17]

**E.     Plaintiffs Have Failed to State Claims Supporting Class Actions.**

**1.     Rule 12(b)(6) Review Is Appropriate for Class Claims.**

Plaintiffs conclude that Rule 12(b)(6) is an "improper" basis upon which to seek dismissal of a claim seeking to certify a class. Pls.' Opp. 45. For that proposition, however, Plaintiffs cite no authority. Instead, Plaintiffs concede that a Court may consider whether to dismiss a class action claim on a Rule 12(b)(6) motion. Pls.' Opp. 46 (citing *Goode. v. Lexis Nexis Risk & Info. Analytics Group, Inc.*, 2012 U.S. Dist. LEXIS 87770 (E.D. Pa. June 25, 2012)). In *Goode*, the court noted that, where individualized damages assessments make class-wide relief impossible, it may be necessary to dismiss a class action claim: "The *Harper* court concluded that, although the first element [(determining liability)] may be appropriate for class-wide determination, the predominance and superiority prongs of the Rule 23(b)(3) analysis were

---

[17]     Furthermore, to the extent that Plaintiffs did not understand the term "Servicers" to incorporate Litton, Defendants hereby apply their arguments in their opening brief to any alleged conspiracy between Defendants and Litton. *See generally* Defs.' Mem.

not met because 'proof of [the latter three] elements, though traceable to defendants' conduct and policies, will require *highly individualized proofs as to the injuries suffered by the putative class members*."" *Goode*, 2012 U.S. Dist. LEXIS 87770, at \*21 (emphasis added) (quoting *Harper v. Trans Union, LLC*, 2006 U.S. Dist. LEXIS 91813 (E.D. Pa. Dec. 20, 2006)).   That the Court would examine a motion to dismiss a class action by reference to Rule 23 is no different than a Court examining a negligence claim by reference to applicable tort law.

> **2.    Because the Amended Complaints Require Highly Individualized Damages Assessments, the Class Action Claims as Pleaded Should Be Dismissed.**

Plaintiffs have sought certification of class actions for breach of fiduciary duty and for RICO, both of which will require extensive and highly individualized assessments of damages. Plaintiffs have not sought to limit their class claims to assessments of liability. *See* Banks Am. Compl. ¶¶ 102, 116, 142, 163–66 (seeking class-wide relief including, *inter alia,* actual damages, costs, damages from lost homes, foreclosure-avoidance payments, certain treble damages); Chatter Am. Compl. ¶¶ 94, 106, 132, 154, 155 (same).

> **3.    A Limited Fund Class Action in this Case Is Inappropriate.**

There is little dispute that Plaintiffs essentially seek this Court's approval of a limited fund class action. Pls.' Opp. 48.  Plaintiffs state, however, that it is "only conjecture," Pls.' Opp. 47, that Defendants' principal asset is their liability insurance policy and that the class they propose is a limited fund class.   That assertion is surprising because, in their Amended Complaints, Plaintiffs state that "the primary asset available for all class members is the limited insurance fund held by Defendants." Banks Am. Compl. ¶ 109; Chatter Am. Compl. ¶ 101. Suffice to say that it is unusual that a party would characterize his own Amended Complaint as predicated upon "conjecture."

Plaintiffs also assert that their claim is not a limited-fund case and that "there is more than a remote possibility . . . that the corporate veil can be pierced [in this case]." Pls.' Opp. 47. Yet, the Amended Complaints do not contain any "facts," nor reference any rule or statute, to suggest that the corporate veil in this case ought to, or even can be, pierced. *In re County Green Ltd. P'ship*, 604 F.2d 289, 292 (4th Cir. 1979) ("The general rule is that 'the decision to pierce a corporate veil and expose those behind the corporation to liability is one that is to be taken reluctantly and cautiously.'").

Finally, Plaintiffs argue that Defendants' position in this case amounts to a declaration that no "limited fund" class action may ever be maintained. Pls.' Opp. 47. Defendants do not make that argument. Rather, Defendants correctly assert that *this* limited fund case, by *these* plaintiffs, alleging *these* claims that require highly individualized assessments of damages as pleaded in *these* Amended Complaints cannot be maintained as a class action. The present claims are not susceptible to ready arithmetic calculation, nor have the class members suffered identical damages, and the classes are not defined by reference to a particular legal inquiry. Indeed, the classes include individualized claims based on a myriad of varying circumstances, so a limited fund class action cannot be maintained. *See, e.g.*, *Windham v. Am. Brands, Inc.* 565 F.2d 59, 68–69 (4th Cir. 1977) (when damages are not susceptible to being calculated mechanically and require "mini-trials" of an "overwhelming large number of individual claims," class action is unmanageable); *see also* Pls.' Opp. 50 (alleging there are likely "thousands" of individual class members who will each have an individual claim for damages).[18]

---

[18]     *See also Patterson v. Mobil Oil Corp.*, 241 F.3d 417, 419 (5th Cir. Tex. 2001) (class certification improper in RICO action where common legal question of liability did not predominate over individualized question of each class member's reliance on alleged malfeasance and individualized inquiry to that effect "would defeat the economies ordinarily associated with the class action device."); *Brame v. Ray Bills Fin. Corp.*, 85 F.R.D. 568, 585

**4.      Plaintiffs Fail to Contest Arguments Supporting Dismissal.**

Significantly, and tellingly, Plaintiffs either fail to address or fail to dispute arguments in

support of dismissal.  These arguments include the following:

   (a) The Amended Complaints admit that not all members of the putative class may have
       been the victims of fraudulent processes and practices. Defs.' Mem. 44.

