IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOHN K. GOODROW,

        Plaintiff,

v.

                                                 Civil Action No. 3:11cv20
                                                 Consolidated Action

FRIEDMAN & MACFADYEN, P.A., et al.,

        Defendants.

## MEMORANDUM OPINION

Before the Court is the Motion to Dismiss the Amended Complaints ("Motion to Dismiss") (Docket No. 79) filed in the *Banks* (3:11cv614) and *Chatter* (3:11cv613) cases by Defendants Friedman & MacFadyen, P.A. ("Friedman & MacFadyen"), F&M Services, L.C. ("F&M"), and Johnie Muncy (collectively, "Defendants"). Plaintiffs Letonya Banks and Allen Chatter (collectively, "Plaintiffs") responded to the Motion to Dismiss (Docket No. 97) and Defendants replied (Docket No. 100). The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367, and 636(c).

The Chatter First Amended Complaint and Banks First Amended Complaint raise four claims against Defendants: 1) Trustee's breach of fiduciary duties (brought as a class claim); 2) fraud; 3) civil conspiracy; and 4) RICO[1] violations (brought as a class claim). Defendants'

---

[1] Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*

Motion to Dismiss the Amended Complaints challenges each of these four claims.[2] Oral argument took place December 3, 2012. During oral argument, Plaintiffs moved, without objection, to dismiss the civil conspiracy and the fraud claims. For the reasons that follow, the Court will grant Defendants' Motion to Dismiss and will grant Plaintiffs leave to amend as to the two remaining claims.

## I. Standard of Review

### A. Rule 12(b)(6): Failure to State a Claim

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (*citing* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*,

---

[2] Defendants also challenge the class allegations contained in Count One and Count Four, arguing that class claims necessarily fail because the individual claims fail. (*See* Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mem. Supp.") 39.) Plaintiffs dispute that the Rule 12(b)(6) posture is the appropriate vehicle to challenge class allegations. (*See* Pls.' Opp'n Mot. Dismiss ("Pls.' Opp'n.") 45-47.) Ordinarily, "it is essential that a plaintiff be afforded a full opportunity to develop a record containing all the facts pertaining to the suggested class and its representatives. It is seldom, if ever, possible to resolve class representation questions from the pleadings . . . ." *Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.* 659 F.2d 1259, 1268 (4th Cir. 1981). While other courts denied class certification under Rule 12(b)(6) for putative class actions where the complaint demonstrates as a matter of law that plaintiffs cannot meet the requirements of maintaining a class action, *see, e.g., Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 655 (D. Nev. 2009), dismissing the class allegations contained in the Amended Complaints at this stage of the litigation would be premature because the Court grants Plaintiffs leave to amend. Additionally, during oral argument, the parties preserved their right to address the class allegations at a later date. The Court will therefore entertain such arguments after Plaintiffs file any proposed Second Amended Complaints and, presumably, Defendants challenge them.

980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 566 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Bell Atl. Corp.*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (*citing Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

### B.   The Court Will Consider Some Extrinsic Documents

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that

3

is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396-97 (4th Cir. 2006) (*citing Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Gasner v. Cnty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)).

Here, Defendants attached six exhibits to their Memorandum of Law in Support of Motion to Dismiss Banks and Chatter Complaints: Exhibit One: the Banks Promissory Note; Exhibit Two: the Banks Deed of Trust; Exhibit Three: the Chatter Promissory Note; Exhibit Four: Chatter Trustee Deed[3]; Exhibits Five and Six: charts listing alleged insufficiencies contained in the First Amended Complaints' mail and wire fraud allegations. (*See* Defs.' Mem. Supp. Ex. One through Six.) Plaintiffs did not attach any documents to the First Amended Complaints, although the First Amended Complaints reference these documents. Plaintiffs' Opposition to the Motion to Dismiss does not contest the authenticity of any documents before the Court. Because Plaintiffs rely on the Deeds of Trust to frame the First Amended Complaints, the Court will consider the Banks and Chatter Deeds of Trust and Promissory Notes in resolving Defendants' Motion to Dismiss. *See Grant v. Shapiro & Burson, LLP*, 871 F. Supp. 2d 462, 466 (D. Md. 2012).

---

[3] Defendants' Memorandum of Law Supporting its Motion to Dismiss incorrectly identifies Exhibit 4 as the Chatter Deed of Trust, when it was in fact the "Trustees Deed." (*See* Defs.' Mem. Supp. ¶ 3.) The Court has since entered an order placing the correct document on the record. (*See* Docket No. 105.)

## II. Background

A.   Facts[4]

### 1.   The Parties and Defendants' Foreclosure Operation

These actions stem from Defendants' allegedly unlawful foreclosure on the Chatter and Banks Deeds of Trust. Allen Chatter and Letonya Banks are natural persons and residents of Virginia. Defendant Friedman & MacFadyen is a defunct law firm engaged in the business of debt collection. Defendant F&M is a limited liability company purportedly acting as Substitute Trustee under the Chatter and Banks Deeds of Trust. Defendant Johnie Muncy, an attorney employed by Friedman & MacFadyen, also purportedly acts as Substitute Trustee under the Chatter and Banks Deeds of Trust. Defendants operate a foreclosure enterprise. F&M does not operate independently of Friedman & MacFadyen. Friedman & MacFadyen uses F&M solely to act as Substitute Trustee for loans referred to Friedman & MacFadyen for foreclosure. Similarly, Muncy acts as Substitute Trustee for loans referred to Friedman & MacFadyen for foreclosure proceedings.

