**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **JOHN K. GOODROW,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No.: 3:11-cv-00020-MHL** |
| | **(Consolidated)** |
| **FRIEDMAN & MACFADYEN, P.A., et al.,** | |
| **Defendants.** | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR**
**CONSOLIDATED MOTION TO DISMISS THE AMENDED COMPLAINTS**

Defendants, by counsel, make the following arguments and cite the following authorities in reply to *Plaintiffs' Memorandum in Opposition to the Defendants' Consolidated Motion to Dismiss the Amended Complaints.*

**A.      Plaintiffs' Breach of Fiduciary Duty Claims Should Be Dismissed (Counts I).**

Plaintiffs continue to allege that Defendants have breached their fiduciary duties.  But Plaintiffs' claims and arguments are not based in law.  Instead, Plaintiffs' counsel would have this Court implement their **vision** for Virginia foreclosure law, which they have been unable persuade the Virginia General Assembly to embrace.  The Court should apply existing law.

**1.      Under Well-Established Law, Plaintiffs' Claims Are Limited to the Express Terms of the Deeds of Trust.**

This Court granted Plaintiffs the opportunity to identify "specific duties arising under the Deed of Trust [that] Defendants breached."  *Goodrow v. Friedman & MacFadyen, P.A.*, 2012 U.S. Dist. LEXIS 182188, at *33 (E.D. Va. Dec. 27, 2012) [hereinafter *Goodrow II*].  Instead of identifying those duties, Plaintiffs "respectfully" insist that this Court was without "basis in law" when it held that "deeds of trust are treated under the same principles as contracts, and the trustee

only owes those duties that are listed in the deed of trust." *Id.* at *21 (citing *Carter v. Countrywide Home Loans, Inc.*, 2008 U.S. Dist. LEXIS 67014, at *30 (E.D. Va. Sept. 2, 2008)). To support that position, Plaintiffs attempt to dissect and distinguish this Court's reliance on Judge Dohnal's opinion in *Carter*. Pls.' Opp. at 3. Plaintiffs' attempt is wholly unsuccessful.

First, Plaintiffs ignore the language of the opinion. In *Carter*, this Court did not hold that a trustee owes "unstated or implied duties" or duties that "derive from the Deed of Trust." *Cf.* Pls.' Opp. at 3. Instead, it required that such duties be expressly written in the deed of trust. *See* 2008 U.S. Dist. LEXIS 67014, at *30 ("[T]he trustee only owes those duties that are **listed** in the deed of trust itself." (emphasis added)). Second, the *Carter* opinion is consistent with established Virginia law. The Code of Virginia provides that "[e]very deed of trust . . . is in the nature of a **contract** and shall be construed according to its terms to the extent not in conflict with the requirements of law." VA. CODE ANN § 55-59 (emphasis added). And in Virginia, a contract is "construed as written, without adding terms that were not included by the parties." *Uniwest Contr. Inc. v. Amtech Elevator Servs.*, 280 Va. 428, 440, 699 S.E.2d 223, 229 (2010).

Accordingly, Plaintiffs cannot invent duties not listed in the Deeds of Trust, and this Court should dismiss Plaintiffs' twice-repeated claims to the contrary without leave to amend.

2.    **Plaintiffs' Attempts to Establish a "Duty of Impartiality" Without Reference to the Express Terms of the Deed of Trust or the Law Must Be Rejected.**

Plaintiffs ignore well-established law so that they can induce this Court into establishing an ambiguous standard for foreclosure trustees. They contend that the rating system and pricing scheme of Fannie Mae and other entities create an impartial process, citing numerous consent orders and investigations. None of these distractions, however, mask the problem that Plaintiffs' claims are unsupported by the Deeds of Trust, case precedent, and controlling statutes.

Plaintiffs claim that Defendants breached their duties by failing to determine "whether or

not a note was available" and to "locat[e] the actual holder of the mortgage loan."  Pls.' Mem. at

8.  But Plaintiffs do not, and cannot, point to any provision in the Deeds of Trust requiring

Defendants to make these determinations, nor do they offer any legal authority for the existence

of such duties.  *Cf. Horvath v. Bank of N.Y.*, 2010 U.S. Dist. LEXIS 19965, at *5 (E.D. Va. Jan

29, 2010), *aff'd*, 641 F.3d 617 (4th Cir. 2011) ("[A] trustee under a deed of trust has no such duty

of diligence . . . .").[1]  There is no such legal authority:  A 2011 bill sponsored by Plaintiffs'

counsel and State Senator John C. Peterson requiring these determinations never passed the

General Assembly.  *See* S.B. 795, 2011 Sess., at 145–47, 227–29 (Va. 2011) (proposing that a

substitute trustee be required to determine the availability of the note and the basis of the

beneficiary's authority before taking action) [Attached as **Exhibit 1**].

Plaintiffs claim a breach of fiduciary duty because the persons signing the Substitutions

of Trustee did not have personal knowledge or legal standing.  *See, e.g.*, Goodrow ¶ 240.[2]  Yet

they offer no response to authority that a servicer may appoint a substitute trustee, *cf. Larota-

Florez v. Goldman Sachs Mortg. Co.*, 719 F. Supp. 2d 636, 641 (E.D. Va. 2010), *aff'd*, 441 F.

App'x 202 (4th Cir. 2011); nor do they refute case law permitting an "Attorney in Fact" to

appoint substitute trustees, *cf. Sheppard v. BAC Home Loans Servicing, LP*, 2012 U.S. Dist.

LEXIS 7654, at *29 n.8 (W.D. Va. Jan. 24, 2012).[3]  Furthermore, Plaintiffs are unable to

establish that they have standing to challenge the Substitutions of Trustee.  *See Bennett v. Bank

of Am., N.A.*, 2012 U.S. Dist. LEXIS 54725, at *21 (E.D. Va. Apr. 18, 2012) ("[B]ecause

Plaintiff was not a party to the document appointing PFC, he lacks standing to challenge the

---

[1]      It should be noted that Plaintiffs significantly understate the "due diligence" allegations in *Horvath*.  *See, e.g.*, Pls.' Opp. Ex. A ¶¶ 53–55.

