EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

FILED
APR 17 2013
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

ROBERT F. DOUGLAS,
et al.,

    Plaintiffs,

v.                            Civil Action No. 3:12cv854

BRANCH BANKING & TRUST
COMPANY,

    Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on the MOTION TO DISMISS COUNT II (Docket No. 5), pursuant to Fed. R. Civ. P. 12(b)(6), that was filed by Defendant Branch Banking & Trust Company ("BB&T"). For the reasons set forth herein, the motion will be granted.

**BACKGROUND**

On May 24, 2004, Robert Douglas and his wife, Valerie Douglas (collectively, the "Douglases" or the "Plaintiffs"), took out a mortgage loan to purchase property located at 9192 Blakewood Drive, Mechanicsville, Virginia (the "Property"). Pls.' Compl. ¶ 5, ECF No. 1. The loan was evidenced by a promissory note (the "Note") and secured by a properly recorded deed of trust (the "Deed of Trust"), which named Karen J.

as trustees. Id. At some point, BB&T became the holder of the Note, thereby acquiring all the rights of the lender. Id. ¶ 7.

The Note and the Deed of Trust both contained notice provisions. In the Note, the Douglases agreed to the following:

> If I am in default, the Note Holder <u>may</u> send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder <u>may</u> require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

Id. ¶ 8 (emphasis added). On the other hand, the Deed of Trust mandated that notice be sent.

> Lender <u>shall</u> give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice <u>shall</u> specify (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date of notice is given to the Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.

Id. ¶ 9 (emphasis added).

When the Douglases failed to make a payment under the Note, BB&T mailed them a letter notifying them of their default. Id. ¶ 11. The letter was dated April 7, 2010, but the Douglases contend that it was not mailed until April 15, 2010. Id. ¶¶ 11-12. The letter demanded both a cure payment in the amount of $4,242.39 and the following month's payment by May 7, 2010, or

2

else BB&T would foreclose on the Property. Id. ¶ 13. The Douglases allege that they never actually received the notification letter, and, if they had, they would have brought the Note current, because they had sufficient resources to do so. Id. ¶¶ 16-17. On July 15, 2012, in accordance with the notification letter, BB&T, through its agent, foreclosed on the Property. Id. ¶ 23. The Douglases allege that the foreclosure and subsequent reporting to credit bureaus caused them damages and violated the Deed of Trust because of the allegedly insufficient notice that they claim was a prerequisite to such actions.[1] Id. ¶¶ 36-37.

---

[1] The Douglases correctly claim a violation of only the Deed of Trust, as opposed to alleging violations of both the Deed of Trust and the Note. First, the notice provision in the Note contains discretionary language, and it is unclear whether 30-days' notice was even required under the Note. Second, promissory notes and security instruments are legally distinct with respect to remedies sought. The Supreme Court of Virginia has explained this distinction.
> Though the two papers are executed at the same time and closely related, they have different subjects and purposes, and there is no rule of interpretation or construction requiring them to be so treated as to affect either subject in a manner different from that intended by the parties or to defeat any of the purposes intended. Being separate or at least separable, the note may and does confer one right and the security another. The former is governed by the law merchant, and the latter by the law of real property and equitable rules and principles. Here we have under consideration a resort to the security only . . . .

Gen. Elec. Credit Corp. v. Lunsford, 167 S.E.2d 414, 418 (Va. 1969) (quoting Shanabarger v. Phares, 103 S.E. 349, 350-51 (W. Va. 1920)).

3

According to the Deed of Trust, when BB&T exercised its option to accelerate payment, only the trustee, or a duly appointed substitute trustee, was permitted to advertise and conduct the foreclosure sale. The instrument stated the following:

> Lender, at is option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all of the title, power and duties conferred upon Trustee herein and by applicable law.
>
> Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. . . .
>
> Trustee shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the property . . . .
>
> Trustee shall deliver to the purchase Trustee's deed conveying the Property with special warranty of title. . . .

Id. ¶¶ 39-40, ¶ 50.

Exercising its right under the Deed of Trust, BB&T purported to appoint Professional Foreclosure Corporation of Virginia ("PFC") as substitute trustee by filing an Appointment of Substitute Trustees (the "Substitution of Trustee"). See id. Ex. C. The Douglases contend that the two-page Substitution of

4

Trustee is a "bogus" document. Id. ¶ 52. On this point, they allege the following:

> The <u>second page</u> of [the Substitution of Trustee] <u>was not attached to, was not associated with the first page</u> of [the Substitution of Trustee] when the second page was signed. When the second page of [the Substitution of Trustee] <u>was signed, it was a one-page document</u> which <u>contained no appointive language</u> and which took no action whatever. Thus, Glascock & Ordess remained trustees on the [D]eed of [T]rust. The <u>first page</u> of [the Substitution of Trustee], not associated with the second page, was nevertheless, in part of a bogus operation, <u>later placed as a purported first page</u> to [the Substitution of Trustee] although it was not such first page.