   (b) The Amended Complaints cite to, and rely upon, irrelevant testimony and practices of
       Defendants' Maryland attorneys, which are of no consequence to claims related to a
       class action involving Virginia claimants. Defs.' Mem. 45.

   (c) All the putative members of the classes in this case will have highly individualized,
       case-specific claims for damages. Defs.' Mem. 45–46.

   (d) Precedent-setting litigation of legal questions in any one of the cases pending before
       the Court, in the ordinary course of litigating these cases, could permissibly resolve
       similar legal questions for members of any putative class action without need for
       certifying any of the Rule 23 kinds of class actions, thus disproving that a class action
       is a superior device for resolving these disputes. Defs.' Mem. 47.

   (e) For putative class members who want an individualized assessment of their claims
       and damages, a class action is an *inferior* device for resolving these claims. Defs.'
       Mem. 47–48.

Absent any dispute of these arguments, the Court ought to consider them conceded.

## III.
## CONCLUSION

**WHEREFORE**, Defendants respectfully request that this Court grant their Motion to

Dismiss the Amended Complaints and award them such other and further legal and equitable

relief as this Court deems just and proper.

---

(N.D.N.Y 1979) (class representation inadequate where class representatives seek recovery of
damages equal to what they would have received in an individual trial leaving other putative
class members a diminished fund from which to recover).

Dated:  November 13, 2012

**Respectfully submitted,**

**FRIEDMAN & MACFADYEN, P.A.,**
**F&M SERVICES, L.C., and**
**JOHNIE R. MUNCY,**

**By Counsel**

_/s/_  Andrew Biondi
Douglas P. Rucker, Jr. (VSB No. 12776)
Andrew Biondi (VSB No. 48100)
Cullen D. Seltzer (VSB No. 35923)
Faith A. Alejandro (VSB No. 80076)
Eric C. Howlett (VSB No. 82237)
SANDS ANDERSON PC
1111 East Main Street, Suite 2400 (23219)
Post Office Box 1998
Richmond, Virginia 23218-1998
Telephone: (804) 648-1636
Facsimile: (804) 783-7291
Email:  drucker@sandsanderson.com
Email:  abiondi@sandsanderson.com
Email:  cseltzer@sandsanderson.com
Email:  falejandro@sandsanderson.com
Email:  ehowlett@sandsanderson.com
       _Counsel for Defendants_

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of November, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Dale W. Pittman, Esq.
The Law Office of Dale W. Pittman, P.C.
112-A W. Tabb Street
Petersburg, Virginia 23803
Telephone: 804-861-6000
Facsimile: 804-861-3368
dale@pittmanlawoffice.com
*Counsel for Plaintiff*

John C. Petersen, Esq.
Surovell Isaacs Petersen & Levy PLC
4010 University Drive
Suite 200
Fairfax, Virginia 22030
Telephone: 703-251-5400
Facsimile: 703-591-9285
jpetersen@siplfirm.com
*Counsel for Plaintiff*

Kristi Cahoon Kelly, Esq.
Surovell Isaacs Peterson & Levy PLC
4010 University Drive
Suite 200
Fairfax, Virginia 22030
Telephone: 703-277-9774
Facsimile: 703-591-2149
kkelly@siplfirm.com
*Counsel for Plaintiff*

Leonard Anthony Bennett, Esq.
Consumer Litigation Associates, P.C.
12515 Warwick Boulevard
Suite 100
Newport News, Virginia 23606
Telephone: 757-930-3660
Facsimile: 757-930-3662
lenbennett@cox.net
*Counsel for Plaintiff*

Matthew J. Erausquin, Esq.
Consumer Litigation Associates, P.C.
1800 Diagonal Road
Suite 600
Alexandria, Virginia  22314
Telephone:  703-273-6080
Facsimile:  888-892-3512
matt@clalegal.com
*Counsel for Plaintiff*

Richard J. Rubin, Esq.
1300 Canyon Road
Santa Fe, New Mexico  87501
Telephone:  505-983-4418
Facsimile:  505-983-2050
dickrubin@cs.com
*Counsel for Plaintiff*

                    /s/ Andrew Biondi
Douglas P. Rucker, Jr. (VSB # 12776)
Andrew Biondi (VSB # 48100)
Cullen D. Seltzer (VSB # 35923)
Faith A. Alejandro (VSB No. 80076)
Eric C. Howlett (VSB No. 82237)
SANDS ANDERSON PC
2300 Bank of America Center
1111 East Main Street (23219)
P. O. Box 1998
Richmond, VA 23218-1998
(804) 648-1636
(804) 783-7291 (facsimile)
Email:  drucker@sandsanderson.com
Email:  abiondi@sandsanderson.com
Email:  cseltzer@sandsanderson.com
*Counsel for Defendants*