When Defendants receive a referral of a loan for foreclosure proceedings, Defendants use what Plaintiffs call a false "lost note affidavit," rather than locating the actual noteholder and requesting the original note. Defendants then create a Substitution of Trustee document, giving Defendants the authority to conduct the foreclosure sale. As alleged, the Substitution of Trustee document falsely identifies the loan servicers as the noteholders in order for the Defendants to avoid the expense and time of locating the actual noteholder. The individuals signing and

---

[4] The following facts are taken from the Banks and Chatter First Amended Complaints. (Docket Nos. 56, 65.) For purposes of the pending motion to dismiss, the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Plaintiffs. *Matkari*, 7 F.3d at 1134.

notarizing the Substitution of Trustee document claim personal knowledge of the facts and the legal standing to appoint the substitute trustees when they lack it, in part because, upon information and belief, they do not sign the note personally. Plaintiffs allege that sworn testimony from Daniel Menchel and Kenneth MacFadyen in Maryland confirming that others signed Kenneth MacFadyen's name in notarized documents as part of the Maryland foreclosure process evinces a practice that renders the foreclosure documents a legal nullity in Virginia, including any substitute trustee appointments.

After preparing Substitution of Trustee documents, Defendants mailed letters and foreclosure notices to consumers, including mailing the deficient substitute trustee documents. Defendants use the same form letters for every consumer on whom they attempted to conduct a foreclosure sale. Plaintiffs allege that the letters contain misrepresentations, including the incorrectly identified noteholder. Defendants advertise the foreclosure sale in local newspapers and mail foreclosure sale notices to consumers.

After the foreclosure sale, Defendants create a Trustee Deed, where the Substitute Trustee conveys the property to the purchaser of the property at the foreclosure sale. These faulty documents are subsequently mailed to consumers, or the Commissioner of Accounts in the Circuit Courts of Virginia.

### 2. **Conduct Specific to Plaintiff Chatter**

On February 20, 2008, Chatter executed a promissory note (the "Chatter Note") payable to First Horizon Home Loans ("First Horizon"). A Deed of Trust ("Chatter Deed of Trust") secures the note. The Chatter Note and Chatter Deed of Trust obligates Chatter to repay First Horizon. The Chatter Deed of Trust grants First Horizon, as lender, the power to appoint a

substitute trustee.  The Chatter Deed of Trust also grants First Horizon the right to invoke the power of sale upon Chatter's default.

Sometime later, Chase Home Finance, LLC ("Chase") began servicing Chatter's loan. Chase acts on behalf of the owner of the loan to collect and record payments and communicate with Chatter.  The United States Department of Veterans Affairs ("VA") guarantees Chatter's loan.  The Chatter Deed of Trust specifically incorporates certain provisions codified under Title 38 of the United States Code and regulations issued by the VA.  One such regulation requires a face-to-face interview, or reasonable effort to arrange a meeting, with the borrower when the noteholder has not evaluated the financial circumstances of the borrower or has not obtained a repayment plan from the borrower.

Around 2009, Chatter experienced financial difficulties and sought a loan modification. Chatter submitted an application for loan modification to Chase.  Chase received Chatter's application but did not act on it, instead referring Chatter's loan for foreclosure.  Chase never made any attempts to arrange a face-to-face interview with Chatter.

Beginning in 2010, Defendants began sending their form correspondence to Chatter in an attempt to collect the debt.  The correspondence contained subject lines which, because it read "Chase Home Finance LLC v. Allen Chatter," improperly suggested that a lawsuit was pending or about to be filed, although Defendants never intended to file and never filed a lawsuit against Chatter.  Friedman & MacFadyen signed correspondence to Chatter as Substitute Trustee, although the substitute trustee document did not appoint Friedman & MacFadyen as substitute trustee.  Correspondence to Chatter also included the Substitution of Trustee document, dated July 22, 2010 and filed in the Fairfax Circuit Court on August 20, 2010, incorrectly naming Chase as the noteholder and stating that Chase appointed F&M and Muncy as substitute trustees.

7

The foreclosure sale took place September 1, 2010. The Trustee's Deed was dated September 1, 2010 and recorded October 19, 2010.

### 3.     **Conduct Specific to Plaintiff Banks**

Banks executed a promissory note ("the Banks Note") on October 31, 2007 payable to SunTrust Mortgage, Inc. ("SunTrust"). A Deed of Trust ("Banks Deed of Trust") secures the note. The Banks Note and Banks Deed of Trust obligates Banks to repay SunTrust. The Banks Deed of Trust grants SunTrust, as lender, the power to appoint a substitute trustee and the right to invoke the power of sale.

Subsequently, Federal National Mortgage Association ("Fannie Mae") purchased Banks's loan. Fannie Mae provided no documentation of the sale to Banks. After the sale of the loan to Fannie Mae, Litton Loan Servicing, LLP ("Litton") began servicing Banks's loan.

Around 2009, Banks experienced financial difficulty and sought a loan modification. Banks submitted a loan modification application to Litton. Litton approved Banks's application, but the proposed agreement would have increased Banks's monthly payments. Banks resubmitted her application, but her loan was referred for foreclosure.

Beginning in 2010, Defendants began sending their form correspondence to Banks in an attempt to collect the debt. The correspondence contained subject lines which, because it read "Litton Loan Servicing, LLP v. Letonya L. Banks," improperly suggested that a lawsuit was pending or about to be filed, although Defendants never intended to file and never filed a lawsuit against Banks. On August 25, 2010, Defendant Friedman & MacFadyen signed correspondence to Banks as Substitute Trustee, although the substitute trustee document did not appoint Friedman & MacFadyen as substitute trustee. Correspondence to Banks also included the Substitution of Trustee document, dated August 11, 2010 and filed September 3, 2010,

8

incorrectly naming Litton as the noteholder and stating that Litton appointed F&M and Muncy as Substitute Trustees. The foreclosure sale took place September 14, 2010. The Trustee's Deed was dated September 14, 2010 and recorded October 5, 2010.