[2]      In their Opposition, Plaintiffs upgrade this allegation to forgery. Pls.' Opp. at 8.

[3]      And Plaintiff cannot selectively cite to the Deeds of Trust to hide from the fact that such delegations are permitted.  Plaintiffs' Deeds of Trust (signed by Plaintiffs) specifically contemplate that various parties might exercise the right to foreclose and sell the securing property.  *See* Defs.' Mem. at 10 n.8.

validity of the appointment.").  Instead, Plaintiffs ask this Court to impose liability as if another of Sen. Petersen's bills was law.  *See, e.g.,* S.B. 163, 2012 Sess., at 13–20 (Va. 2012) (proposing a private cause of action for the use of a false or fraudulent record, document, or statement in support of a foreclosure) [Attached as **Exhibit 2**].

Curiously, Plaintiffs allege a breach of fiduciary duty because Defendants failed "to identify whether the borrowers had been offered any loss mitigation alternatives, such as a HAMP modification."  Pls.' Opp. at 8.  On the very next page, however, Plaintiffs admit that they "do not allege that these Trustee defendants were subject to any duty of due diligence necessary to determine if a consumer was . . . subject to a loan modification."  Pls.' Opp. at 9.  Furthermore, neither the Deeds of Trust not the law requires Defendants to take such steps.  *McInnis v. BAC Home Loan Servicing, LP,* 2012 U.S. Dist. LEXIS 13653, at *17 (E.D. Va. Jan. 13, 2012) ("Substitute Trustees have no role in determining whether or not Plaintiff could be granted a permanent loan modification . . . .").

Finally, Plaintiffs complain that Defendants conducted foreclosures "as quickly as possible," without citing to a single violation of the mandatory timelines imposed by the Code of Virginia or the provisions of the Deed of Trust.  *See, e.g.*, VA. CODE ANN. § 55-59.2(2) ("If the deed of trust does not provide for the number of publications of such newspaper advertisement, the trustee shall advertise once a week for four successive weeks . . . .").  Despite Plaintiffs' insistence, their claims do not constitute a breach of fiduciary duty under the Deeds of Trust or Virginia law.  This Court must not recognize them as such.  Trustee duties are defined by statute and express written contract; they are knowable and capable of being followed.  As this Court has unwaveringly recognized, implying additional duties into this defined relationship is not the province of the judiciary.  Accordingly, this Court should dismiss Plaintiffs' claims.

### 3.      Plaintiffs Misstate the Requirements of Virginia Code § 55-59.1(B).

Plaintiffs insist that Defendants violated the provisions of Virginia Code § 55-59.1(B). Even assuming that § 55-59.1(B) is "applicable law" under the Deeds of Trust, Plaintiffs misapply the requirements of that section and fail to state a claim.

Fundamental to Plaintiffs' claim is the misconception that § 55-59.1(B) requires that, "before a notice is provided pursuant to Code § 55-59.1(B), the beneficiary (or its agent) must submit an affidavit to the trustee that the note is lost or unavailable." Pls.' Opp. at 11.  The plain language of the statute requires only that the affidavit be submitted before "proceed[ing] to sale."[4]  VA. CODE ANN. § 55-59.1(B).  As previously noted, one court has observed that "there is no statutory requirement concerning the timing of the Affidavit of Lost Note."  *Buzbee v. U.S. Bank, N.A.*, 2012 Va. Cir. LEXIS 39, *11 (Fairfax County May 2, 2012).  This Court quite properly has not disagreed.  *See Goodrow II*, 2012 U.S. Dist. LEXIS 182188, at *26.

In a further attempt to support their claims, Plaintiffs cite to the unremarkable fact that Defendants frequently filed copies of the Note with the commissioners of accounts. Pls.' Opp. at 16–17.  Plaintiffs appear to suggest that, once Defendants send the notice pursuant to Virginia Code § 55-59.1(B), they must conduct the foreclosure sale without the Note.  But Virginia Code § 55-59.1(B) contemplates that a Note may be "unavailable for any reason," which does not prohibit the Note from being subsequently found.  And once the Note is found, there is no need for an affidavit.  *See, e.g., Horvath,* 641 F.3d 617, 621 (4th Cir. 2011).

Finally, Plaintiffs ignore that Virginia Code § 55-59.1 does not provide them with a remedy.  Section 55-59.1(C) provides that "[f]ailure to comply with the requirements of notice contained in this section shall not affect the validity of the sale."  Plaintiffs' counsel again asks

---

[4]      Plaintiffs later "agree with Defendants' legal conclusion that a trustee may begin certain aspects of the foreclosure process without either possession of the note or a lost note affidavit." Pls.' Opp. at 14.

this Court to enforce the law as they desire it to be, rather than as it is. *See* S.B. 836, 2011 Sess., at 84–87 (Va. 2011) (proposing a private cause of action for violation of the notice provisions of § 55-59.1) [Attached hereto as **Exhibit 3**].  Thus, this Court should dismiss Plaintiffs' claims.

### 4.    Plaintiffs Fail to Allege Plausible Damages.

Plaintiffs must plead the duty, breach, and damages sustained to state an actionable claim for breach of fiduciary duty.  *Carstensen v. Chrisland Corp.*, 247 Va. 433, 443–44, 442 S.E.2d 660, 666 (1994).  Because they have not established plausible claims for damages proximately caused by Defendants' alleged breaches, their claims must be dismissed without leave to amend.