Id. ¶ 53 (emphasis added).

The Douglases allege that they suffered compensable injuries attributable to BB&T's foreclosure sale and the reporting of the foreclosure by BB&T to credit bureaus, including more than $75,000 in lost equity, lost rents, economic damage to their credit rating, inconvenience, and future lost rents and economic damage to their credit rating. Id. ¶ 57. These monetary damages are the sole relief sought.

On January 17, 2013, BB&T filed its Motion to Dismiss Count II, which alleges the "bogus" appointment of PFC as substitute trustee. See Def.'s Mot. to Dismiss Count II, ECF No. 5; Compl. ¶ 52. In its supporting memorandum, BB&T argues that the Douglases lack standing to challenge the validity of PFC's appointment, and alternatively that the alleged facts do not undermine the validity of PFC's appointment as substitute

5

trustee. Def.'s Mem. in Supp. of Mot. to Dismiss Count II, ECF No. 6, at 3-5.

**DISCUSSION**

I. **Standard Of Review**

A motion to dismiss under Rule 12(b)(6) seeks to test the legal sufficiency of the factual allegations made in the Complaint. F.R.C.P. 12(b)(6). Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P. 8(a)(2). As the United States Supreme Court has held, the pleading standard that Rule 8(a) announces does not require "detailed factual allegations," but it demands more than an unadorned accusation. Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007). A pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Id. Nor does a complaint suffice if it tenders only "naked assertion[s]" devoid of "further factual enhancement." Id. at 557.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted by the court as true, to "state a claim to relief that is plausible on its face." Id. at 570. A claim has facial "plausibility" when the plaintiff pleads factual content that allows the court to draw the

6

reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Id. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." Id. at 557. Nevertheless, the Supreme Court repeatedly emphasized that alleging plausible grounds for a claim "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" to prove the alleged claim. Id. at 556. This pleading standard governs "all civil actions and proceedings in the United States district courts." Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009).

## II. This Court Lacks Jurisdiction to Hear This Matter as the Douglases Have Presented neither a "Case" nor a "Controversy"

The United States Constitution's familiar "case-or-controversy" requirement limits the jurisdiction of federal courts.[2] U.S. Const. Art. III, § 2. To fit within this

---

[2] While some circuits require plaintiffs to satisfy both federal constitutional standing as well as the standing requirements of the particular state, see, e.g., Comer v. Murphy Oil U.S.A., 585 F.3d 855, 861-62 (5th Cir. 2009) ("Because this is a diversity case involving state common-law rights of action, plaintiffs must satisfy both state and federal standing requirements."); Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 173-75 (2d Cir. 2005) (holding that in a

7

constitutional limitation, plaintiffs suing in federal court must have standing.

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact" . . . . Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). A plaintiff bears the burden of proving these three elements by alleging sufficient facts in its complaint. Warth v. Seldin, 422 U.S. 490, 518 (1975) ("It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke [federal] judicial resolution of the dispute and the exercise of the court's remedial powers."); see also Bischoff v. Osceola County, 222 F.3d 874, 878 (11th Cir. 2000) ("[W]hen standing becomes an issue on a motion to dismiss, general factual allegations of injury resulting from the

---

diversity suit "a plaintiff must have standing under both Article III of the Constitution and applicable state law in order to maintain a cause of action"), the Fourth Circuit does not. White v. Nat'l Union Fire Ins. Co., 913 F.2d 165, 167 (4th Cir. 1990) ("Federal standards guide the inquiry as to the propriety of declaratory relief in federal courts, even when the case is under the court's diversity jurisdiction."), quoted in Miller v. Augusta Mut. Ins. Co., 157 Fed. App'x 632, 636 (4th Cir. 2005) (per curiam); Lott v. Scottsdale Ins. Co., 811 F.Supp.2d 1224, 1230 n.8 (E.D. Va. 2011) ("In this circuit, a plaintiff's standing to maintain a declaratory judgment action is a question of federal law, even where, as here, a district court in diversity is called on to adjudicate a state-created right.").