**B.**   **Procedural History**

On November 22, 2011, this Court granted the parties' consent motion to consolidate the cases for pretrial management and mediation and granted the consent order to stay.[5] (Docket No. 30.) On April 18, 2012, the Court extended the stay generally. (Docket No. 37.)

On August 3, 2012, the Court vacated its April 18, 2012 order staying the consolidated action. (Docket No. 43.) On September 4, 2012, the parties participated in an initial pretrial conference. On September 10, 2012, the Court issued a scheduling order and set a briefing schedule. (Docket No. 50.) On September 18, 2012, Plaintiffs Banks and Chatter filed their First Amended Complaints.[6] (Docket Nos. 56, 65.[7]) On October 12, 2012, Defendants filed their Motion to Dismiss the Amended Complaints. (Docket No. 79.) On November 2, 2012,

---

[5] The November 22, 2011 Order consolidated ten cases for pretrial management and mediation: (1) *Goodrow*, 3:11cv20; (2) *McBeth*, 3:11cv479; (3) *Mbundure*, 3:11cv489; (4) *Ceccone*, 3:11cv555; (5) *Chatter*, 3:11cv613; (6) *Banks*, 3:11cv614; (7) *Hicks*, 3:11cv615; (8) *Smith*, 3:11cv616; (9) *Crawley*, 3:11cv617; and (10) *Buel*, 3:11cv716. On February 16, 2012, the Court consolidated an eleventh case, *Sanmateo v. Friedman & MacFadyen, P.A., et al.*, (3:11cv840) with the above actions. (Docket No. 16.) On August 31, 2012, the Court entered a voluntary dismissal in the *Smith* action. (Docket No. 32.) On November 8, 2012, this Court transferred the *Hicks* action to the District of Maryland. (Docket No. 35.) On November 15, 2012, Plaintiffs filed Notices of Acceptance of Defendants' Rule 68 Offers of Judgment in *Ceccone*, *Crawley*, and *Sanmateo*. (Docket Nos. 101, 102, 103.) Only six cases remain: *Goodrow*, *McBeth*, *Mbundure*, *Buel*, *Banks*, and *Chatter*.

[6] Plaintiffs Chatter and Banks filed their First Amended Complaints as a matter of right pursuant to Fed. R. Civ. P. 15(a)(1)(B).

[7] Pursuant to the Court's November 22, 2011 consolidation order, all documents filed in the consolidated actions were to be filed under the lead case, *Goodrow v. Friedman & MacFadyen*, 3:11cv20. (Docket No. 30.) Therefore, for ease of reference, the Court utilizes the document numbers associated with case number 3:11cv20.

Plaintiffs filed their Opposition to the Motion to Dismiss the Amended Complaints. (Docket No. 97.) On November 13, 2012, Defendants replied. (Docket No. 100.) The Court heard oral argument on December 3, 2012.

### III.  Analysis

The Chatter First Amended Complaint and Banks First Amended Complaint raise four claims against Defendants:  1) Trustee's breach of fiduciary duties (brought as a class claim); 2) fraud; 3) civil conspiracy; and 4) RICO violations (brought as a class claim).  Defendants' written Motion to Dismiss the Amended Complaints challenges each of these claims, and the Court will address the remaining two claims below.

### A.    The Chatter and Banks Amended Complaints Fail to State a Claim For Trustee's Breach of Fiduciary Duties

#### 1.    Fiduciary Duties at Issue

In Count One, Chatter and Banks allege Defendants breached their fiduciary duties by undertaking the foreclosure sale without complying with the Deeds of Trust.  Plaintiffs contend that the breach of several fiduciary duties stand before the Court.  Primarily, Chatter and Banks contend that Defendants breached their fiduciary duty of impartiality.  Plaintiffs argue that Defendants intentionally circumvented the provisions of the Deeds of Trust, including the requirements for appointing a substitute trustee, thereby breaching their fiduciary duty of impartiality.  At base, Plaintiffs argue that the series of documents used to foreclose on the Chatter and Banks homes misled those homeowners about the process, including masking who was foreclosing and how they had the power to do so.

Separately, Chatter alleges that Defendants foreclosed without ensuring compliance with regulations prior to acceleration and foreclosure and foreclosed without complying with VA regulations.  Banks alleges Defendants failed to ensure that they received the foreclosure data

from the servicer and necessary documentation to conduct the sale, failed to acknowledge receipt of the referral package, failed to request necessary documents so they could expedite the process, and failed to obtain the complete referral package.[8] Defendants argue that Count One fails to state a claim for breach of trustee's fiduciary duty.

### 2.   The Plaintiffs Do Not Allege Duties Articulated in the Deeds of Trust

A deed of trust gives rise to certain fiduciary duties. *Carter v. Countrywide Home Loans, Inc.*, Civil Action No. 3:07cv651, 2008 WL 4167931, at *11 (E.D. Va. Sept. 3, 2008) (Dohnal, J.) However, "deeds of trust are treated under the same principles as contracts, and the trustee only owes those duties that are listed in the deed of trust itself." *Id.* A trustee under a deed of trust has no due diligence duty and only owes duties listed in the deed of trust. *Horvath v. Bank of New York, N.A.*, Civil Action No. 1:09cv1129, 2010 WL 538039, at *1 (E.D. Va. Jan. 29, 2010) (Trenga, J.) (dismissing breach of trustee's fiduciary duty claim and finding that plaintiff did not allege any such duties existed in the deed of trust or facts establishing impartiality). Plaintiffs largely fail to identify fiduciary duties within the deeds of trust before the Court.