## B.    Plaintiffs' Claims Under RICO Should Be Dismissed (Counts II).

Plaintiffs insist that they have sufficiently pleaded a RICO claim, but the Amended Complaints fail to include critical elements.  Plaintiffs cannot classify themselves as RICO victims because that they would have avoided foreclosure or reinstatement had they not defaulted on their mortgages.  This last-ditch attempt to construe Defendants' foreclosure proceedings as the premise for RICO claims fails as a matter of law.

### 1.    Plaintiffs Fail to Establish the Critical Element of Proximate Cause

#### a.    Detrimental Reliance Survives *Bridge* In This Case.

Referring to the alleged acts of mail and wire fraud, Plaintiffs allege that "[c]onsumers relied on these false documents when they subsequently contacted or paid money to Defendants in attempt to save their homes . . . ."  Banks ¶¶ 158, 321; Buel ¶¶ 152, 311; Chatter ¶¶ 115, 298; Goodrow ¶¶ 155, 346; Mbundure ¶¶ 117, 271; McBeth ¶¶ 169, 355.  In defense of these conclusory allegations, Plaintiffs cite *Bridge  v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008), to say that detrimental reliance has no place in a RICO claim predicated on mail and wire fraud.  Pls.' Opp. at 21.  *Bridge*, however, did not eliminate reliance from the RICO analysis.

In *Bridge*, during a highly competitive tax-lien auction, a county deterred bidders from making multiple bids that could result in the unfair distribution of liens by requiring each bidder to submit a sworn affidavit affirming participation as a single, simultaneous bidder. 553 U.S. at 643. Losing bidders later asserted a RICO claim against a competitor, alleging that the competitor mailed false affidavits to the county, thereby illegally making multiple bids. *Id.*

Although the Supreme Court did not require "first-party reliance" by the losing bidders, who claimed a RICO violation based on the competitor's false statements, the *Bridge* court underscored the importance of proximate cause to all RICO claims explaining that "none of this is to say that a RICO plaintiff who alleges injury **by reason of** a pattern of mail fraud can prevail without showing that **someone** relied on the defendant's misrepresentations." *Id.* at 658 (emphasis added). "Of course, a misrepresentation can cause harm only if a recipient of the misrepresentation relies on it." *Id.* at 656 n.6. Still further, the Supreme Court recognized that "[i]n most cases, the plaintiff will not be able to establish even but-for causation **if no one relied on the misrepresentation**." *Id.* at 660 (emphasis added). Notably, the *Bridge* case contained "no independent factors that account[ed] for [the plaintiff's] injury," rendering the causal nexus between the alleged harm (legitimate bidder's lost opportunity) and the alleged RICO predicate act (mail fraud by false affidavit) clearly direct and proximate. *Id.* at 658. The *Bridge* Court declined to require first-party reliance, because **someone**—namely the third-party county—relied on the misrepresentations, which reliance injured the bidders. *Id.* at 649.

On the one hand, Plaintiffs cite *Bridge* to suggest that reliance is not required for RICO; on the other hand, they allege that Defendants misled Plaintiffs, and Plaintiffs' resulting reliance proximately caused their damages. Unlike *Bridge*, Plaintiffs rely on, albeit without a plausible factual predicate, their supposed first-party reliance, and they fail to make specific factual allegations of any third-party reliance, rendering the *Bridge* holding less forceful, if not

inapposite, to Plaintiffs' case[5]  Plaintiffs' claims fall within the category of most cases that the *Bridge* Court acknowledged will involve detrimental first-party reliance.  *Id.* at 660.

Indeed, Plaintiffs must allege that "the defendant's violation not only was a 'but for' cause of his injury, but was **the proximate cause** as well, . . . § 1964(c) likewise requires a plaintiff to establish proximate cause in order to show injury 'by reason of' a RICO violation.'"  *Id.* at 654. Regardless of whether detrimental reliance is required as an independent element or is instructive to proximate cause—which the *Bridge* Court reiterated "is generally not amenable to bright-line rules," *id.* at 659—it dominates the Plaintiffs' theory of recovery.  Plaintiffs must allege injury resulting directly from "someone's" reliance on Defendants' alleged misrepresentations.

Plaintiffs' reliance allegations, however, are fundamentally implausible.  These conclusory allegations not only fail to meet the stringent requirements of Rule 9(b) pleading, but also fail to explain **how** Plaintiffs changed their positions on foreclosure or reinstatement when, as pleaded, they defaulted before Defendants' entered the picture.  *See e.g.*, Banks ¶¶ 18, 68, 309; Defs.' Mem. at 15.  Further, the Amended Complaints do not allege that Plaintiffs **would have** stayed in their homes but for their alleged reliance on Defendants' acts.  Nor do they allege that they complied with their mortgages terms.  Under *Bridge*, therefore, the absence of **any** plausible allegations of reliance bars Plaintiffs from alleging even "but-for" causation.

---

[5]    *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 2012 U.S. Dist. LEXIS 111446, at *220 (N.D. Cal. Aug. 2, 2012) ("[A]llegations of any third-party reliance must be specific and factual in nature.").   Several courts similarly distinguish *Bridge*, recognizing that it does not eliminate the necessity of alleging first-party reliance where plaintiffs allege this element in their theory of recovery.  *See, e.g.*, *Badella v. Deniro Mktg. LLC*, 2011 U.S. Dist. LEXIS 128145, 19–20 (N.D. Cal. Nov. 4, 2011); *Biggs v. Eaglewood Mortg. LLC*, 636 F. Supp. 2d 477, 479–80 (D. Md. 2009); *G&G TIC, LLC v. Alabama Controls, Inc.*, 2008 U.S. Dist. LEXIS 75269, at *19–20 (M.D. Ga. Sept. 29, 2008), *aff'd*, 324 Fed. App'x 795 (11th Cir. 2009); *Dungan v. Academy at Ivy Ridge*, 2008 U.S. Dist. LEXIS 56757, at *10–12 (N.D.N.Y. July 21, 2008); *Bridgewater v. Double Diamond-Delaware, Inc.*, 2011 U.S. Dist. LEXIS 47248, at *43 (N.D. Tex. Apr. 29, 2011); *see also Robinson v. Fountainhead Title Group Corp.*, 2009 U.S. Dist. LEXIS 22476, at *4–6 (D. Md. Mar. 3, 2009).