8

defendant's conduct may be sufficient to show standing."); Haase v. Sessions, 835 F.2d 902, 904 (D.C. Cir. 1987) (explaining that a defendant's challenge to a plaintiff's standing in the form of a motion to dismiss "is based exclusively on [the] plaintiff's pleadings"). Although the Douglases allege cognizable injuries, they have failed to meet their burden with respect to causation and redressability.

### a. The Injury-in-Fact Requirement

"In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The Douglases allege that they sustained the following injuries: (i) they lost substantial equity in the Property in excess of $75,000; (ii) they lost rents on the Property; (iii) they sustained damage to their credit record; (iv) they sustained considerable inconvenience; and (v) they will sustain future lost rents on the property and damage to their credit record. Compl. ¶ 57. It is well-settled that economic damages constitute a cognizable injury-in-fact. Hein v. Freedom from Religion Found., Inc., 551 U.S. 587, 642 (2007) ("In the case of economic or physical harms, of course, the 'injury in fact' question is straightforward."); Danvers Motor Co., Inc., v. Ford Motor Co., 432 F.3d 286, 291 (3d Cir. 2005) ("While it is

9

difficult to reduce injury-in-fact to a simple formula, economic injury is one of its paradigmatic forms."). Therefore, the Douglases have sufficiently alleged an injury-in-fact for standing purposes.

### b. The Causation & Redressability Requirements

Although causation and redressability are two distinct elements of standing, typically they "overlap as two sides of a causation coin." Dynalantic Corp. v. Dep't of Def., 115 F.3d 1012, 1017 (D.C. Cir. 1997). "In order to prove causation, a plaintiff must demonstrate that the injury 'fairly can be traced to the challenged action of the defendant, and not . . . resulting from the independent action of some third party not before the court.'" Bishop v. Bartlett, 575 F.3d 419, 425 (4th Cir. 2009) (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976)).

The Douglases allege that BB&T violated Va. Code Ann. § 55-59.3 by failing to identify the correct trustee in the advertisement of foreclosure, Compl. ¶ 54, and that it also violated the Deed of Trust by executing, through PFC, a trustee's deed, which purported to convey title of the Property to BB&T, id. ¶ 56. These actions were sequential and bore a common hallmark: but for the allegedly invalid Substitution of Trustee, they would have been perfectly lawful. Therefore, rather than tracing back the purported injuries to one of the

10

alleged violations of law listed above, the Douglases instead must demonstrate that but for BB&T's allegedly invalid execution of the Substitution of Trustee, the foreclosure process would not have been triggered or would have resulted in less severe injuries. The Douglases failed to make this showing.

The Douglases admit that they defaulted on the Note. Accordingly, BB&T acted within its rights in proceeding with foreclosure. Thus, if taken as true, the allegation that BB&T invalidly appointed PFC as trustee does not undermine the causal event of the Douglases' default: their failure to make payment. To make the case that the Substitution of Trustee was the causal force behind their alleged injuries rather than their own default (and BB&T's allegedly insufficient notice), the Douglases would have to plead that the Substitution of Trustee occurred before the default. In fact, the pleadings show that the Substitution of Trustee was dated June 8, 2010 - nearly two months after BB&T mailed its notice letter to the Douglases. In any event, the date on which the alleged injuries became practically inevitable was the date on which the Douglases fell into arrears, not the date on which BB&T executed the Substitution of Trustee.

While it is true that the Douglases have sufficiently pled a causal connection between BB&T's allegedly insufficient notice and their injuries, that causality suffices only for Count I.

11

Count II, on the other hand, fails to demonstrate a causal connection between the allegedly invalid Substitution of Trustee and the economic injuries purportedly suffered as a result. The simplest way of demonstrating this lack of causation is to theoretically remove the Substitution of Trustee from the equation altogether. If the Substitution of Trustee had been the cause, doing this would redress the injuries by eliminating them. As one plainly can see, however, the alleged injuries would remain whether or not BB&T executed the Substitution of Trustee.

The lack of causation or redressability places this case beyond the Court's constitutional jurisdiction. Because the Douglases have failed to allege facts sufficient for constitutional standing, it is not necessary to address the merits of Count II. See <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 94-95 (1998) (quoting <u>Mansfield, C. & L.M.R. Co. v. Swan</u>, 111 U.S. 379, 382 (1884)) ("The requirement that jurisdiction be established as a threshold matter . . . is 'inflexible and without exception.'").

## CONCLUSION

The Plaintiffs have failed to allege facts sufficient for this Court to find either causation or redressability for

standing purposes. For these reasons, the MOTION TO DISMISS COUNT II (Docket No. 5) will be granted.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: April 16, 2013

13