---

[8] Banks abandoned her allegation that Defendants breached their fiduciary duties as a result of Defendants' failure to comply with the Fannie Mae Servicing Guide, withdrawing her claim that the Banks Deed of Trust incorporated the Servicing Guide. (*See* Pls.' Opp'n 32 n.5) However, Banks continues to argue that failure to comply with the Servicing Guide constitutes further evidence that Defendants breached their fiduciary duty of impartiality. (See Pls.' Opp'n 32 n.5.)

Given that courts consistently find that borrowers lack standing to enforce contracts between loan servicers and lenders, a court would weigh any evidentiary value accordingly. *See, e.g., Correll v. Bank of Am., N.A.*, Civil Action No. 2:11cv477, 2012 WL 348594, at *4 (E.D. Va. Feb. 2, 2012) ("Courts have also uniformly rejected the contention that individuals have a right to sue as third-party beneficiaries to contracts between mortgage providers and Fannie Mae. Homeowners are merely incidental beneficiaries with no cognizable property interest in loan modifications.") (internal quotations and citations omitted); *Condel v. Bank of Am., N.A.*, Civil Action No. 3:12cv212, 2012 WL 2673167, at *6 (E.D. Va. July 5, 2012) ("Courts have also flatly rejected attempts by borrowers to assert contract claims as incidental beneficiaries of servicers' agreements with the government.") (internal citations and quotations omitted).

(a)   **Plaintiff's Attempt to Establish a Duty of Impartiality**

Plaintiffs' overriding basis for a fiduciary breach appears to be a claimed breach of the duty of impartiality. To establish that a duty of impartiality exists, plaintiffs turn to instances where courts have applied black letter contract law in finding that a deed of trust incorporates an implied covenant of good faith and fair dealing. *See Bourdelais v. JP Morgan Chase Bank, N.A.,* Civil Action No. 3:10cv670, 2012 WL 5404084, at *5-6 (E.D. Va. Nov. 5, 2012) (Hudson, J.) (denying motion to dismiss because bank's alleged inducement to default to secure a modification sufficiently stated a claim for the breach of duty of good faith and fair dealing when house was subsequently foreclosed upon); *Acuna v. Chase Home Finance, LLC*, Civil Action No. 3:10cv905, 2011 WL 1883089, at *6 (E.D. Va. May 17, 2011) (Spencer, J.) (same); *but see Correll,* 2012 WL 348594, at *3-4 (rejecting implied duty of good faith and fair dealing because individuals do not have a right to sue under the Home Affordable Modification Program ["HAMP"] or as third party beneficiaries to the contracts between mortgage providers and Fannie Mae). The first two cases, Plaintiffs suggest, show that the deeds of trust incorporate implied duties.

Next, Plaintiffs assert that the United States Court of Appeals for the Fourth Circuit and other courts have long held that "a trustee under a deed of trust is a fiduciary for both the debtor and the creditor, and in this dual capacity, the trustee must act impartially respecting these two competing interests." *Cerceo v. Shmidheiser*, No. 96-1781, 1997 WL 314428, at *4 (4th Cir. June 10, 1997) (*citing Whitlow v. Mountain Trust Bank*, 207 S.E.2d 837, 840 (Va. 1974)). Plaintiffs rely upon language oft repeated by Virginia courts that a trustee must act with fairness and impartiality to both the debtor and the creditor. *See Rohrer v. Strickland*, 82 S.E. 711, 712 (Va. 1914); *see also Wilson v. Wall*, 38 S.E. 181, 181 (Va. 1901).

Chatter and Banks argue that Defendants breached this duty of impartiality "through their direct role in circumventing the requirements under for [sic] appointment of a substitute trustee." (*See* Pls.' Opp'n 27.) Plaintiffs contend that the Deeds of Trust require that the *lender*, not the *loan servicer*, invoke the power to sell. Plaintiffs contend the trustee knowingly misidentified the loan servicer as the lender for administrative convenience. Moreover, Plaintiffs suggest that the Defendants falsely attested to the status of the notes undergirding the loans subject to foreclosure and failed to provide the proper notice to the homeowner.

### (b)   The Effect of the Questionable Documents on Plaintiffs' Claim

The core of Plaintiffs' claims arises from their contention that the foreclosure documents created by Defendants, especially any so-called lost note affidavits or substitute trustee documents, do not reflect lawful business relationships and, instead, constitute a sham meant to expedite foreclosure without providing homeowners recourse. Without confirming or denying that individuals signed other people's names to the so-called lost note affidavits or substitute trustee documents, Defendants contend that Plaintiffs' claims fail as a matter of law because, while the deeds of trust require notice within the law, nothing in Virginia law requires that the affidavits go directly to the homeowner, that the note be "lost," or that the notice occur within a specified time period. Under this defense, the notes can lawfully become "administratively inconvenient to locate" rather than "lost" notes.

If true, plaintiffs allege a practice that would diverge significantly from what a reasonable homeowner might believe was occurring during foreclosure. It is not clear, however, that Plaintiffs' allegations state a cause of action. For instance, Plaintiffs' contentions may not have overcome the broad wording in Virginia Code § 55-59.1(B), which provides, in part:

> If a note or other evidence of indebtedness secured by a deed of trust is
> lost or for any reason cannot be produced and the beneficiary submits to the

13

trustee an affidavit to that effect, the trustee may nonetheless proceed to sale, provided the beneficiary has given written notice to the person required to pay the instrument that the instrument is unavailable and a request for sale will be made of the trustee upon expiration of 14 days from the date of mailing the notice. . . . If the trustee proceeds to sale, the fact that the instrument is lost or cannot be produced shall not affect the authority of the trustee to sell or the validity of the sale.