b.    **Plaintiffs Disregard Defendants' Proximate Cause Arguments.**

Plaintiffs refuse to engage Defendants on their arguments related to proximate cause. They misunderstand, and do not address, Defendants' critical point:   an intervening cause— Plaintiffs' default—negates the causal connection between Defendants' alleged mailings and wires and the Plaintiffs' alleged injury of foreclosure or reinstatement.  *See* Defs.' Mem. at 17– 20; *see also Holmes v. Secs. Inv. Protection Corp.*, 503 U.S. 258, 269 (1992) (proximate cause permits the court "to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent factors"); *Hemi Group, LLC v. City of N.Y.*, 130 S. Ct. 983, 990 (2010) (no proximate cause where the plaintiff-state's lost tax revenue was not caused by the defendant-vendor's alleged mail fraud and instead caused by the "customers' failure to pay their taxes," an independent, non-RICO violation).   Conspicuously, even after multiple opportunities in the preceding two years of litigation to amend their complaints, Plaintiffs do not allege that they were **not** in default on their mortgages.   This renders their RICO claims implausible.

Furthermore, the factual distinction Plaintiffs attempt to make about *Kramer v. Brachan Aerospace Corp.*, 912 F.2d 151 (6th Cir. 1990), *O'Malley v. O'Neill*, 887 F.2d 1557 (11th Cir. 1989), and *Brandenburg v. Seidel*, 859 F.2d 1179 (1988), is unavailing.   As Plaintiffs point out, the trial court determined in all three cases that, as a matter of law, an intervening non-RICO act caused the plaintiff's alleged injury **instead of** the alleged RICO predicate act.   Plaintiffs' factual explanation of these cases, therefore, only serves to underscore the very point Defendants make. But Plaintiffs ignore Defendants' contention that their default amounted to an independent, intervening factor that upsets Plaintiffs' proximate cause theory.

At best, Plaintiffs suggest, for the first time, that "all of the Plaintiffs were deprived of a significant amount of time in which they could have pursued several options in order to stay in their homes, including obtaining a loan modification." Pls.' Opp. at 26.  This time deprivation is

**not** among the damages asserted, and Plaintiffs do not allege any legal or contractual right to additional time between default and foreclosure.  Indeed, no such right exists.  Defs.' Mem. 19.  More importantly, Plaintiffs invite the Court to speculate on the legal issue of proximate cause.  *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 465–66 (2006) (discouraging speculation in a RICO proximate cause inquiry because "the more difficult it becomes to ascertain the amount of a  plaintiff's damages attributable to the violation, as distinct from other, independent, factors"); *Moyers ex rel. Moyers v. Corometrics Med. Sys.*, 2000 U.S. App. LEXIS 6177, at *17 (4th Cir. Apr. 4, 2000) ("[P]roximate cause must be sufficient to remove the case out of the realm of speculation and conjecture and into the realm of legitimate inference.").  Plaintiffs do not allege any reasonable certainty about loan modifications, only that they "**could have pursued**" such options with third-party servicers.  Plaintiffs do not explain how Defendants' acts—triggered by Plaintiffs' failure to pay as in *Hemi*—proximately caused Plaintiffs to lose property over which their lenders held a contractual right to foreclose.

On balance, Plaintiffs merely insist that the predicate acts directly caused the foreclosures, provide no legal argument, and rehash their insufficient factual allegations.

## 2.    Plaintiffs Cannot Establish the Critical Element of a Common Purpose to Sufficiently Plead a RICO Enterprise.

Plaintiffs allege that Defendants had a "common economic purpose" of engaging in the foreclosure process "as quickly an [sic] as efficiently as possible," which they allege was "wrongful."  *E.g.*, Buel ¶¶ 294, 300–01.  They contend that such purpose "ensur[ed] that their business model had the lowest cost structure that they could construct" and gave them a "competitive edge" to realize "monetary profit."  *E.g.*, Buel ¶¶ 1, 2, 164.  In other words, the alleged common purpose of this "foreclosure enterprise" was to profit from foreclosure activity.

As argued earlier, and as conceded by Plaintiffs, "a goal of making money establishes a

common purpose where the enterprise members sought to profit from the alleged **illegal activity**." *AARP v. Am. Family Prepaid Legal Corp.*, 604 F. Supp. 2d 785, 792 (M.D.N.C. 2009) (emphasis added) (citing *United States v. Tillett*, 763 F.2d 628, 631 (4th Cir. 1985)); *see also Harden Mfg. Corp. v. Pfizer Inc.*, 433 F. Supp. 2d 172, 179–180 (D. Mass. 2006). The facts as pleaded by Plaintiffs, as a matter of law, do not provide the factual predicate for establishing any illegal activity.[6] To their detriment, Plaintiffs do nothing more than deny the legality of the conduct they allege, without providing explanation **why** the activity complained of was illegal.

### a.   Compliance with Virginia Code § 55-59.1(B) Is Not "Illegal Activity."

As discussed more fully in Part A.3 *supra*, the Plaintiffs' arguments that the Defendants violated § 55-59.1(B) are unavailing. Plaintiffs contend that Defendants committed an illegality by notifying homeowners that the note was not in their possession. But that contention is belied not only by the law, but also by Plaintiff's own declarations, which underscore Defendants' compliance with these statutory requirements. *See* Pls.' Opp. Ex. F, G (indicating that original notes were filed if lost note affidavits were not filed). More fundamentally, even assuming Defendants' notices did not comply with the statute, there is nothing illegal about sending foreclosure notices to a mortgagor, especially one in default. Therefore, these alleged violations do not sufficiently establish a common purpose of illegal activity.