Defendants suggest that, because the statute allows an affidavit to be sent to the trustee if a note cannot be secured "for any reason," a foreclosure may begin without a note of indebtedness for, among other reasons, administrative convenience. At least one Virginia Circuit Court has stated that no statutory requirement exists "concerning the timing of [an] Affidavit of Lost Note," finding that foreclosure can begin before a trustee has a note in hand. *Buzbee v. U.S. Bank, N.A.*, CL2010-11329, 2012 Va. Cir. LEXIS 39, at *11 (Va. Cir. May 2, 2012). The Court has trouble reading this broad statutory language otherwise.

Finally, regarding the substitute trustee documents, at least one Virginia federal court has found that a servicer may appoint a substitute trustee as a matter of contract and agency law. *Larota-Florez v. Goldman Sachs Mortg. Co.*, 719 F. Supp. 2d 636, 640-41 (E.D. Va. 2010) (Hilton, J.). This Court lacks specific allegations to find otherwise here. In assessing the proper duties, this Court, like others, must closely track where the duties run, and from where the duties arise. Plaintiffs rely on the Supreme Court of Virginia's recent decision in *Mathews v. PHH Mortgage Corp.*, 724 S.E.2d 196 (2012) (Mims, J.), but their position is unavailing. In *Mathews*, the Supreme Court of Virginia concluded that "a *lender* must comply with all conditions precedent to foreclosure in a deed of trust even if the borrower[ ] [is] in arrears." *Id.* at 199 (emphasis added). The *Mathews* court concluded that the failure to pay on a note does not materially breach a deed of trust thereby barring a homeowner from enforcing any condition precedent to foreclosure. *Id.* The *Mathews* court also concluded that the deed of trust at bar

14

there incorporated HUD regulations as conditions precedent to foreclosure. *Id.* at 203. However, the *Mathews* decision specifically addressed the obligations of a lender, and not those of the trustee, who was not a party to the *Mathews* litigation. *Id.* at 198. (*See also* Defs.' Reply Mem. Law Supp. Mot. Dismiss Amended Compl. ("Defs.' Reply") 14.) Nothing in *Mathews* dictates that it also applies to trustees.

In short, this Court, at this juncture, cannot find that the cases cited create a common law duty of impartiality incumbent on a trustee. In all cases cited by the parties, courts evaluate closely the basis for any cause of action when addressing such a claim. At least one court has specifically refused to find that this precedent rises to an existence of a "common law fiduciary duty [of impartiality] owed to borrowers by trustees." *Sheppard v. BAC Home Loans Servicing, LP*, No. 3:11cv00062, 2012 WL 204288, at *7 (W.D. Va. Jan. 24, 2012) (Moon, J.).[9]

---

[9] Plaintiffs raise other theories as to why Defendants breached a duty of impartiality, but their theories run contrary to established law. For instance, Plaintiffs contend that the trustees' financial relationship to the loan servicers render them partial. However, courts allow some relationship so long as it does not improperly affect the terms of the sale of the property. *See Cerceo*, 1997 WL 314428, at *4. Moreover, while Plaintiffs' briefing contends that Defendants' pricing mechanism created an improper incentive to foreclose rather than to modify, the Amended Complaints do not allege what Plaintiffs address in briefing. (*Compare* Pls.' Opp'n 31, *with* Chatter First Amended Compl. ¶ 74, *and* Banks First Amended Compl. ¶ 85.)

Plaintiffs concede *Horvath's* finding that a trustee has no duty of due diligence to, among other things, check behind a lender's basis to foreclose. 2010 WL 538039, at *1. In Chatter's case, this might include a duty to ensure the lender complied with VA regulations. Still, Plaintiffs argue that *Horvath* contemplates a claim for breach of the fiduciary duty of impartiality when the plaintiff alleges facts establishing such impartiality. (Pls.' Opp'n 27.) Plaintiffs argue that they have pled sufficient facts to establish Defendants' lack of impartiality, including alleging that Defendants had actual knowledge that conditions precedent to foreclosure were not satisfied and that Defendants used false lost note affidavits instead of confirming whether or not the notes were in fact lost. Given the other findings made here, neither of these grounds sufficiently undergird a trustee's breach of fiduciary duty of impartiality because Plaintiffs' allegations merely recast a due diligence duty as a duty to remain impartial.

(c)     **Plaintiff's Attempt to Establish a Other Duties**

Plaintiffs also seek to identify other duties breached.  As to the means in which the

defendants handled the foreclosure proceedings, Plaintiffs cannot identify any aspect of the

deeds of trust that place the duties they rely upon in the trustees' lap.  This Court faces a similar

set of circumstances that Judge Dohnal saw in *Carter*.  In *Carter*, plaintiffs attempted to allege

that the trustee

> breached his fiduciary duty by failing to provide accurate loan reinstatement and/or
> payoff amounts to the Plaintiffs, by failing or refusing to keep the Plaintiffs fully
> informed as to the status of the foreclosure proceedings, by failing to communicate with
> them in a timely manner regarding the foreclosure proceedings, and by failing to provide
> an accurate accounting of the foreclosure sale and deliver same to the . . . Commissioner
> of Accounts pursuant to Code of Virginia §§ 55-59.4 and 26-15.

*Carter*, 2008 WL 4167931, at *11 (internal quotations omitted).  The *Carter* court concluded

plaintiff's claim failed because plaintiff failed to

> allege that the deed of trust required [the trustee] to provide accurate loan reinstatement
> and payoff amounts to Plaintiffs, to keep Plaintiffs fully informed as to the status of the
> foreclosure proceedings, or to communicate with Plaintiffs in a timely manner regarding
> the foreclosure proceedings. Without the proscribed existence of a fiduciary duty,
> Plaintiffs' claim for the breach of such a duty must fail.