---

[6]     Plaintiffs operate under a mistaken belief that, on a Rule 12(b)(6) motion, the Court can "infer" a legal conclusion. Pls.' Opp. at 30. While "[t]he Court presumes all factual allegations in the complaint to be true and accords all reasonable inferences to the non-moving party, the Court is **not** however, bound to accept as true '**conclusory allegations regarding the legal effect of the facts alleged**.'" *Kirby v. Richmond Redevelopment & Hous. Auth.*, 2005 U.S. Dist. LEXIS 43547, at *28 (E.D. Va. Sept. 13, 2005) (Lauck, J.) (emphasis added) (citing *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994)). While **factual** inferences may benefit Plaintiffs, Plaintiffs must explain **why** their conclusory allegations about the legal effect of the facts alleged are correct as a matter of law. They have not provided this explanation, thereby failing to meet the purpose of Rule 12(b)(6) to "test the legal sufficiency of the complaint." *Randall*, 30 F.3d at 522.

b.      **Plaintiffs Remain Silent on the Illegal Nature of the Alleged Activity.**

Plaintiffs fail to adequately oppose Defendants' attack on the illegality of the alleged misconduct.   **First**, Defendants argue that Plaintiffs fail to establish Defendants' role with the alleged fraudulent activity of the servicers.  Defs.' Mem. at 22–23.  In response, Plaintiffs restate allegation that Defendants acted to "speed[] through the foreclosure process" without explaining how that speed constitutes an illegal common purpose.  Pls.' Opp. at 30

**Second**, the LPS referral fee is not illegal or unethical.  Defs.' Mem. at 23–24.  But Plaintiffs merely conclude that the Court should "infer" that these referral fees were "improper," Pls.' Opp. 30, but even that falls short of illegality.  Plaintiffs cite a non-binding North Carolina state ethics opinion and a Nevada complaint in a state consumer protection lawsuit, but fail to explain how Defendants' work with LPS, and $125 payments to LPS, amount to illegal kick-backs.   Plaintiffs fail to identify the laws they contend were violated as a result of LPS's involvement as the lenders' agent.   The allegations indicate an ordinary fee for service as opposed to an illegal kick-back.  Plaintiffs' response in their opposition brief is unpersuasive.

**Third**, Plaintiffs say nothing in response to Defendants' contention that F&M Services, L.C., was a lawfully formed company and not a "sham," thereby conceding the point.  There is nothing illegal about a law firm forming a separate, related company to provide trustee functions.

**Fourth**, preparation of substitute trustee documents (even those alleged as "improperly prepared") does not constitute illegal activity.  Defs.' Mem. at 24–25.  Plaintiffs fail to address this argument, focusing instead on whether other "enterprise members" knew about these documents. Pls.' Opp. 31.  Because Plaintiffs were in default, preparing foreclosure documents was not only legal, but also appropriate.

**Finally**, Plaintiffs spend nearly four pages addressing other aspects of the RICO enterprise—relationships and longevity—that Defendants never raised.   These arguments are

moot and merely provide an excuse for Plaintiffs to rehash their conclusory allegations.

Unable to rise above their conclusory allegations to explain **why** the Defendants' alleged conduct of "making money" in the foreclosure process was illegal, Plaintiffs fail to establish a common purpose between Defendants and the servicers upon which a RICO enterprise can be predicated. Counts II, therefore, must be dismissed with prejudice.

### 3. The Authority Cited in Support of a RICO Pattern Is Unavailing.

Plaintiffs concede that, after surveying the case law, "no court has found closed-ended continuity for a series of racketeering acts occurring for less than a year." Pls.' Opp. at 35. They cite an **unpublished** opinion, *Prof'ls v. Berry*, to support a RICO pattern. 1992 U.S. App. LEXIS 6219, at *2–3 (4th Cir. Apr. 2, 1992). The Fourth Circuit in *Berry* found most determinative to its finding of a RICO pattern the fact that the scheme "presented a threat of **ongoing criminal activity unlike the discrete schemes perpetrated in other cases**." *Id.* at *10 (noting that racketeering continued even after litigation ensued). Here, Plaintiffs concede that Defendants present no such threat because they have ceased to exist. *See, e.g.*, Buel ¶ 1.

Plaintiffs also cite *Morley v. Cohen*, 888 F.2d 1006 (4th Cir. 1989) (RICO scheme to defraud investors in a coal mine-tax shelter investment). But the post-trial posture of *Morley* adds nothing to this Court's analysis—at the pleading stage—of whether the factual allegations contained in the Complaint sufficiently meet the heightened pleading standards of Rule 9(b) for a RICO claim predicated on mail and wire fraud. Without sufficient allegations of a RICO pattern, Counts II must be dismissed, with prejudice.

### C. Plaintiffs' Claims Under the FDCPA Should Be Dismissed (Counts III).

### 1. Many of Plaintiffs' Claims (And All of Banks's and Chatter's) Are Barred.

Banks and Chatter claim that sale of property at a foreclosure auction does not extinguish

the mortgagor's debt—calling this an "untrue" **fact**. Pls.' Opp. at 36–37. But this is a legal issue. The sale of the property is effective when the highest bid is accepted. *See, e.g.*, *Yaffe v. Heritage Savs. & Loan Ass'n*, 235 Va. 577, 581, 369 S.E.2d 404, 406 (1988); *Holston v. Pennington*, 225 Va. 551, 304 S.E.2d 287 (1983). As alleged, Defendants sold the security and extinguished the deed of trust obligation. Plaintiffs do not allege that Defendants were hired to or attempted to collect deficiency judgments from them; nor do they allege that Defendants communicated with them about debt collection after the sales.