*Id.*

Plaintiffs' claims here similarly fail to state that the deeds of trust required Defendants to

ensure compliance with pre-foreclosure conditions or that the deeds of trust required Defendants

to ensure that they received the necessary documentations.  In reviewing the deeds of trust, the

Court did not locate any provision obligating the trustee to ensure compliance with foreclosure

prerequisites. Additionally, neither Banks nor Chatter point to provisions of the deeds of trust in the First Amended Complaint that obligate Defendants to do what they allegedly failed to do.[10]

One possible exception exists. The Chatter Deed of Trust raises separate issues because it incorporates Title 38 and the concomitant regulations in effect on the date the Deed of Trust was executed. However, the Chatter First Amended Complaint references only one regulation allegedly violated: 38 C.F.R. § 36.4278(g)(iv). This section states, "In the event the holder has not established contact with the borrower(s) and has not determined the financial circumstances of the borrower(s) or established a reason for the default or obtained agreement to a repayment plan from the borrower(s), then a face-to-face interview with the borrower(s) or a reasonable effort to arrange such a meeting is required." 38 C.F.R. § 36.4278(g)(iv). Chatter alleges that Chase never evaluated his financial circumstances, never established the reason for his default, never obtained an agreement for a repayment plan, and never made attempts to arrange for a face-to-face interview.

Plaintiffs' allegations fall short, however, because the VA regulations define "Holder" as "[t]he lender or any subsequent assignee or transferee of the guaranteed obligation or the authorized servicing agent of the lender or of the assignee or transferee if the obligation has been assigned or transferred." 38 C.F.R. § 36.4202. Pursuant to this definition, the regulation required Chase, as the authorized servicing agent of the lender First Horizon, to conduct a face-to-face interview or make reasonable efforts to arrange one. Nothing in the Chatter Deed of

---

[10] Banks referenced only Deed of Trust Sections 16, 20, 22, and 24 in her First Amended Complaint. Section 16 permits the Lender to invoke the power of sale and other remedies permitted by applicable law. Section 20 permits the sale of the note and any consequent change in the entity that collects payments due under the note. Section 22 provides the Lender with the right of acceleration and the right to invoke the power of sale. Section 24 permits the Lender to remove the Trustee and appoint a successor Trustee. None of these four sections impose any of the above obligations on Defendants. Chatter referenced similar sections in his First Amended Complaint.

Trust obligates the Defendants to ensure that Chase complied with the VA regulations.  Chatter

points to no VA regulation that obligates the trustee to ensure that the servicer or lender

complied with their obligations.

The Court will dismiss Count One for failure to state a claim.  However, the Court will

grant Plaintiffs leave to amend Count One, to the extent that Plaintiffs can allege specific false

documents Plaintiffs received, or which specific duties arising under the Deed of Trust

Defendants breached.

**B.   Count Four Fails to Sufficiently Allege A RICO Enterprise and Fails to Plead With Particularity Acts of Mail and Wire Fraud**

Count Four alleges Defendants violated RICO.[11]  Chatter and Banks assert Defendants

and the mortgage loan servicers constitute a RICO enterprise and argue the enterprise engaged in

a pattern of racketeering activity based upon acts of mail fraud and wire fraud.

Defendants challenge Plaintiffs' RICO claims, arguing Plaintiffs failed to:  (1) allege

mail and wire fraud with requisite particularity; (2) differentiate among the Defendants when

alleging the mail and wire fraud acts; (3) plead the essential elements of each RICO violation,

including a pattern of racketeering activity; and, (4) plead the requisite reliance and proximate

cause. (*See* Defs.' Mem. Supp. 8-10.)  Because Plaintiffs' claims about the purported false

documents sent to Plaintiffs are alleged without particularity, Plaintiffs fail to plead the

racketeering activity acts of mail and wire fraud with the requisite particularity.  Plaintiffs also

fail to adequately allege a RICO enterprise.

---

[11] Plaintiffs initially did not identify a specific RICO violation, instead charging Defendants with "violations of 18 U.S.C. § 1962." (*See* Chatter First Amended Compl. ¶ 155; Banks First Amended Compl. ¶ 165.)  Plaintiffs' Opposition to Defendant's Motion to Dismiss discussed only 18 U.S.C. § 1962(c). (*See* Pls.' Opp'n 3.)  During oral argument, Plaintiffs informed the Court they were proceeding under 18 U.S.C. §§ 1962(c), (d).  This Court focuses its analysis on these subsections.  Finding that Plaintiffs' underlying RICO claim fails, the Court declines to address the merits of any RICO conspiracy claim.

## 1.   Standard to Plead a Civil RICO Claim

RICO provides a private right of action for treble damages to persons injured in their business or property as a result of a violation of RICO's criminal prohibitions contained in 18 U.S.C. § 1962. *See* 18 U.S.C. § 1964(c); *see also Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 641 (2008). "The showing required to succeed on a RICO charge in the Fourth Circuit is both demanding and well-established," *Baker v. Sturdy Built Mfg., Inc.*, Civil Action No. 3:07cv212, 2007 WL 3124881, at *3 (E.D. Va. Oct. 23, 2007) (Hudson, J.), because "Congress contemplated that only a party engaging in widespread fraud would be subject to [RICO's] serious consequences." *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 683 (4th Cir. 1989).

"To state a claim under [18 U.S.C.] § 1962(c), [a plaintiff] must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Plaintiff[s] must additionally show that (5) [they were] injured in [their] business or property (6) by reason of the RICO violation.'" *Levinson v. Mass. Mut. Life Ins. Co.*, Civil Action No. 4:06cv086, 2006 WL 3337419, at *6 (E.D. Va. Nov. 9, 2006) (Doumar, J.) (*quoting D'Addario v. Geller*, 264 F. Supp. 2d 367, 388 (E.D. Va. 2003)) (second through fourth alterations in original).