A "threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a 'debt.'" *Gorbaty v. Portfolio Recovery Assocs., LLC*, 355 Fed. App'x 580, 581 (3d Cir. 2009) (issuance of an IRS 1099-C debt forgiveness notice to consumer and submission to IRS for tax deduction is not debt collection or communication with a debtor). If Defendants are not collecting on the deficiencies, they are not debt collectors after the sale takes place. *See Calkins v. Shapiro & Anderson, L.L.P.*, 2005 U.S. Dist. LEXIS 33185, at *16–17 (D. Ariz. Dec. 13, 2005) ("There being no 'debt' to collect, the FDCPA does not apply.").[7]

For Buel, Goodrow, Mbundure, and McBeth, Plaintiffs concede that FDCPA claims based on communications and debt collection efforts pre-dating one year from the time their Complaints were filed are barred. *E.g.*, Pls.' Opp. at 37. Similarly, Defendants do not disagree that new letters on the same date trigger new claims with new limitations periods.

### 2. Plaintiffs Do Not State a Claim under § 1692g of the FDCPA.

Plaintiffs contend that Mbundure and McBeth have alleged claims under § 1692g of the FDCPA. Yet Plaintiffs admit that a mortgage servicer can be "a FDCPA creditor." Pls.' Opp. at 38. Plaintiffs' admission is well-supported by law. In *Yarney v. Ocwen Loan Servicing, LLC*,

---

[7] Furthermore, Defendants communications to Commissioners of Accounts are not with the debtor and cannot support FDCPA claims.

2013 U.S. Dist. LEXIS 32802, at *11–12 (W.D. Va. Mar. 8, 2013), for example, the Court recently examined this issue and acknowledged that "there is no statutory definition for loan servicer under the FDCPA." *Id.* at *12. Thus, it held that loan servicers are creditors unless they became servicers after the debt falls into default. *Id.* And a creditor, as defined in the FDCPA is a "person . . . to whom a debt is owed." 15. U.S.C. § 1692a(4). Plaintiffs avoid all discussion or inference of their respective defaults. Accordingly, they cannot plausibly allege that the Servicers obtained their debt after they defaulted. Defendants appropriately identified the Servicers as persons "to whom the debt is owed," and so Plaintiffs' claim should be dismissed.[8]

### 3.  Use of a "V" in Defendants' Letters Does Not Communicate Legal Action.

The Plaintiffs argue that the Defendants' letters imply the existence of a lawsuit against them or an intent to file lawsuits when no filing has taken place and no filing is intended. In support, Plaintiffs point to the "v" in the subject line of Defendants letters and the reference to actions and dismissals of actions. But when reviewing letters for applicability of the FDCPA, the Fourth Circuit recently instructed that district courts should "examine the transaction as a whole." *Boosahda v. Providence Dane LLC*, 462 Fed. App'x 331, 335 (4th Cir. 2012). The "v" connotes the adverse positions of the servicer/noteholder and the mortgagor in default. There is no mention of a court filing, a jurisdiction, a case number or court-related consequence for failure to pay the mortgage debt.[9] In light of this, the use of the "v" in the letter's subject line does not falsely convey, deceive, or misrepresent the existence of a lawsuit.

---

[8]    Furthermore, Plaintiffs implicitly acknowledge that a noteholder is a creditor. Pls.' Opp. at 39. Plaintiffs do not, and cannot, plausibly allege that the Servicers did not hold the Notes, and it would be improper for this Court to permit them to recast a "show me the note" theory. *See Pham v. Bank of New York*, 2012 U.S. Dist. LEXIS 51194, at *11–12 (E.D. Va. Apr. 10, 2012) (rejecting claim against trustee should have to prove it has the noteholder's authority).

[9]    Plaintiffs' mischaracterizations of Defendants' arguments—saying that Defendants urge a view that the "v" refers to a case that the Plaintiffs may file—are odd, to say the least. Defendants do not take that position.

**4.      The § 55-59.1(B) Letter Is Not Debt Collection Activity and Immaterial.**

Plaintiffs attempt to state a class claim under the FDCPA based on the § 55-59.1(B)

Statutory Notice Letter, so it is incumbent on the Court to examine whether that letter constitutes

debt collection activity.[10]   Plaintiffs contend that this inquiry has been settled by *Goodrow I.*

Pls.' Opp. at 45 n.11.   In *Goodrow I*, Judge Spencer did not address that particular letter.

Defendants argued that all foreclosure notices and sale activity are outside the scope of debt

collection; Judge Spencer cited *Wilson* and rejected that broad proposition.   The Court was not

asked to, and did not, examine the individual § 55-59.1(B) Statutory Notice Letter.

In a recent case, Judge Moon conducted such an examination and ultimately determined

that the letter qualified as debt collection activity.   In his analysis, Judge Moon reviewed the

recent history of similar cases and reasoned:

> Like the notices in *Wilson* and *Goodrow*, and unlike the notices in *Blagogee*,
> *Moore*, and *Blick*, SIWPC's letter further identified the amount of the debt, the
> creditor to whom it was owed, and provided the information required by 15
> U.S.C. § 1692g(a) about the 30-day verification period during which the debtor
> could dispute the validity of the debt.   The October 5 letter was not simply a
> notice that foreclosure would take place on a particular date.   In fact, it contained
> no information about when the foreclosure would take place, and instead
> contained information almost entirely related to collection of the debt.   For these
> reasons, I find that Plaintiffs have sufficiently alleged that SIWPC was acting as a
> debt collector attempting to collect a debt under the FDCPA."

*Townsend v. Fannie Mae*, 2013 U.S. Dist. LEXIS 18588 (W.D. Va. Feb. 12, 2013).

In this case, the § 55-59.1(B) Statutory Notice Letter does not:  (1) identify the amount of

the debt; (2) make a demand for payment; or (3) identify to whom the debt should be paid.