## 2.   Standing Requirements

The court will presume that the Plaintiffs have established standing to bring this claim. The Fourth Circuit has found that the "by reason of" language in 18 U.S.C. § 1964(c) "creates certain 'standing' requirements before one can attempt to state a claim under 18 U.S.C. § 1962." *Choimbol v. Fairfield Resorts, Inc.*, 428 F. Supp. 2d 437, 444 (E.D. Va. 2006) (*citing Brandenburg v. Seidel*, 859 F.2d 1179, 1188 n.10 (4th Cir. 1988)). "[T]he plaintiff must have detrimentally relied on the predicate acts of racketeering activity; (2) the predicate acts must be

the proximate cause of the injury to the plaintiff; and (3) the plaintiff must suffer actual injury."
*Id.* (citing *Brandenburg*, 859 F.2d at 1188 n.10).

Here, Plaintiffs clearly allege they, and others, detrimentally relied on Defendants' mail and wire fraud acts. Second, Plaintiffs allege the mail and wire fraud acts "direct[ly] result[ed]" in Plaintiffs' losing their homes and/or being forced to pay funds to prevent foreclosure. (Chatter First Amended Compl. ¶ 154; Banks First Amended Compl. ¶ 164.)

A plaintiff must also allege proximate harm from the RICO violation. *Foster v. Wintergreen Real Estate Company*, Civil No. 3:08cv00031, 2008 WL 4829674, at * 4 (W.D. Va. Nov. 6, 2008). With respect to mail fraud and wire fraud, "a plaintiff must *plausibly* allege both that he detrimentally relied in some way on the fraudulent mailing or wire . . . and that the mailing or wire was a proximate cause of the alleged injury to his business or property." *Id.* (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 233 (4th Cir. 2004)). Although Plaintiffs do not use the magic words "proximate cause," and despite the plausibility that Plaintiffs ultimately lost their homes due to nonpayment,[12] the Court will presume that Plaintiffs' plausibly allege proximate cause. *See CSX Transp., Inc. v. Gilkison*, Civil Action No. 5:05cv202, 2012 WL 1598081, at *15 (N.D. W.Va. May 3, 2012) (finding RICO claim in third amended complaint properly alleged proximate cause and injury even where RICO allegations did not use magic words "proximate cause").

Third, Plaintiffs suffered actual injury. Plaintiffs lost their homes and were forced to pay out sums to prevent foreclosure. (*See* Chatter First Amended Compl. ¶ 154; Banks First

---

[12] At oral argument, Plaintiffs denied that the Amended Complaints contained any allegations that Plaintiffs defaulted on their mortgage obligations. Both Chatter and Banks claim they experienced financial hardship and specifically sought to prevent foreclosure. (*See* Chatter First Amended Compl. ¶ 50; Banks First Amended Compl. ¶ 50.) The Court need not address the sufficiency of this artful pleading for purposes of deciding the RICO claim at bar.

Amended Compl. ¶ 164.)  Indeed, Defendants did not directly challenge Plaintiffs' claim of

injury.  (*See* Defs.' Mem. Supp. 4-17 (no discussion of Plaintiffs' injuries).)  Therefore, the

Court will presume that Plaintiffs have adequately alleged facts to satisfy the standing

requirement.

### 3.   <u>Enterprise</u>

Even if this Court presumes standing, the First Amended Complaints do not sufficiently

allege that Defendants and the loan servicers constitute a RICO enterprise.  Section 1961(4)

defines "enterprise" as including "any individual, partnership, corporation, association, or other

legal entity, and any union or group of individuals associated in fact although not a legal entity."

18 U.S.C. § 1961(4).  In asserting a § 1962(c) RICO claim, a plaintiff must "show an enterprise,

which is defined as an ongoing organization, formal or in-formal, in which the various associates

function as a continuing unit."  *Palmetto State Med. Ctr., Inc. v. Operation Lifeline*, 117 F.3d

142, 148 (4th Cir. 1997).  The RICO enterprise must be distinct from the persons alleged to have

violated RICO.  *See id.*  A RICO claim alleging that the defendant was both the "person" and

"enterprise" will not survive.  *See New Beckley Mining Corp. v. Int'l Union, United Mine

Workers of Am.*, 18 F.3d 1161, 1163-66 (4th Cir. 1994).

An allegation that defendants engaged in a mortgage lending enterprise, without more,

fails to sufficiently allege the "enterprise" element of a RICO violation.  *See Grant*, 871 F. Supp.

2d at 473 ("The complaint states only that 'Defendants [Shapiro & Burson, LLP; Wells Fargo

Bank, N.A.; and Mortgage Electronic Registration Systems, Inc.] engaged in a mortgage lending

enterprise.'  It contains no factual averments regarding the relationships between or among

Defendants, much less how they 'function[ed] as a continuing unit.'") (second alteration in

original).  Naked assertions, devoid of factual enhancements, need not be credited when evaluating the sufficiency of enterprise allegations in a motion to dismiss.  *Id.*

Mere conclusory language that Defendants and the loan servicers operated as a RICO enterprise fails to satisfy the requirements of Rule 12(b)(6).  While Plaintiffs contend in briefing that both Defendants and the bank servicers acted "with the common purpose of conducting foreclosures as quickly and cost-effectively as possible," the allegations fall short of contending that the servicers participated in an enterprise by duping homeowners via fraudulent documents, or by knowing the Defendants utilized fraudulent documents.  For this reason, Plaintiffs' failure to allege a RICO enterprise separate and distinct from the defendants themselves results in dismissal of a RICO claim.  *See Myers v. Lee*, No. 1:10cv131, 2010 WL 3745632, at \*1 (E.D. Va. Sept. 21, 2010).  Merely including the loan servicers as part of the RICO enterprise, without more, cannot save Plaintiffs' RICO claim.