While the letter includes the FDCPA "mini-Miranda," the Fourth Circuit has recognized the

---

[10]      "To establish a FDCPA claim, a plaintiff must prove that:  '(1) the plaintiff has
been the object of collection activity arising from consumer debt; (2) the defendant is a debt
collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission
prohibited by the FDCPA.'"  *Boosahda v. Providence Dane LLC*, 462 Fed. App'x 331, 333 n.3
(4th Cir. 2012).

dilemma when it comes to including this standard disclaimer. *See Boosahda*, 462 Fed. App'x at 334 ("[I]f the use of the statutorily required disclaimer is sufficient to establish an FDCPA claim, debt collectors will be placed in a conundrum, exposed to liability for both including the disclaimer and for omitting it."). Including the FDCPA disclaimer is not conclusive of debt collection activity. *Id.* Accordingly, the § 55-59.1(B) Statutory Notice Letter does not collect a debt. *See, e.g. Blick v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 41266 (W.D. Va. Mar. 27, 2012) (examining Bierman firm's 55-59.1(B) Statutory Notice Letter and deciding it does not constitute debt collection). FDCPA claims based on this letter should be dismissed.

Should the Court consider the § 55-59.1(B) Statutory Notice Letter to be debt collection activity, the allegedly offending statements within it are not material. Plaintiffs have repeatedly referred to this letter, paraphrasing it with their proposed slant. The letter states:

> We are writing to tell you that we do not have the original note in our possession at this time. We do have evidence of the indebtedness referenced above. We have been informed by the Lender that they will forward the original note to us. We want you to be aware of your statutory rights under Virginia Law.

*E.g.*, Goodrow Ex. I. The letter then goes on to describe those rights. The letter does not say that the note is forever lost or that the lender is foreclosing without the original note. If it turns out that the lender or servicer fails to send the original note, Plaintiffs are advised of the provisions of Virginia Code § 55-59.1(B).

Plaintiffs make an implausible series of conclusory allegations based on their misreading of the letter and their insistent, but unsupported, views on the supposed prerequisites for, and timing of, sending a § 55-59.1(B) Statutory Notice Letter. The alleged confusion and deception is of Plaintiffs' own creation, and the statements are not material because they would not tend to cause Plaintiffs to do something they should not do or fail to take some action that should be taken. In fact, the General Assembly has determined that, even in the event a lender/trustee

completely fails to send the § 55-59.1(B) Statutory Notice Letter, such failure cannot serve as a basis to invalidate a foreclosure sale.  VA. CODE ANN. § 55-59.1(C).

     **5.**     **Plaintiffs' Allegations Concerning Fees and Costs Fail to State a Claim.**

Plaintiffs interpret the "Foreclosure Attorney/Trustee Fees and Costs" itemization of amounts claimed to exclude costs payable to the Lender.  Plaintiffs argue that because Fannie Mae has a schedule paying $600.00 to firms for completed foreclosures, then any amount exceeding this sum in a reinstatement quote or payoff is excessive, deceptive, and in violation of the FDCPA.  Plaintiffs' interpretation is illogical.  After notifying the mortgagor of his/her right to reinstate or payoff the loan, the Deeds of Trust allow for the Lender to recover from the mortgagor "**all its expenses incurred in pursuing the remedies provided for in this Section 22**, including, but not limited to reasonable attorneys' fees and costs of title evidence."  As alleged, $600 is paid to Defendants upon completion of a foreclosure sale.  If Plaintiffs reinstate or payoff, then no foreclosure sale occurs, so why would the itemization for reinstatement costs and expenses equate to what Fannie Mae pays lawyers/trustees for completing a foreclosure?

As Plaintiffs recognize in the latest iteration of their complaints, owners of deed of trust loans (qualifying as "Lender," as defined in the deeds of trust) have numerous agents.  Each of these agents is paid to perform a function—and there are associated costs.  These costs increase when mortgagors (like Plaintiffs) do not pay their deed of trust loans.  Section 22 of the Deeds of Trust is expansive in permitting recovery of all of Lender's expenses, including attorney fees and costs.  When Defendants undertake efforts for the benefit of the Lender, incurring expense, it is an expense of the Lender recoverable under Section 22.  It should not be surprising, therefore, that exactly none of Defendants' reinstatement and payoff quotes show $600.00 in attorney fees and costs.  The foundation of Plaintiffs' argument is implausible:  Demands for amounts other

than $600.00 comply with the Deeds of Trust, and Fannie Mae's rate schedule for foreclosure sales reveals only a partial picture. Plaintiffs' FDCPA claim on this basis fails as a matter of law.

Additionally, in *Hahn v. Triumph P'ships LLC*, 557 F.3d 755 (7th Cir. 2009), the case that spawned the materiality standard now applied in the Fourth Circuit, the Seventh Circuit held that mislabeling one component of an debt (interest) for another component of that same debt (principal), when the total amount owed stayed the same, is not actionable under the FDCPA. Plaintiffs do not allege plausible facts to support a claim that the sum total of Defendants' quotes is inflated. Thus, it makes no difference whether a fee or cost relates to Defendants' fees or some other cost. This Court should dismiss Plaintiffs' claim as implausible and immaterial.

### 6.    Plaintiffs' Claims Under § 1692f(6) Fail to State Valid Causes of Action.

Plaintiffs do not differentiate between their claims under § 1692e and § 1692f. *E.g.* Goodrow ¶ 364 ("Defendants violated § 1692e and § 1692f as to the Defective Appointment of Substitute Trustee subclass because they falsely stated that they had been properly appointed substitute trustee . . . "). Nevertheless, they claim their § 1692f claims are "largely unchallenged." In addition to the arguments made opposition to Plaintiffs' § 1692e claims, Defendants' fiduciary duty arguments necessitate that Plaintiffs' § 1692f claims must fail.