### 4.   **Racketeering Activity (Mail and Wire Fraud)**

RICO defines racketeering activity to include any act indictable under specific federal statutes, including 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. 1343 (wire fraud).  *See* 18 U.S.C. § 1961(1).  In this case, Plaintiffs rely on Defendants' acts of mail fraud and wire fraud as the predicate acts.  Defendants argue that Plaintiffs fail to plead mail and wire fraud with the requisite particularity pursuant to Fed. R. Civ. P. 9(b).

Proof of mail and wire fraud requires satisfaction of the same core elements.  *See Choimbol*, 428 F. Supp. 2d at 443.  Chatter and Banks must show that:  (1) Defendants "knowingly participated in a scheme to defraud, and (2) the mails or interstate wire facilities were used in furtherance of the scheme."  *Id.*  Use of the mails or wire facilities need not be an

essential element of the scheme. *Id.* Rule 9(b) requires that Plaintiffs plead acts of mail and wire fraud with particularity.[13]

Plaintiffs' allegations of mail and wire fraud do not survive this Court's heightened scrutiny. *See, e.g., Grant*, 871 F. Supp. 2d at 474 ("'[T]he Rule 9(b) problem is exacerbated in this [instance]' because multiple defendants are involved, but the complaint does not clearly identify 'which Defendant played which role.'" (*quoting Davis v. Wilmington Fin. Inc.*, Civil No. PJM 09-1505, 2010 WL 1375363, at *3) (second alteration in original)); *Baker*, 2007 WL 3124881, at *4 (noting that "courts are cautious about basing a RICO claim on predicate acts of mail and wire fraud because it will be the unusual fraud that does not enlist the mails and wires in its service at least twice" (citation and quotations omitted)).

Plaintiffs allege, "Defendants began sending various correspondences" in *approximately* 2010, but despite an assertion during oral argument that they have these letters, fail to articulate the specific content of the various letters, how many letters each received, or the precise date or dates each received the letters. Additionally, Plaintiffs claim Defendants made certain material misrepresentations, but fail to clarify where Defendants made these misrepresentations and fail to indicate which of the "various" letters contained these misrepresentations.[14] That said, Plaintiff Banks identified one letter with more specificity than any other: the August 25, 2010

---

[13] "'[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir.1999) (*quoting* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1297, at 590 (2nd ed.1990)).

[14] Plaintiffs claim that the letters contain the misrepresentations. (Pls.' Opp'n 42 n.20.) These allegations still fail to satisfy Rule 9(b) because Plaintiffs claim Defendants sent multiple letters to Plaintiffs. Therefore, the Plaintiffs failed to plead the misrepresentations with the requisite specificity.

letter. However, the Court concludes that the numerous allegations regarding these letters fail to identify the who, what, when, where, and how of the alleged fraud. Additionally, the Court concludes that Rule 9(b)'s safety provision cannot save Plaintiffs' allegations because, despite assertions during oral argument that they had the letters referenced, Plaintiffs contended in briefing that they needed to rely on further discovery to flesh out some of the circumstances pertaining to the letters.[15]

### C.    Leave to Amend

Although the Court grants Defendants' motion to dismiss, the interests of justice dictate that Plaintiffs be granted leave to amend the Amended Complaints again. Presently, Plaintiffs seem to place allegations about the class action "cart" of systemic falsification of documents before the "horse" of specific allegations of falsehoods made in Chatter and Banks.

> A dismissal under Rule 12(b)(6) generally is not final or on the merits and *the court normally will give plaintiff leave to file an amended complaint.* The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that plaintiff be given every opportunity to cure a formal defect in his pleading. This is true even though the court doubts that plaintiff will be able to overcome the defects in his initial pleading. Amendment should be refused only if it appears to a certainty that plaintiff cannot state a claim. The better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff actually can state a claim.

*Ostrzenski v. Seigel,* 177 F.3d 245, 252–53 (4th Cir.1999) (*quoting* 5A Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 360–67 (2d ed.1990)).

Additionally, Federal Rule of Civil Procedure 15(a) instructs that leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Supreme

---

[15] Courts should hesitate to dismiss a complaint under Rule 9(b) if satisfied that the defendants have been made aware of the particular circumstances for which they will have to prepare a defense and that plaintiffs have substantial pre-discovery evidence. *Harrison,* 176 F.3d at 784.

24

Court of the United States has instructed courts to "heed" this mandate, holding that amendments should be freely allowed in the absence of considerations such as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) ("A district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile.").

Therefore, the Court grants Plaintiffs leave to amend the remaining RICO and breach of fiduciary duty claims.

## IV.  Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss the Amended Complaints. (Docket No. 79.)  The Court will also grant Plaintiffs leave to amend the Banks and Chatter First Amended Complaints to amend the RICO and trustee's breach of fiduciary duties claims.  Plaintiffs shall have fourteen (14) days to file Second Amended Complaints in the *Chatter* and *Banks* matters.  Defendants shall have fourteen (14) days to respond.

The Court will deny in part Plaintiffs' Motions for Leave to File Amended Complaints in the *Goodrow*, *McBeth*, *Buel*, and *Mbundure* cases to the extent such presently proposed amended complaints are futile as a result of this decision.  (Docket Nos. 57, 59, 61, 63.)  However, the Court will grant Plaintiffs leave to file Amended Complaints in *Goodrow*, *McBeth*, *Mbundure*, and *Buel* in light of the deficiencies discussed above.

In the interests of judicial economy, the Court will grant in part Plaintiffs' Motion to Consolidate.  (Docket No. 66.)  These six cases remain consolidated for purposes of pretrial management and discovery only.  The Court will deny Defendants' Motion to Stay the Motion to Consolidate.  (Docket No. 72.)

An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 12-27-12

26