Plaintiffs posit that Defendants violate this section and can represent a "Defective Appointment of Substitute Trustee" class because the Substitutions of Trustee were signed by the servicer instead of the noteholder. Plaintiffs concede: "Of course a servicer may appoint the substitute trustee. It just needs possession of the note to become a note-holder." Pls.' Opp. at 48. Plaintiffs are half correct. It is universally agreed that a noteholder can substitute a trustee. *See e.g.*, *Horvath*, 641 F.3d at 623 n.3. But, regardless of who possesses the note, a servicer can substitute a trustee on behalf of the lender as its agent. *Larota-Florez*, 719 F. Supp. 2d 636.

Since Plaintiffs' legal premise is incorrect, they fail to state a valid § 1692f claim on that basis.

Plaintiffs allege that the Substitutions of Trustee were not properly notarized and are, therefore, invalid. Yet Plaintiffs allege no facts to make this bald assertion: Was the notary not credentialed? Was the signatory not in the presence of the notary? But how would Plaintiffs ever know this? The plausibility standard under *Twombly* and *Iqbal* requires more than generalized speculation. Plaintiffs try to base their individualized claims on the conduct of third-party lenders who have employed lax industry standards and paid settlements to state and federal authorities. Defendants adamantly disagree. Without alleging facts regarding Plaintiffs' own lenders and servicers and Plaintiffs' particular transactions, Plaintiffs fail to state claims. In addition, courts have denied mortgagors standing to challenge trustee appointments. *E.g.*, *Bennett*, 2012 U.S. Dist. LEXIS 54725 at *21. Without standing, Plaintiffs cannot raise a claim under § 1692f that a trustee acting under a substitution was not authorized to act. Lastly, Plaintiffs assert that a lawyer, pursuant to power of attorney from a lender, is not permitted to appoint a member of his own firm to serve as substitute trustee. No Virginia court has so ruled. To the contrary, courts have upheld the practice, and statute permits lawyers for lenders to "wear two hats." *See, e.g.*, *Sheppard*, 2012 U.S. Dist. LEXIS 7654, at *19 n.7, *28 n.8 (nominee of lender "deputizing" others to make assignments does not invalidate those assignments); VA. CODE ANN. § 26-58 (lawyer for creditor may serve as substitute trustee).

## D.    Conclusion.

For the above reasons, and those previously given, as well as those addressed at the scheduled hearing, Defendants respectfully request that this Court grant their Consolidated Motion to Dismiss the Amended Complaints and award them such other and further legal and equitable relief as this Court deems just and proper.

**DATED:    April 2, 2013**

Respectfully Submitted,

**FRIEDMAN & MACFADYEN, P.A.,
JOHNIE R. MUNCY, and
F&M SERVICES, L.C.,**

**By Counsel**

_____/s/  Cullen D. Seltzer_____
Douglas P. Rucker, Jr. (VSB No. 12776)
Andrew Biondi (VSB No. 48100)
Cullen D. Seltzer (VSB No. 35923)
Faith A. Alejandro (VSB No. 80076)
Eric C. Howlett (VSB No. 82237)
SANDS ANDERSON PC
2300 Bank of America Center
1111 East Main Street (23219)
Post Office Box 1998
Richmond, Virginia 23218-1998
Telephone:  (804) 648-1636
Facsimile:  (804) 783-7291
Email:  drucker@sandsanderson.com
Email:  abiondi@sandsanderson.com
Email:  cseltzer@sandsanderson.com
Email:  falejandro@sandsanderson.com
Email:  ehowlett@sandsanderson.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Dale W. Pittman, Esq.
The Law Office of Dale W. Pittman, P.C.
112-A W. Tabb Street
Petersburg, Virginia  23803
Telephone:  804-861-6000
Facsimile:  804-861-3368
dale@pittmanlawoffice.com
*Counsel for Plaintiff*

John C. Petersen, Esq.
Surovell Isaacs Petersen & Levy PLC
4010 University Drive, Suite 200
Fairfax, Virginia  22030
Telephone:  703-251-5400
Facsimile:  703-591-9285
jpetersen@siplfirm.com
*Counsel for Plaintiff*

Kristi Cahoon Kelly, Esq.
Surovell Isaacs Peterson & Levy PLC
4010 University Drive, Suite 200
Fairfax, Virginia  22030
Telephone:  703-277-9774
Facsimile:  703-591-2149
kkelly@siplfirm.com
*Counsel for Plaintiff*

Leonard Anthony Bennett, Esq.
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Boulevard, 1-A
Newport News, Virginia  23601
Telephone:  757-930-3660
Facsimile:  757-930-3662
lenbennett@cox.net
*Counsel for Plaintiff*

Matthew J. Erausquin, Esq.
Consumer Litigation Associates, P.C.
1800 Diagonal Road, Suite 600
Alexandria, Virginia  22314
Telephone:  703-273-6080
Facsimile:  888-892-3512
matt@clalegal.com
*Counsel for Plaintiff*

Richard J. Rubin, Esq.
1300 Canyon Road
Santa Fe, New Mexico  87501
Telephone:  505-983-4418
Facsimile:  505-983-2050
dickrubin@cs.com
*Counsel for Plaintiff*

_____/s/  Cullen D. Seltzer_____
Douglas P. Rucker, Jr. (VSB No. 12776)
Andrew Biondi (VSB No. 48100)
Cullen D. Seltzer (VSB No. 35923)
Faith A. Alejandro (VSB No. 80076)
Eric C. Howlett (VSB No. 82237)
SANDS ANDERSON PC
2300 Bank of America Center
1111 East Main Street (23219)
Post Office Box 1998
Richmond, Virginia 23218-1998

Telephone:  (804) 648-1636
Facsimile:  (804) 783-7291
Email:  drucker@sandsanderson.com
Email:  abiondi@sandsanderson.com
Email:  cseltzer@sandsanderson.com
Email:  falejandro@sandsanderson.com
Email:  ehowlett@sandsanderson.com
*Counsel for Defendants*